**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE BASU GROUP INC.,        ) | |
|        ) | |
|      Plaintiff,   ) | |
|        ) | Civil Action No. 16-cv-00461-PGG |
|      v.   ) | |
|        ) | |
| SEVENTH AVENUE, INC.,     ) | |
|        ) | |
|      Defendant.   ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

DEFENDANT'S MEMORANDUM IN SUPPORT OF ............................................................1

    I.    INTRODUCTION ...................................................................................................1

        A.    THE RECORD .................................................................................................1

        B.    GROUNDS FOR SUMMARY JUDGMENT ..................................................2

        C.    SUMMARY OF THE IMAGES AT ISSUE ....................................................3

    II.    COPYRIGHT INCLUDES THE RIGHT TO CONTROL COPIES, NOT INDEPENDENT CREATION ...................................................................................4

        A.    COPYING, IN ABSENCE OF DIRECT EVIDENCE, IS PROVABLE BY INFERENCE ....................................................................................................4

        B.    SEVENTH AVENUE IS A RETAILER WHO BUYS GOODS DESIGNED BY OTHERS ....................................................................................................5

        C.    THE ACCUSED BAG WAS INDEPENDENTLY CREATED BY ITS SEVENTH AVENUE'S SUPPLIER. ................................................................5

    III.    APPLICABLE LAW ...............................................................................................9

        A.    PREEXISTING WORKS HAVING THE SAME FEATURES AS THE REGISTERED WORK REBUT THE PRESUMPTION OF VALIDITY ......9

        B.    BASU'S COPYRIGHT SUFFERS FROM FATAL FLAWS ......................11

            i.    FAILURE TO DISCLOSE PREEXISTING MATERIAL FROM WHICH WORK WAS DERIVED WITHOUT PERMISSION+ ........12

            ii.    FAILURE TO DISCLOSE PREXISTING WORKS AND PROVIDE LIMITATIONS TO THE COPYRIGHT CLAIM ...............................13

            iii.    OTHER FALSE STATEMENTS TO THE COPYRIGHT OFFICE ...14

            iv.    KNOWING SUBMISSION OF THE INACCURATE APPLICATION ............................................................................................14

    IV.    THERE IS NO GENUINE FACT ISSUE ABOUT INSUFFICIENT SIMILARITY ............................................................................................................15

        A.    DISSIMILARITY ANALYSIS ....................................................................16

        B. SIMILARITIES BETWEEN THE PREEXISTING WORKS AND BASU DEFINE THE UNPROTECTABLE ............................................................16

        C. THE ORDINARY OBSERVER HERE WOULD FIND NO INFRINGEMENT 19

        D.    DIFFERENCES SO DOMINATE THAT THE ORDINARY OBSERVER WOULD NOT FIND SUBSTANTIAL SIMILARITY .................................20

E.    SUMMARY JUDGMENT IN FAVOR OF SEVENTH AVENUE IS
APPROPRIATE.................................................................................23

V.    FRAUD.........................................................................................................24

**CONCLUSION**........................................................................................................25

# TABLE OF AUTHORITIES

### Cases

*Beaudin v. Ben and Jerry's Homemade, Inc.*, 95 F.3d 1 (2d Cir., 1996) ............................... 14, 16

*Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). ........................ 9

*Dyer v. Napier*, 2006 WL 2730747, 2006 Copr.L.Dec. P 29,242, 81 U.S.P.Q.2d 1035 (D Ariz 2006) ............................................................................................................................... 8, 17

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F. 2d 498, 500 (2d Cir. 1982) ........................ 19, 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, (1991). 9, 10

*Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir.1991) ...................................... 19

*Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir.1997) ........................................................ 9

*Gordon v. Invisible Children, Inc*. Case No. 14-4122 (PGG), 2015 WL 5671919, at 10-12 (S.D.N.Y. Sept. 24, 2015) ...................................................................................................... 4

*Gund, Inc. v. Smile Int'l, Inc.*, 691 F.Supp. 642, 645 (E.D.N.Y.1988), aff'd, 872 F.2d 1021 (2d Cir.1989) ............................................................................................................................. 11

*Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) .............................................................. 9

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64 (2d Cir. 1974) .............. 18

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971) ......................... 18

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir.2003) ................................................ 4

*Klauber Bros. v. Bon-Ton Stores, Inc*. 557 F. App'x 77, 110 U.S.P.Q.2d 1602  (2d Cir. 2014) . 16, 4

*Klauber Bros., Inc. v. Russell-Newman, Inc*., Case No. 11-4895 (PGG), 2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013) ...................................................................................................... 16

*Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 269 (W.D.N.Y. 2015) ............ 4

*Odegard Inc. v. Safavieh Carpets, Inc*.  398 F.Supp.2d 275 (SD NY 2005) ................................ 10

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) 9

*Psihoyos v. National Geographic Society* 409 F.Supp. 2d 268 (SD NY 2005) ............................ 19

*Repp v. Webber* 132 F. 3d 882 (2d Cir., 1997) ........................................................................ 4, 6

*Roberts v. Gordy* 181 F.Supp.3d 997, (SD Fla 2016) ................................................................ 15

*Rural Tel. Serv. Co*., 499 U.S. 340 ............................................................................................ 9

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc*. 482 F.Supp. 980, 205 U.S.P.Q. 320 (SD NY 1978) ................................................................................................................................ 11, 12

*Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir.2003) .................................................................. 8

*Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 869 (S.D. NY 1998), aff'd mem., 199 F.3d 1323 (2d Cir. 1999) ......................................................................................................................... 5

*Silberstein v. Fox Entertainment Group, Inc.* 424 F.Supp.2d 616, 2004 Copr.L.Dec. P 28, 84775 U.S.P.Q.2d 1086 (SD NY 2004) ............................................................................................... 5

*Sorenson v. Wolfson* 96 F.Supp.3d 347 (SD NY 2015) ....................................................... 13, 15
*v.* passim

*Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*, No. 09 Civ. 1795(PKC), 2009 WL 3401182, at *2 (S.D.N.Y. Oct. 19, 2009) ................................................................................................... 4

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.* 210 F.Supp.2d 147 (ED NY 2002) .............. 19

*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir.1989) ............................ 15

*Yurman Design, Inc. v. Chaindom Enterprises, Inc.* 2002 WL 31358991, 2002 Copr.L.Dec. P 28, 510 (S.D. N.Y. 2002) ............................................................................................................ 4

**Statutes**

17 U.S.C. § 102(b) .................................................................................................. 15
17 U.S.C. § 103(a) .................................................................................................... 9
17 U.S.C. § 411(b) ................................................................................... 3, 8, 11, 20
17 U.S.C. § 411(b)(2) ........................................................................................ 20,21

**Treatises**

1 Nimmer § 94 ........................................................................................................ 20
4 Nimmer § 13.03 ................................................................................................... 16

**Regulations**

Compendium III .......................................................................................... 9, 10, 25

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
THE BASU GROUP INC.,                )
                                    )
              Plaintiff,            )
                                    )
      v.                            )      Civil Action No. 16-cv-00461-PGG
                                    )
SEVENTH AVENUE, INC.,               )
                                    )
              Defendant.            )
_____)

## DEFENDANT'S MEMORANDUM IN SUPPORT OF

## MOTION FOR SUMMARY JUDGMENT

Defendant Seventh Avenue, Inc. (hereinafter "Seventh Avenue"), through its counsel, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment in favor of Seventh Avenue and against Plaintiff The Basu Group, Inc. (hereinafter "Basu"), pursuant to Federal Rule of Civil Procedure 56.

### I.      INTRODUCTION

### A.   THE RECORD

Plaintiff Basu filed its Complaint on January 21, 2016, which alleges that a Hand-Painted Leather Bag sold by Seventh Avenue ("the Accused Bag") infringes Basu's Peacock Feather # 1, Copyright Registration No. VA 1-652-678. Dkt. 1, Complaint at ¶¶ 12-17.  Seventh Avenue filed a Motion to Dismiss, bundled, September 9, 2016 (Dkt. 30 – 34).  The Court denied the Motion to Dismiss December 12, 2016 (Dkt. 45).  An Answer and Counterclaim were filed December 26, 2016 (Dkt. 47), and an Amended Answer and Counterclaim on February 24, 2017 (Dkt. 60).  An Answer to the Amended Counterclaim was filed March 22, 2017.

Seventh Avenue submits herewith its Statement of Facts ("Def. Facts") pursuant to Local Rule 56.1 and an appendix having evidence comprising a Declaration of David Brezina, ("Brezina Dec.") with Exhibit ("Exh.") A, Basu's Copyright Application received by Counsel in February, 2017 and Exh. B, a demonstrative exhibit images at issue; the Declaration of Anurag Chokhany, ("Chokany Dec.") whose company independently created the Accused Work, with Exh. A showing their original design and Exh. B the Accused Work his company created; the cited pages and Exhibits from the Depositions of Bhaskar Basu ("Basu Dep."); and the cited pages and Exhibits from the Deposition of Paula Ludwig ("Ludwig Dep.") and the cited pages and Exhibits from the Deposition of Russell Davis, ("Davis Dep.").

### B.  GROUNDS FOR SUMMARY JUDGMENT

Summary Judgment under FED. R. CIV. P. 56 may be decided when there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here the Court now has the benefit, unavailable in the 12(b)(6) motion, of the Copyright Application and the "Inspiration" used to prepare the registered work.  This is in addition to the facts surrounding the actual creation of the accused work.  Grounds for Summary Judgment here are:

(1)  The Accused Work was independently created and is therefore not infringing.

(2)  The Accused Work and original aspects of the asserted work lack sufficient similarity from to infer infringement.

(3)  The registration and deposit submitted have serious shortcomings that rebut presumptions that would flow from a legitimate registration.

(4)  The preexisting, published, materials that were not disclosed include all the elements identified by the Court as points of similarity between the Accused Work and Basu's Peacock Feather #1, which has effects of:

2

      a.  because Basu is asserting those features, the failure to disclose preexisting works that had the features is material to the scope of Basu's registration;

      b.  because it is the preexisting, published features, not created by Basu, that are in common exclusion of their content under the "more discerning observer" test means that the Accused Work has negligible similarity to the original portions of Basu's Peacock Feather #1;

      c.  under alternative approaches of analysis, such as merger of idea and expression and derivation from items in nature, there is also non-infringing similarity – the only similarity being in the idea of portraying stylized peacock feathers.

(5)  The Court should deny enforcement for failure to disclose preexisting published works based its equitable authority applying the doctrine of unclean hands, and need not necessarily rule that the registration is invalid as against the public at this point.

## C.    SUMMARY OF THE IMAGES AT ISSUE

Four particularly significant images at issue in this case are presented on one page in the Appendix, as well as in their separate, original documents, (Brezina Dec. Exh. B) and will be discussed in detail herein. Basu's Peacock Feather # 1[1] is shown as an image in the Copyright Registration attached as Exhibit A to the Complaint, the Counterclaim and discussed at the Basu Dep. When creating Peacock Feather No. 1 Basu had, on a table, copies of various images[2]. These are Exhibit B to the Amended Counterclaim and Exhibit 4 to the Basu Dep. Seventh Avenue's

---

[1] Basu's Work is in Complaint Exhibit A, Dkt 1, page 10 of 12, Counterclaim Exh. A, Dkt 60 - 1 page 4 of 4 and Basu Dep. Exh. 2, page TBG000003

[2] Preexisting Images are shown in Counterclaim Exh. B, Dkt 60 - 2 pages 2 - 10 of 10 and Basu Dep. Exh. 4, pages TBG0001287 – 1294 and particularly two on pages TBG0001287 (bottom right) and TBG0001291 respectively.

supplier created the accused design in 2012, for a different bag[3], that was not sold by Seventh Avenue.   A photograph of an advertisement showing the Accused Bag is attached as Exhibit B to the Complaint[4].   An enlarged image of the accused handbag is Exhibit A to the Declaration of Anurag Chokhany ("Chokhany Decl.") Exhibit A.

## II.   COPYRIGHT INCLUDES THE RIGHT TO CONTROL COPIES, NOT INDEPENDENT CREATION

### A. COPYING, IN ABSENCE OF DIRECT EVIDENCE, IS PROVABLE BY INFERENCE

Fundamental in copyright law is that the owner of a copyright can only enforce the right against unauthorized "copies" – reproductions or making derivative works from an original (17 U.S.C. 106) -- or distribution or public display of such "copies".   *Id.*   If no reproduction or derivative work was made, there is no liability for distribution or display. Whether there is proof of actual copying is the first inquiry. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).   Where, as here, there is no direct evidence of actual copying, then a plaintiff is permitted to have copying inferred from proof of access and similarity, at the first level of inference, and inference of access from striking similarity at a second level of inference.   However, since the proof needed is proof of "copying" – directly or by inference -- independent creation is a defense to any copyright infringement action and is provable by Declaration.  *Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997).

---

[3] Chokhany Dec. Exh. B, SA001229 - SA001238; Ludwig Dep. Exh. 12, page SA000396; Ludwig Exhibit 13, page SA00393; Ludwig Dep. Exh. 17, page SA00426; Ludwig Dep. Exh. 18, page SA00428; Ludwig Dep. Exh.  19, page SA000430

[4] Complaint Exhibit B, Dkt 1, page 12 of 12

## B.  SEVENTH AVENUE IS A RETAILER WHO BUYS GOODS DESIGNED BY OTHERS

Seventh Avenue is a retailer who buys goods made by others and markets them to consumers. (Def. Facts 47, 47).  A design for a "red peacock book bag" was sent to Seventh Avenue's buyer in 2012 (Def. Facts 50, 51 – 54, 56) although the bag on which the design appeared was not configured as a handbag like the accused product. (Def. Facts 57, 61).  In the year 2014 – for the Fall 2015 catalog – Seventh Avenue's employee in charge of purchasing and a merchandising employee for a sister company determined to bring to market a handbag with the "red peacock" design.   (Def. Facts 57 – 61)

## C.  THE ACCUSED BAG WAS INDEPENDENTLY CREATED BY ITS SEVENTH AVENUE'S SUPPLIER.

The burden of going forward is on Basu in the first instance.  In absence of direct evidence of copying Basu would need to rely on inferences.   Seventh Avenue's direct evidence of independent creation would overcome inferences, if Basu could prove them. Defendant denies copying and submits a Declaration from the Director of its supplier Shankar Produce Company Private Limited (Def. Facts 60 - 78, Chokhany Dec. and Exhibits A and B thereto) which has not been rebutted in any discovery produced or conducted by Basu.   The Declaration is also corroborated by communications within Seventh Avenue's corporate family, and with Seventh Avenue's outside agent who locates sources of items. (Def. Facts 46, 50 – 56; 57 - 60, Ludwig Exh. 12, 13, 14, 17, 21) As unrebutted evidence of independent creation, Basu has a burden of persuasion that is not met.  *Silberstein v. Fox Entertainment Group, Inc.* 424 F.Supp.2d 616, 2004 Copr.L.Dec. P 28, 84775 U.S.P.Q.2d 1086 (SD NY 2004)  *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 869 (S.D. NY 1998), aff'd mem., 199 F.3d 1323 (2d Cir. 1999). Independent creation

established by declaration shifts the burden shifts to the copyright owner to discredit or disprove the alleged infringer's evidence of independent creation, if possible. *Repp v. Webber supra*.

The "Director" – an Executive Officer under Indian/English title conventions – of Shankar is Anurag Chokhany. In performing his duties he is familiar with the operations and practices used by his company. His Declaration relates his personal knowledge and his knowledge of operations as an Executive Officer. Paragraphs 1 – 11, 13, 16, 17, 19 -- 23 are based on this personal knowledge, personal observations and review of business records. The observations related are consistent with Exhibits discussed herein, which discuss, but were not authored by, and are therefore independent of, Mr. Chokhany. The actual artist does not speak English, while Mr. Chokhany does. Thus, paragraphs 12, 14, 15 and 18 are translations of statements made by Sanjit Das, and are declared true and accurate.

When this litigation was threatened, Mr. Chokhany was contacted. He related then substantially the same facts now covered in his Declaration, tempered with his surprise that anyone could monopolize the national bird of India, in emails exchanged with the buyer's agent Manju, at the request of employees of Seventh Avenue's parent company. Def. Facts, 63, Ludwig Exh. 25. In fact, that buyer's agent verified the independent creation and staff of creative artists at Mr. Chokhany's company, Shankar. (Chokhany Dec. 23, 24).

There is additional corroboration based on Mr. Chokhany's statement that peacock feather designs have generally become used on the types of product made by Shankar since the year 2008 (Chokhany Dec. 6) around the same time that Mr. Basu was attending trade shows to see what designs were becoming popular and concluded that "feathers" were becoming popular. (Basu Dep. page 47 lines 14 – 25, Def. Facts 8)

6

Shankar states that as a company they never copy anyone else's designs (Chokhany Dec. 21), and all their designs in hand painting as well as styles are developed for Shankar's buyers as per their demand and requirements. (Id. 5). Shankar's team of artists make graphic designs for bags as per requirement of their buyers (Chokhany Dec. 7).

The accused bag Shankar produced and sold to Seventh Avenue, Inc. Chokhany Exh. A is graphically alike the 2012 version created for Shankar's Australian customer, Chokhany Exh. B (SA000393) (later "Peacock Book Bag"). The time for this creation is corroborated by communications with Seventh Avenue. Ludwig Dep. Exh. 12, 13, 17, 18, 19.

As Director of Shankar, Mr. Chokhany explains that his team of artists, particularly Mr. Sunjit Das, created the red peacock design in Shankar's factory on request of their Australian customer. Red is material because it was one of the main colors on the Peacock Book Bags. (Chokhany 9 and 10).

The creation was entirely Shankar's with no suggested changes from Seventh Avenue to the Design, the only specification being putting the design on a different utilitarian item. (Chokhany 17). The different size and style bag with the Exhibit B (SA000393) design was put on the accused bag, Chokhany Exh. A. (Chokhany 19).

As translated by Mr. Chokhany, the Indian speaking artist picked up an original feather and bought a fabric swatch from the market with peacock prints and developed the initial design for the Peacock Book Bag. (Chokhany 12). Then the design was sent to the Australian customer who made some comments, and the Peacock Book Bag design was then developed accordingly. (Chokhany 13). The background abstract portion – which a visual inspection plainly shows is different from Peacock Feather #1's leather background -- was derived from fabric sold for dresses. (Chokhany para. 14). It was the background and making of the peacock feather with red as the

7

dominant color that the Australian customer suggested. (Chokhany 16). These features are not even present in Peacock Feather #1, so they could not have been copied.

Basu's Peacock Feather #1 was created from natural peacock feathers (Basu Dep. page 140, lines 12 - 20, Def. Facts 28)  The portion of the Shankar design that most closely resembles a natural peacock feather was derived from a natural peacock feather.  (Chokhany para. 15). Noninfringing similarities are explainable because Peacock Feather #1 shared derivation from other peacock feathers (Basu Dep. *Id*. Def. Facts 28) See *Dyer v. Napier*, 2006 WL 2730747, 2006 Copr.L.Dec. P 29,242, 81 U.S.P.Q.2d 1035  (D. Ariz. Sep. 25, 2006) ("when a live creature commonly appearing in nature is reproduced, the only elements protected by copyright are those original aspects which are not required in the depiction of the creature as expressed in nature"); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (artist who created a jellyfish sculpture "may not prevent others from copying elements of expression that nature displays for all observers.").  The above elements are used by everyone to make things look like peacock feathers.

Mr. Chokhany translates the explanation of the sources for derivation of the Shankar design: an original peacock feather, a fabric swatch with peacock prints, (Chokhany 18), background from fabric (Chokhany 14) and red coloration suggested by the Australian customer. (Chokhany, 16). With these affirmative explanations, the summation that the Shankar design was not derived from Basu[5] (Chokhany 18) is not merely a denial, it gives support for the conclusion.

Since Shankar created independently and Seventh Avenue and its affiliates did not provide any creative input used in creating either Peacock design, (Chokhany para. 22) there is independent

---

[5] Seventh Avenue will later discuss the fact that the registered Peacock Feather #1 was actually an in-house guide for artists at Basu's related company to use to paint actual handbags – it was never "published" -- so Mr. Chokhany's Declaration is consistent with the fact that the guide from the workshop could never have been seen to be copied.

creation.  Since the accused design was independently created, then Seventh Avenue not a copy Peacock Feather #1, and it has not distributed a copy.

### III.    APPLICABLE LAW

Copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The second element involves the sub-elements of (a) copying (discussed as lacking above) and (b) the copying must be of constituent elements of the work that <u>are original</u>. *Id.*  Lack of sufficient similarity "between the defendant's work <u>and the protectable elements of plaintiff's</u>" work can result in judgment for the Defendant even where, unlike here, there was actual copying. *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) *at* 63 (citing *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).

### A.    PREEXISTING WORKS HAVING THE SAME FEATURES AS THE REGISTERED WORK REBUT THE PRESUMPTION OF VALIDITY

There is a rebuttable presumption of validity that flows from registration.

> Generally speaking, the presumption of validity may be rebutted "[w]here *other evidence* in the record casts doubt on the question." The presumption has been overcome on other occasions by evidence that the work had been copied from the public domain, or by evidence that the work was a non-copyrightable utilitarian article. (citations omitted)

*Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997).  Of course, mere validity does not equate with a strong copyright.

In the Court's Opinion on the Motion to Dismiss, ("Op.") Dkt 45, page 6, the Court identified salient features in Basu's work.  Now that the Court has the benefit of the preexisting published works (including a photograph of a natural peacock feather) that Basu used when it created the registered work it can be seen that the level of originality is very low.  The following

9

features all of can be found in the preexisting images downloaded by Basu styled by Basu as "inspiration":

(1)     strand thickness and width; (Def. Facts 14, Basu Dep. Ex. 4 TBG0001287-1291)

(2)     strand tapering  (Def. Facts 15, *Id.*)

(3)     colors and black border (Def. Facts 16, Basu Dep. Ex. 4 TBG0001288-89, 1291)

(4)     colors used in the design (Def. Facts 17 , Basu Dep. Ex. 4  TBG0001287-1291)

including a purplish color, particularly page *Id.*, at TBG0001291)

(5)     blue strands with a black border (Def. Facts 18, *Id.* )

(6)     an upside-down heart-shaped image (Def. Facts 19, *Id.*)

(7)     the heart-shaped image superimposed over an oval (Def. Facts 20, *Id.*)

(8)     the shapes in (6) and (7) are encircled by a roundish form (Def. Facts 21, *Id.*)

(9)     a whimsical presentation (Def. Facts 24)

A number of consequences result from these features in preexisting works.  Direct copying (the opposite of the independent creation here) does not extend to unoriginal features. ("copying of constituent elements of the work that are original.") *Feist*, 499 U.S. at 361*;* "whether the alleged infringer has misappropriated 'the original way in which the author has `selected, coordinated, and arranged' the elements of his or her work.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010); "substantial similarity, not between the works as a whole, but only as between the protectable elements of the copyrighted work and the accused infringing work" *Odegard Inc. v. Safavieh Carpets, Inc.*,  398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005). Shankar would have been permitted to copy the unprotectable, but instead it went to independent sources.

If the features are unoriginal – unprotectable -- and their combination in the context of a peacock feather are unoriginal – unprotectable -- then any presumption extending the registration

to the unoriginal and unprotectable is overcome. A related analysis is that when the claimed similarities are features common to all such objects, the features are not subject to copyright protection. *Gund, Inc. v. Smile Int'l, Inc.*, 691 F. Supp. 642, 645 (E.D.N.Y. 1988), aff'd, 872 F.2d 1021 (2d Cir. 1989) (stuffed dogs); *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 987 (S.D.N.Y. 1980) (stuffed Santas, Christmas bears, gorillas). Content of prior publications can be used under the "more discerning observer" test to exclude the contents in making a similarity evaluation.

While there are many images in Basu Dep. Exh. 4, two are particularly pertinent when compared to the "deposit" sent by Basu (Def. Facts 42) to the Copyright Office.

| Def. Exh. B, | Def. Exh. B | Plaintiff's Copyright |
| TBG0001287, Bottom | TBG0001291 | Deposit Def. Exh. A |
| Left Image, Rotated | | |

  

The content of all the images is important in evaluating what is original in Basu's work. The content of the two preexisting images shown above is of striking significance. It is not particularly original in form or coloration.

### B.   BASU'S COPYRIGHT SUFFERS FROM FATAL FLAWS

There are additional consequences that arise from the fact that Basu had the downloaded or clipped images as "inspiration" (Def. Facts 9 - 13) but failed to include them in presenting any limitations in its Copyright claim (Def. Facts 38; Brezina Dec. Exh. A; Counterclaim Exh. D.). There are two grounds to find the improper failure to disclose material to evaluating the presumptions that flow from registration.  The Court could, if excluding the content from an infringement analysis does not finally resolve the case, either deny enforceability based on unclean hands, *Russ Berrie*, 482 F. Supp. at 988; or  -- a change since *Russ Berrie* -- refer the question of non-disclosure to the Copyright Office under 17 USC 411 (b) prior to finding invalidity.

### i.  FAILURE TO DISCLOSE PREEXISTING MATERIAL FROM WHICH WORK WAS DERIVED WITHOUT PERMISSION+

The Exhibit B images are "preexisting material" and can negate copyrightability because the derivation of Exhibit A from them was without permission and therefore unlawful.  These principles are described in the Copyright Office Compendium.  Compendium III, 313.6 (B), Unlawful Use of Preexisting Material in a Derivative Work, a Compilation, or a Collective Work, tracks procedures for the modern regime of electronically filed applications[6] and states:

> Some derivative works, compilations, and collective works cannot be registered with the U.S. Copyright Office. Section 103(a) of the statute states that copyright protection for a compilation or derivative work "employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully."

17 U.S.C. § 103(a).

---

[6] Compendium II was last updated in 1998 and does not cover electronically filed applications. while *Compendium of U.S. Copyright Office Practices, Third Edition*, conveys current practices of the Copyright Office and with Counterclaim Exhibit D, Dkt 60 – 4 pages 6 – 9 of 9, Brezina Declaration Exh. A, pages SA001229 - SA001238

A comparison of the features the Court observed as present in Basu's work to the preexisting images shows that eight (and arguably nine) features in the Basu work are also in the preexisting images. The overlap of these features makes the preexisting works highly relevant and taking these features and placing them in Basu's work is exactly the kind of correspondence that indicates the latter is a derivative work. Denial of a Copyright because of unauthorized derivation requires no intent and may not be curable by providing a "limitation" to the Copyright Claim. Certainly committing an illegal act is itself a ground for finding unclean hands.

### ii. FAILURE TO DISCLOSE PREXISTING WORKS AND PROVIDE LIMITATIONS TO THE COPYRIGHT CLAIM

The content of Exhibit C – natural peacock feathers – would only be relevant as "public domain material". While they should have been disclosed, rejection, or limitation by excluding, the preexisting material. (Compendium III, 311.2 The Originality Requirement for Derivative Works, "If a derivative work contains an appreciable amount of previously published material, previously registered material, public domain material, or third party material, the applicant should exclude that material from the claim using the procedure described in Chapter 600, Section 621").

The Exhibit B images are relevant on this ground as well. As with the above point on unauthorized derivation, the close identity of features in the copyrighted work and the undisclosed images evidences derivation.

Intent can be found where a Copyright Applicant has the instructions requiring disclosure of preexisting works and fails to follow the instructions. *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 359-360 (S.D.N.Y. 2015). Mr. Basu has, himself, prepared and filed Copyright Applications, (Def. Facts 35) and certainly knew that Peacock Feather #1 was created with the preexisting images

literally in front of the co-authors. (Def. Facts 9, 10, 11).  Basu was careful about other aspects of the application, such as acquiring all the rights to the peacock feather idea.  (Def. Facts 36).

### iii.   OTHER FALSE STATEMENTS TO THE COPYRIGHT OFFICE

There were other facts that Basu submitted falsely.  If a work is truly unpublished, then it is extremely difficult to imagine that anyone would have "access" – an element relevant in the case where no evidence on how the accused work was created.  If we ignore independent creation, the premise that there could be "access" to a graphic kept in a workshop as a guide from which other works are derived logically fails.  The registered work never left Basu's manufacturing facility. (Def. Facts 29 - 34)   And, of course, the date of publication, New Year's Day, 2008 is false. (Def. Facts 39, 40)

### iv.   KNOWING SUBMISSION OF THE INACCURATE APPLICATION

Despite knowing the importance of correctly filling out the Copyright Application, Basu filed its application without (1) disclosing the existence of preexisting works and public domain materials, (2) describing what was original, (3) describing the work as published, when it was not, and (4) identifying as a date of publication a day when businesses are closed.    Items (1) and (2) are critical to both judge whether the work is entitled to be registered and whether the work is highly original or a "thin" copyright on its face.   ("Where the quantum of originality is slight and the resulting copyright is "thin," infringement will be established only by very close copying because the majority of the work is unprotectable.") *Beaudin v. Ben and Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996).   The fact that Basu knew of the preexisting images and public domain materials, was experienced completing Copyright Applications, and had, a goal of protecting ideas by registering its unpublished "guide" (Def. Facts 11, 12, 13, 29 - 34, 44) evidences Basu's intent to obtain a registration indicating that it owns more than it is entitled to own. Items (3) and (4)

could be material because the expiration date of the Copyright may be based on publication date and status.  Where, as here, the registered work itself is unpublished, being used only in-house to create derivative works, the lack of publication makes access by Shankar untenable.

Materiality and intent are present.  Unclean hands is shown.  *Sorenson*, 96 F. Supp. 3d at 359-360;  *Roberts v. Gordy*, 181 F. Supp. 3d 997 (S.D. Fla. 2016);  *Whimsicality, Inc. v. Rubie's Costume Co*., 891 F.2d 452, 453 (2d Cir. 1989) (pre 17 USC 411 (b)).  At least the registration should not be enforceable unless and until Basu cures its omissions.

## IV.     THERE IS NO GENUINE FACT ISSUE ABOUT INSUFFICIENT SIMILARITY

Assuming, *arguendo*, that the evidence of independent creation were insufficient to prove noninfringement, and assuming, *arguendo*, that Shankar had access to the graphic kept in Basu's workshop, there must still be sufficient similarity to the protectable expression for there to be infringement.   One way to analyze similarity to protectable expression is to evaluate the "idea" in the copyrighted work.  If there is only similarity in idea, there is no infringement.

No copyright owner has the exclusive right to the idea of depicting peacock feathers on purses and bags.  However that is exactly what Basu wants to assert.  (Def. Facts 44, "I obviously did not want that artwork to end up or my ideas to end up elsewhere" Basu Depo. page 86, line 24 – page 87, line 1; "I need to protect that idea of mine that I'm bringing to the table that I'm creating as a collection for our company and also, of course, from a legal standpoint for the purpose of being able to copyright that work and protect ourselves." Basu Dep. page 87, lines 13 – 18).

This is not a typical copyright set of facts that supports the ordinary observer test, although applying the "ordinary observer test" plus the limitation to only evaluate Basu's original content effectively reaches the same conclusion. *Feist*, 499 U.S. at 361.

Where, as here,  a copyrighted work is based on subject matter not owned by the author, whether previously published images of others, or public domain matter, such as the peacock feathers here, plaintiff's case is judged under the "more discerning observer". *Peter F. Gaito*, 602 F.3d at 66.  The analytical tool of subtracting the non-original is an effective way of applying the restriction of Copyright to only that which is original, and is more generally applied under the "thin" protection line of cases.  *Beaudin*, 95 F.3d at 2.   It is clear that under any analytical approach, there is no substantial similarity between the original contributions in Peacock Feather #1 and the design on the Accused Bag.

### A.    DISSIMILARITY ANALYSIS

Summary Judgment against Basu should be entered because a visual comparison of the design in the Accused Bag and Peacock Feather # 1 shows that no reasonable jury could find that the works are sufficiently similar to be infringing.  *Klauber Bros., Inc. v. Russell-Newman, Inc*., No. 11-4895 (PGG), 2013 WL 1245456, 23 (S.D.N.Y. Mar. 26, 2013) Slip op. at 14 *aff'd sub nom. Klauber Bros. v. Bon-Ton Stores, Inc*., 557 F. App'x 77   (2d Cir. 2014) stated: "The Court recognizes that its obligation is to examine the works' total concept and feel, rather than the individual elements . . .but  there are enough differences in the individual elements here that the "total concept and feel of these works . . . is different."  Here, the Court carefully identified, Op., Doc. 45 page 6 – not having the content showing non-originality -- the following features, all of which are in the preexisting images downloaded by Basu for their "inspiration" as discussed below.

### B. SIMILARITIES BETWEEN THE PREEXISTING WORKS AND BASU DEFINE THE UNPROTECTABLE

The features shared with a natural peacock feather (Basu Dep. Ex. 6; Counterclaim Exh. C Doc. 60 - 3) and preexisting images from (Basu Exh. 4) which the asserted work was derived are not enforceable features. *Dyer, supra., Satava, supra.*

(1)     strand thickness and width is similar in the preexisting images, (Def. Facts 14) in Basu's work  (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 88)

(2)     strand tapering is in the preexisting images (Def. Facts 12) in Basu's work  (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 89)

(3)     colors and black border are in the preexisting images (Def. Facts 13) in Basu's work (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 90)

(4)     colors used in the design in the preexisting images (Def. Facts 14) in Basu's work (Op., Doc. 45 45 at 6) and in the accused bag are similar (Def. Facts 91)

(5)     blue strands with a black border are in some of the preexisting images (Def. Facts 15) in Basu's work  (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 92)

(6)     an upside-down heart-shaped image is in some of the preexisting images (Def. Facts 16) in Basu's work  (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 93)

(7)     the heart-shaped image superimposed over an oval is in some of the preexisting images (Def. Facts 17) in Basu's work  (Op., Doc. 45 at 6) and in the accused bag (Def. Facts 94)

(8)     the shapes in (6) and (7) are encircled by a roundish form in the preexisting images (Def. Facts 18) in Basu's work (Op., Doc. 45 45 at 6) and in the accused bag (Def. Facts 95)

Overlying all of the above analysis is the expressed intent of Basu to protect the idea (Def. Facts 44).  Asserting copyright over preexisting features in other images of peacock feathers, and not disclosing those other images is exactly the kind of merger if idea and expression that line of

cases opposed.  This is in addition to the fact that public domain natural peacock feathers (not themselves "images") were used[7].

Under any copyright infringement analysis, (1) dissimilarity to the original features (2) excluding unoriginal features under a more discerning observer test (3) identifying the idea and excluding it from the expression, the accused work does not infringe – even if not independently created.

## B.  SIMILARITY IN IDEAS IS INSUFFICIENT FOR INFRINGEMENT

*Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) (per curiam) used a merger of idea and expression analysis in connection with a jewelry item derived from nature.  The Second Circuit relied on the Ninth Circuit's analysis regarding a bejeweled pin formed like a natural bee, see *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971).  Applying this doctrine, in *Peter F. Gaito*, 602 F.3d at 67 the Court stated "This principle, known as the 'idea/expression dichotomy,' 'assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.' " See 17 U.S.C. § 102(b) ("In no case does copyright protection ... extend to any idea ....").

If the idea is to use the colorful appearance of the end of a peacock feather for decorative purposes, there being nothing original compared to what was in the preexisting images (Def. Facts 14 & 88; 15 & 89; 16 & 90; 17 & 91; 18 & 92; 19 & 93 and 20 & 94, and Op., Doc. 45 45, page 6) in Basu's Peacock Feather # 1, and these are  the only similarities with respect to the accused work,

---

[7] While Copyright cases occasionally refer to what is in the public domain and preexisting images that may, or may not, be in the public domain under the Copyright Act of 1976, Basu has a conundrum with respect to the images from which it created its design.  Either they were in the public domain and every case excluding them applies, or they were not in the public domain because as works of authorship, someone, not Basu, owned copyright.  What is certain is that they were published, not Basu's and they were either downloaded or clipped out.

there is no infringement. *Psihoyos v. National Geographic Society*, 409 F. Supp. 2d 268 (S.D.N.Y. 2005) ("the 'idea' of showing the Fossil in its 'natural setting.'")

### C. THE ORDINARY OBSERVER HERE WOULD FIND NO INFRINGEMENT

To determine whether the two works are substantially similar, the court should perform "a visual comparison of the works." *Folio Impressions*, 937 F.2d at 766. This visual comparison test is often called the "ordinary observer test" and asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito*, 602 F.3d at 66. Under this test, the court examines the works' "total concept and feel." *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982) (holding that two designs were not substantially similar).

In making a comparison differences are not to be ignored. " [A] defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Eden Toys*, 675 F.2d at 501. The differences between the asserted work and the Accused Bag are substantial. The background designs and colors are a unitary graphic part of the whole, not simply adding details beside one element. (Def, Facts 79, 80, 81, 82)

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 163 (E.D.N.Y. 2002) explained:

> Differences become particularly important where copyright protection is "thin." Commonly used to refer to compilations of facts in the public domain, "thin" copyright protection is appropriate where works reflect "scant creativity." 4 Nimmer § 13.03[A] at 13–28. Scantiness may exist because the work is composed of elements in the public domain, and it is only the organization of those elements that is protectible.

A review of the Accused Bag and Basu's Peacock Feather # 1 shows insubstantial similarity between the original, protectable, components of Basu's feather design and the accused

19

bags. The patterns substantially differ in detail, with similarity between them existing solely because the works generally represent a peacock feather having the same features as other peacock feather images and natural peacock feathers. This similarity falls short of demonstrating "substantial similarity" (and thus one aspect of inferring copying), because "the similarity between two works must concern the expression of ideas, not the ideas themselves." *Peter F. Gaito*, 602 F.3d at 67 (citations omitted). The expressions are very different.

### D.  DIFFERENCES SO DOMINATE THAT THE ORDINARY OBSERVER WOULD NOT FIND SUBSTANTIAL SIMILARITY

The presumably protectable expression identified in the Copyright registration as "Peacock Feather #1" (Complaint, Par. 12) conveys an image of a peacock feather in a "hand painted" style on a plain background.  The Accused Bag has (Def, Facts 79, 80, 81, 82) a multiplicity of abstract shapes) on a brightly colored background, the shapes generally formed as "onion" shapes and having some oval-shaped and some "U-shaped" contained within the onion shapes. One such shape has a stylized peacock feather and one such shape a partial stylized peacock feather.  The stylized peacock feathers are less abstract than the other shapes on the Accused Bag, but the abstract shapes cover a greater surface area.

Looking only to the feather portion – ignoring differences in the overall, aesthetically unitary graphic, the similarities in the peacock feathers are all explainable based on similarity to other peacock feathers, not of Basu's creation.  Indeed arguably Basu's feather looks more like one preexisting image and Seventh Avenue's looks more like another preexisting image than it does to Basu's design.  Even with the elements shared with a natural feather, the particular expression on the Accused Bag is relatively wider in all aspects (the whole feather portion, the eye, the heart) more **round** than oval, the stem (passim) curves differently than Peacock Feather #1.  If

these differences define Peacock Feather #1's originality over the prior art and preexisting images,
then the further differences in the accused work show dissimilarity to the ordinary observer.  The
similarities with a natural feather are explainably noninfringing because both Basu and Shankar
derived their works in part from natural feathers.

Complaint Exh. A, Dkt 1, page 10 of 12;

Basu Dep. Exh. 2, page TBG000003



Original Doc. TBG0001287, Bottom

Right Rotated; Basu Dep. Ex. 4



Original Document TBG0001291

Basu Dep. Exh. 4, page TBG0001291



Chokhany Dec. Exh. B, SA001229 –

SA001238



Here, as in *Klauber,* similarity of color schemes of the two designs is absent.  While the
shapes discussed above dominate the Accused Bag's graphic, comparing colors provides a material
additional distinction.  Starting with the backgrounds of the designs, the presumably protectable
expression in Basu's Peacock Feather # 1 has a very noticeable golden brown background that is

prevalent throughout the design. This golden brown background prominently appears between each feather barb and in the eye portion of the feather design; it also completely surrounds the outside of the feather. On the other hand, the design in the Accused Bag has a multitude of background colors. (items 8 and 9)  For example, the left feather barbs have a mainly green background while the right feather barbs have a mainly reddish background. Further, the top feather barbs are set on a background that has blue, pink, and white color variations. (item 12)

The color schemes of the barbs of the two designs also differ. Basu's Peacock Feather # 1 has bottom feather barbs that are black and green. It also has top feather barbs that are black and blue. On the other hand, the design in the Accused Bag has left feather barbs that are black, purple, and red. It has right feather barbs that are black purple and green – contrasting colors different than Basu's. Because peacock feather colors are derived from nature, all differences are material, while similarities are explainable as similarities in idea (The idea of placing Holstein-like black splotches on a white background is not the subject of the copyright, which protects only Beaudin's expression of this idea.") *Beaudin*, 95 F.3d at 2 and the fact that both expressions were inspired by natural peacock feathers.

The eye patterns of the two feather designs –  one for which peacock feathers are known (see footnote 1) – also differ in color. (item 3) Basu's Peacock Feather # 1 has a distinct blue center eye, which is surrounded by another blue oval, which is then encompassed by the golden brown color scheme noted above. On the other hand, the design in the Accused Bag has a distinct red center eye, which is surrounded by a circle that has orange, yellow, red, and green coloring. (items 3 and 4).  As pointed out, the other abstract shapes have "eyes" of different color as well as shape.

Even ignoring the vastly different backgrounds, the more discerning test should be used to just compare the "protectable" elements not found in a natural feather (as the creators of both the

Accused Bag expression and the Asserted Basu's Peacock Feather # 1 used to make their differing expression of peacock feathers.)  The most stringent test of striking similarity is really best suited (but not necessary here) since the artist who created the particular expression on the Accused Bag did not have "access" to Peacock Feather #1, which was only used as a guide to hand paint production bags (Basu Dep. page 35, line 19 – page 36, line 10; page 42, line 22 – 25; page 58, line 21 – 24; page 134, line – page 135 line 5).

The two works do not share the same "total concept and feel" and few aspects of the peacock feather portions of the works are the same. Accordingly, no reasonable juror could find that they are substantially similar and no inference of copying should be made from these differing peacock feather portions.

### E.      SUMMARY JUDGMENT IN FAVOR OF SEVENTH AVENUE IS APPROPRIATE

Because Basu's copyright infringement claim requires a showing of substantial similarity between Basu's Peacock Feather # 1 and the Accused Bag, and no reasonable jury could find that the two works meet this test, Basu's copyright infringement complaint fails to "state a claim to relief that is plausible on its face." *Peter F. Gaito*, 602 F.3d at 69.   Different colors for the peacock feather "barbs" and "barbules" and a different "eye" pattern in the two designs, coupled with the added abstract shapes of defendant's graphics are such that an average lay observer would never consider "the alleged copy as having been appropriated from the copyrighted work." *Id.* at 66 . The "total concept and feel" of defendant's two-dimensional graphics and plaintiff's Peacock Feather #1 are not substantially similar.  *Eden Toys*, 675 F.2d at 500.

Summary Judgment should be entered because Basu cannot demonstrate substantial similarity. *Id.* at 501. (finding no substantial similarity and affirming district court's dismissal of

the complaint); *Klauber*, 557 F. App'x at 8-9 (finding no substantial similarity and granting motion to dismiss copyright claim); *Gordon v. Invisible Children, Inc.*, No. 14-4122 (PGG), 2015 WL 5671919, 10-12 (S.D.N.Y. Sept. 24, 2015) (same).  The lack of similarity of protectable features leaves no room for an inference of copying, especially when both expressions were independently created including using natural peacock feathers, requiring those features to express such a feather.

## V.    FRAUD

The Court may declare the asserted copyright unenforceable per its inherent power, even without proclaiming the registration totally invalid.  After the Court receives and considers an Advisory Opinion, noting that the Court is not bound to accept it, the Court may determine that Registration No. VA 1-652-678 was procured by fraud and is therefore invalid, as against the whole world, as opposed to unenforceable against Seventh Avenue in this case, unclean hands requiring not advisory opinion.  *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 269 (W.D.N.Y. 2015) recently interpreted a Southern District case, stating:

> A party asserting fraud on the Copyright Office must establish (1) that the application for copyright registration is factually inaccurate; (2) that the inaccuracies were willful or *269 deliberate; and (3) that the Copyright Office relied on those misinterpretations." *Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*, No. 09 Civ. 1795(PKC), 2009 WL 3401182, at *2 (S.D.N.Y. Oct. 19, 2009).

The Copyright Office's "reliance" means "that the Copyright Office probably would have rejected the application had the omitted information been disclosed."  *Yurman Design, Inc. v. Chaindom Enterprises, Inc.*, 99 Civ. 9307 (JFK), 2002 WL 31358991, 510 (S.D.N.Y. 2002).  The fact the work was unpublished and the incorrect date are literally untrue.   The concealed derivative nature and illegal copying are far more material.   When coupled with Basu's goal of protecting the "idea" of a peacock feather on handbags, Basu's familiarity with Copyright procedures and the

principles for examination of applications in Compendium III, Basu is guilty of fraud and Registration No. VA 1-652-678 should be declared unenforceable.


**CONCLUSION**

Defendant Seventh Avenue respectfully moves that the Court enter Summary Judgment against Basu  and in favor of Seventh Avenue in its entirety because no reasonable jury would find that Plaintiff can prove a claim that the Accused Bag was copied or is substantially similar to Basu's Peacock Feather # 1.  If there were such a claim, Basu's copyright is unenforceable because of its unclean hands.

Respectfully submitted, /

Ladas & Parry LLP

Attorneys for Defendant, Seventh Avenue, Inc.

Date: March 31, 2017            By:___/David C. Brezina/_____
                                              David C. Brezina
                                              DB4599 (*pro hac vice*)
                                              Ladas & Parry, LLP
                                              224 South Michigan Avenue, #1600
                                              Chicago, IL   60604
                                              Tel 312.427.1300
                                              Fax 312.427.6663


Ralph Cathcart, Esq.
Ladas & Parry, LLP
1040 Avenue of the Americas
New York, NY 10018
Tel 212.708.1800
Fax 212.246.8959

CERTIFICATE OF SERVICE

I hereby certify that I have this 31st day of March, 2017, served a copy of the

foregoing by mailing, postage/shipping prepaid, in an envelope addressed to:

> Michael Robert Gilman
> Kaplan Breyer Schwarz & Ottesen LLP
> 100 Matawan Rd., Ste. 120
> Matawan, NJ 07747
> Email: mgilman@kbsolaw.com

Dated: March 31, 2017                                   /David C. Brezina/
                                                        David C. Brezina
                                                        DB4599 (*pro hac vice*)