**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                                             :
**THE BASU GROUP INC.,**                                     :
                                                             :
                                                             :
                        **Plaintiff,**                       :          **Civil Action No. 16-cv-00461-PGG**
                                                             :           **ECF CASE**
              **v.**                                         :
                                                             :
**SEVENTH AVENUE, INC.,**                                    :
                                                             :
                       **Defendant.**                        :
-------------------------------------------------------------X


---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---


**KAPLAN BREYER SCHWARZ, LLP**
Michael R. Gilman (MG 7608)
100 Matawan Road, Suite 120
Matawan, New Jersey 07747
Telephone (732) 578-0103, ext. 233
mgilman@kbsolaw.com


*Attorneys for Plaintiff The Basu Group, Inc.*


Dated: April 21, 2017

## TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................1

II.     **PLAINTIFF'S COPYRIGHT REGISTRATION IS VALID** ………..…………..1

    **A.  DEFENDANT'S ATTEMPT TO CLASSIFY PLAINTIFF'S
       COPYRIGHTED WORK AS A DERIVATIVE WORK, FAILS** .…………..1

        **1.  It Was Proper For Plaintiff Not To Limit Its Copyright Claim:
           Items Found in Nature** ….....……………………………………..2

        **2.  It Was Proper For Plaintiff Not To Limit Its Copyright Claim:
           Preexisting Works** ...…………………………………………..3

    **B.  FRAUD WAS NOT PERPETRATED ON THE COPYRIGHT OFFICE** .….7

        **1.No Fraud For Failure To Limit Copyright Claim** ..………………..9

        **2.No Fraud Relating To Publication Issues** ……………………………10

    **C.  DEFENDANT'S CASE LAW AND COMPENDIUM CITATIONS
       SUPPORT VALIDITY** ………………………………………………...13

III.    **THERE HAS BEEN UNAUTHORIZED COPYING OF PLAINTIFF'S
     DESIGN** ...........................................................................15

    **A.  INADMISSIBLE HEARSAY** .……………………………………..18

    **B.  THE DESIGNS IN QUESTION** …………………………………… 19

        **1.Access** …………………………………………………...20

        **2.Substantial Similarity** ……………………………………..22

IV.     **CONCLUSION** ……………………………………………………….25

# TABLE OF AUTHORITIES

**Cases**

*ABB Industrial Systems, Inc. v. Prime Technology, Inc.,*

120 F.3d 351 (2d Cir. 1997) ............................................................................. 18

*Acito v. IMCERA Group, Inc.,*

47 F.3d 47 (2d Cir. 1995) ..................................................................................... 8

*Beyah v. Coughlin,*

789 F.3d 986 (2d Cir. 1986) ............................................................................. 18

*Boisson v. Banian,*

273 F.3d 262 (2d Cir. 2001) ................................................................. 20, 22, 23

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,*

769 F.2d 919 (2d Cir. 1985) ............................................................................. 18

*Chere Amie, Inc. v. Windstar Apparel, Corp.,*

191 F. Supp.2d 343 (SDNY 2001) ........................................................... 8, 13, 17

*Chill v. General Elec. Co.,*

101 F.3d 263 (2d Cir. 1996) ............................................................................... 8

*Durham Industries, Inc. v. Tomy Corp.,*

630 F.2d 905 (2d Cir. 1980) ............................................................................... 1

*Eckes v. Card Prices Update,*

736 F.2d 859 (2d Cir. 1984) ......................................................................... 8, 15

*Eyal R.D. Corp. v. Jewelex New York, Ltd.,*

576 F. Supp.2d 626 (SDNY 2008) ...................................................................... 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*

499 U.S. 340 (1991) ....................................................................................................16, 23

*Fisher-Price Toys, Div. Of Quaker Oats Co. v. My-Toy Co., Inc.,*

385 F. Supp. 218 (SDNY 1974) ....................................................................................20

*Fonar Corp. v. Domenick,*

105 F.3d 99 (2d Cir. 1997) .......................................................................................1, 15

*Gund, Inc. v. Fortunoff, Inc.,*

3 U.S.P.Q.2d 1556 (SDNY 1986) ............................................................................20, 22

*H. Sand & Co., Inc. v. Airtemp Corporation,*

934 F.2d 450 (2d Cir. 1991) ........................................................................................18

*Hamil Am. Inc. v. GFI,*

193 F.3d 92 (2d Cir. 2001) .....................................................................................17, 23

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,*

780 F.2d 189 (2d Cir.1985) ...........................................................................................1

*Helios Int'l. S.A.R.L. v. Cantamessa USA, Inc.,*

23 F. Supp.3d 173 (SDNY 2014) ...................................................................................9

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*

413 F.3d 257 (2d Cir. 2005) ........................................................................................16

*Jenkins v. Winter,*

540 F.3d 742 (8th Cir. 2008) .......................................................................................19

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),*

71 F.3d 996 (2d Cir. 1995) .................................................................................17, 23, 25

*Lipton v. Nature Co.,*

71 F.3d 464 (2d Cir. 1995) .................................................................................16, 20, 22

*Olem Shoe Corp. v. Washington Shoe Corp.,*

   591 Fed. Appx. 873 (11th Cir. 2015) ........................................................................10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*

   602 F.3d 57 (2d Cir. 2010) ...........................................................................17, 23

*Prince Group, Inc. v. MTS Products,*

   967 F. Supp. 121 (SDNY 1997) ........................................................................16

*Roberts v. Gordy,*

   181 F. Supp.3d 997 (S.D. FL 2016) ...............................................................14, 15

*Santrayall v. Burrell,*

   993 F. Supp. 173 (SDNY 1998) .........................................................................9

*Scheiner v. Wallace,*

   832 F. Supp. 687 (SDNY 1993) ........................................................................8, 9

*Sorenson v. Wolfson,*

   96 F. Supp.3d 347 (SDNY 2015) ...................................................................13, 14

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,*

   338 F.3d 127 (2d Cir.2003) ...........................................................................23

*Warner Bros. Entertainment Inc. v. RDR Books,*

   575 F. Supp.2d 513 (SDNY 2008) ...............................................................3, 5, 7, 9

*Whimsicality, Inc. v. Rubie's Costume Co.,*

   891 F.2d 452 (2d Cir. 1989) ........................................................................8, 14, 15

*Yurman Design, Inc. v. PAJ, Inc.,*

   262 F.3d 101 (2d Cir. 2001) ........................................................................17, 23

iv

**Statutes**

17 U.S.C. § 101 ...................................................................................................................3

17 U.S.C. §102 ..................................................................................................................15

17 U.S.C. §106 ............................................................................................................15, 16

17 U.S.C. §106(3) .............................................................................................................16

17 U.S.C. §410(c) ...............................................................................................................1

17 U.S.C. §501 ..................................................................................................................16

17 U.S.C. §602 ..................................................................................................................16

*17 U.S.C.A. § 102(a)* .........................................................................................................2

**Rules**

Fed. R. Civ. P. 56(c)(4) .....................................................................................................18

Fed. R. Civ. P. 9(b) .............................................................................................................8

Fed. R. Evid. 801(c) ..........................................................................................................18

**Other Authorities**

*2 Patry on Copyright*, § 3:38.50......................................................................................2, 10

*Copyright Office Compendium*, Section 621.2.................................................................3, 4, 10

*Copyright Office Compendium*, Section 621.9(A)(1) .........................................................3, 5, 10

*Copyright Office Compendium*, Section 612.7(I)...............................................................12

*Copyright Office Compendium*, Section 313.6(B) ............................................................15

I.      __INTRODUCTION__

Defendant has moved for summary judgment on two grounds: (1) That it has overcome the presumption of validity in Plaintiff's copyright registration, and based on those same facts, that Plaintiff's copyright registration is invalid and unenforceable; and (2) That there has been no unauthorized copying of Plaintiff's copyrighted design.   This is Plaintiff's opposition to Defendant's motion.  Defendant's motion should be dismissed and summary judgment of a non-invalid registration, copyright infringement and willful copyright infringement should be granted for Plaintiff based on Plaintiff's co-pending motion for summary judgment.

II.      __PLAINTIFF'S COPYRIGHT REGISTRATION IS VALID__

Under 17 U.S.C. §410(c), a certificate of copyright registration constitutes *prima facie* evidence of the validity of the registration, as well as of all of the facts stated in the registration. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).  After making this *prima facie* showing, the burden shifts to the defendant to rebut the presumption.  *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997), *citing Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).  Defendant's attempts in its motion for summary judgment to cast doubt on the validity of Plaintiff's registration all fail, as a matter of law.

A. **DEFENDANT'S ATTEMPT TO CLASSIFY PLAINTIFF'S COPYRIGHTED WORK AS A DERIVATIVE WORK, FAILS**

In Section III(B) of Defendant's brief in support of its motion for summary judgment (hereinafter "Df's brief"), Defendant tries to build a case that Plaintiff's copyright registration should be invalidated or rendered unenforceable.  In Section III(B)(i) of Df's brief, Defendant recognizes that its first hurdle in trying to convince the Court of this argument, is that it must establish that Plaintiff's work is a derivative work.

While it is clear from Section III(B)(i) of Df's brief that Defendant is arguing that

1

Plaintiff's work is a derivative work, in case Defendant tries to back track in its reply brief from this position, it is without doubt that ***only*** in the case of either a derivative work or a compilation is a copyright claimant required to complete the Limitation of Copyright Claim section (space 4) of the electronic version of the Copyright Office Visual Arts (VA) application, or to complete space 6 of the Copyright Office's paper VA form (space 6 of the paper VA form is actually entitled, "Derivative Work or Compilation").   (An alleged copy of the electronic application form used by Plaintiff when it filed its subject application is attached as exhibit A to the Brezina Declaration, pages SA001229 – SA001238, in support of Df's brief.  A copy of the Copyright Office's paper VA form is attached as Exhibit A to the Declaration of Michael R. Gilman in support of this opposition brief, hereinafter "Ex. __ to Gilman Dec.")[1].

    **1.**  **It Was Proper For Plaintiff Not To Limit Its Copyright Claim:**
          **Items Found in Nature**

It must first be recognized that items found in nature are not required to be disclosed to the Copyright Office under the Limitation of Claim screen of an application for registration.  "A sculpture of a dog is not a derivative work because it is based on a dog, no more than a photograph of a dog is a derivative work.  ***A real dog is not an original work of authorship under 17 U.S.C.A. § 102(a) and therefore cannot be a pre-existing work***."  *2 Patry on Copyright*, § 3:38.50 (emphasis added).  As such, any of the images of Defendant's counterclaim Exs. B and C (hereinafter "Df's Exs. B/C") that are of real Peacock feathers, cannot, as a matter

---

1     Space 4 of the electronic form and space 6 of the paper form are equivalent in the eyes of the Copyright Office.  Copyright Office Compendium III ("Compendium"), Chapter 600, Section 618.2, reads in relevant part:  "If the work contains an appreciable amount of unclaimable material, the applicant must exclude that material from the claim and limit the application to the new copyrightable material that the author contributed to the work.  When completing an online application the applicant should provide this information on the Limitation of Claim screen [referred to herein as space 4]; when completing a paper application, the applicant should provide this information in spaces 5 and/or 6(a) and 6(b) of the application."

of law, be used to define Plaintiff's copyrighted work as being a derivative work.  *See also*, the below quoted Compendium Sections 621.2 and 621.9(A)(1), discussing that uncopyrightable material need not be excluded from a copyright claim.

### 2.   It Was Proper For Plaintiff Not To Limit Its Copyright Claim: Preexisting Works

Even if the two images from exhibit 4 to the Basu deposition, shown and discussed in Df's brief on page 11 (hereinafter these two images referred to as the "Ex. 4 Images"), are considered to be "preexisting works"[2], Plaintiff's copyrighted work is still not a derivative work.

In 17 U.S.C. § 101, "Derivative Work" is defined as:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications, which, as a whole, represent an original work of authorship, is a 'derivative work.'"

Df's brief argues in Section III(B)(i) that *because* the Ex. 4 Images are preexisting material, Plaintiff's work *is (must be) a* derivative work.  This is incorrect.  While it is true that if Plaintiff's work is a derivative work, then the Ex. 4 Images are preexisting material, but it is not always correct that the reverse, as proffered by Defendant, is true.  This is supported both by this Court's precedent and the Compendium.

In *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp.2d 513, 538 (SDNY

---

[2]     Plaintiff does not agree or acknowledge herein that the middle image found on page 11 of Df's brief (TBG0001291) is preexisting material.  While this image appears to contain a copyright notice, there is no admissible evidence of what the alleged copyright covers.  For example, and based upon looking at this image (which is all that can be done in this proceeding), it seems clear to Plaintiff that this is not some manmade (copyrightable) form of a portion of a Peacock feather.  Instead, and if copyright does subsist in the image as alleged in the notice, it is more likely because the image is a photograph of this portion of a natural Peacock feather; i.e., for all intents and purposes of this action, this image was just another image of a natural Peacock feather gathered by the artists/authors of Plaintiff's copyrighted work (discussed more below).

2008), this Court held that "[a] work is not derivative, however, simply because it is 'based upon' the preexisting works.  If that were the standard, then parodies and book reviews would fall under the definition, and certainly 'ownership of copyright does not confer a legal right to control public evaluation of the copyrighted work.'  *(citation omitted)*  The statutory language seeks to protect works that are '***recast, transformed, or adapted***' into another medium, mode, language, or revised version, ***while still*** representing the 'original ***work of authorship***.'" (emphasis added)

Likewise, the Compendium recites that not all unclaimable (preexisting) material needs to be excluded from an application.  Only if the unclaimable material represents an ***appreciable portion*** of the work as a whole must the applicant identify or disclaim this material in the application.  In particular, Compendium, Chapter 600, Section 621.2 (attached as part of Ex. B to Gilman Dec.), reads in its entirety:

### 621.2 Unclaimable Material That Need Not Be Excluded from the Application

If the applicant intends to register a work that contains a minimal amount of unclaimable material, the applicant need not identify or disclaim that material in the application.  Unclaimable material should be disclaimed only if it represents an appreciable portion of the work as a whole. Likewise, if the work contains material that is uncopyrightable, such as facts or mere ideas, there is no need to exclude that material from the application. Generally, quotations from a preexisting work do not need to be excluded as unclaimable material.
> *Examples:*
> • An online application is submitted for an essay. The applicant asserts a claim in "text." In the Note to Copyright Office field, the applicant explains that he "read many newspapers and books in researching this topic." The work contains one quote. The New Material Included / Material Excluded fields may be left blank, because the quote is too brief to require a limitation of claim.[3]
> • An application is submitted for a musical work titled *Ask Not What Your Country Can Do For You*. The chorus contains the phrase, "Ask what you can do

---

3   Note also that this example makes no mention of a requirement for exclusion from the copyright claim of any of the many newspapers or books read by the applicant in researching the topic of the essay.  Plaintiff contends this is no different than the artists/authors of Plaintiff's work looking at a bunch of images of Peacock feathers and then creating the copyrighted work.

for your country," which was taken from President Kennedy's inaugural address. The New Material Included/Material Excluded fields may be left blank, because short phrases are uncopyrightable.

Similarly, Section 621.9(A)(1) of the Compendium (attached as part of Ex. B to the Gilman

Dec.), reads in its entirety:

**621.9(A)(1) Works Containing Uncopyrightable Material or a Minimal Amount of Unclaimable Material**

As discussed in Section 621.2, if a work contains only a minimal amount of unclaimable material, the New Material Included, Material Excluded, and Previous Registration fields may be left blank in the online application, or spaces 5, 6(a), and/or 6(b) may be left blank in a paper application. Likewise, there is no need to complete these portions of the application if the work contains material that is not copyrightable.

*Examples:*
• An online application is submitted for a 500-page catalog. A statement on the deposit copy indicates that the text and photographs on pages 390–395 appeared in an earlier edition of the catalog, but the rest of the content is new. The Limitation of Claim screen may be left blank, because the work does not contain an appreciable amount of previously published material.
• An online application is submitted for a comedy sketch. The applicant asserts a claim in "text." In the Note to Copyright Office field, the applicant explains that "the characters in this work are loosely based on two well-known television personalities." The New Material Included/Material Excluded fields may be left blank, because it appears that the author merely borrowed ideas, themes, or other uncopyrightable material from another work.

None of the images of Df's Exs. B/C were "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship.'" *Warner Bros.*, 575 F. Supp.2d at 538.   The following excerpts from the Deposition of Bhaskar Basu, Plaintiff's Rule 30(b)(6) deponent, taken on Monday, November 21, 2016 at the offices of Defendant's counsel in New York, NY (Ex. C to Gilman Dec.), establish that the images and real peacock feathers of Df's Exs. B/C were used as mere inspiration in the creation of Plaintiff's copyrighted work.

**Page 41**
**22      Q.    And can you explain how use for**
**23   inspiration occurs?**

24     A.     So when I'm designing anything, and
25   since we are talking about the peacock feather, I'm
Page 42
1   going to speak to the peacock feather, for me it is
2   about creating an interpretation that can be
3   reproduced on a leather handbag and replicated
4   several times by our artists and artisans so that
5   there is a consistency in the look and feel of that
6   element that we are taking inspiration from.

Page 45
**5     Q.     Was this inspiration used to create**
**6   the art in exhibit two?**
7     A.     No, not entirely.  So what we did
8   was, yeah, we got a lot of photographs and images
9   that we could find, but then we also had the real
10   feather, and typically when I'm creating an artwork,
11   what I do is I glance across all these images to try
12   and capture, you know, the image that forms in my
13   mind.
14          So, you know, as a child, whenever
15   I've drawn, and I did a lot of it when I was in
16   school and high school, etc., my approach to drawing
17   and my approach to art has always been from an angle
18   of interpretation or an angle of perception.  So I
19   use these images mostly for -- less for technical
20   accuracy and more for kind of like an interpretation
21   value.  What is the look and feel of that feather?
22   What's catching my attention?
23          And so once I've looked at all these
24   different feathers and then I've got the real
25   feather, which was the primary guidance for us,
Page 46
1   that's when we started drawing and creating these
2   different guidelines to kind of create the feather,
3   and we didn't get to something like this at our
4   first attempt because we attempted various different
5   types of, you know, or methods of drawing the
6   feather and applying color to it to see what made it
7   look more realistic, and there was a lot of trial
8   and error before we actually ended up with this
9   version.

Page 48
**8     Q.     All right.  And you used all the**
**9   inspiration in exhibit four to inspire you to create**

10    **the art in exhibit two?**
11         A.      Yeah.
12               MR. GILMAN:  Objection.
13         A.       So, you know, it's hard for me to say
14    that I used all of them.  So the way we design is
15    when we focus on a subject, we try to gather as much
16    information as in pictures that we can.  We're
17    not -- from your earlier question, you were asking
18    me about the definition, etc.  For us, we're
19    creating art.  So the definition wasn't the
20    important thing.  For us, it was kind of getting the
21    look and feel of what we want to draw.

According to all of the above, as well as simply comparing Plaintiff's copyrighted work to the alleged preexisting material, as a matter of law the Court must conclude that Plaintiff did not violate any of the rules laid out in the Compendium by not completing the Material Excluded and New Material Included fields of its application.   First, Df's Ex. C contains only natural Peacock feathers.  Second, most of the images of Df's Ex. B are also of natural Peacock feathers.  Third, as to the Ex. 4 Images focused on in Df's brief, one is of a portion of a natural Peacock feather, and even if not, neither were "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship.'" *Warner Bros.*, 575 F. Supp.2d at 538.  Fourth, for any others of the images of Df's Ex. B that are not of natural Peacock feathers, what is true above for the Ex. 4 Images, is true for these.

### B.  FRAUD WAS NOT PERPETRATED ON THE COPYRIGHT OFFICE

A pleading must be based on an allegation of fraud perpetrated upon the Copyright Office if it is to invalidate or make unenforceable a registration based upon errors, misstatements or omissions in a copyright application.  As this Court held in *Eyal R.D. Corp. v. Jewelex New York, Ltd.*, 576 F. Supp.2d 626, 640 and 641 (SDNY 2008):

> Assuming *arguendo* (emphasis in original) that Eyal's registration application contained errors, misstatements, or omissions in one or more of the respects urged by Jewelex, that does not resolve the ultimate question before the

Court.

The ultimate question the Court must resolve is whether an error, misstatement or omission in an application for registration invalidates the copyright. Courts considering the issue have generally followed a liberal approach to upholding erroneous registration applications. For example, the Second Circuit stated in *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984), stated that "only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action."

\*\*\*

In this case, notwithstanding Jewelex's conclusory assertions, there is no evidence in the record to support a finding that Reout Kallati intended to defraud the Copyright Office when she completed the application for copyright registration.

When pleading fraud, Fed. R. Civ. P. 9(b). must be followed.  Second Circuit Courts do not follow the lower standard for scienter of Rule 9(b).  "Despite Rule 9(b)'s lower standard for scienter, this Court has stated that 'we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.''  *Acito [v. IMCERA Group, Inc.*, 47 F.3d [47,] at 52 [(2d Cir. 1995)] (citation omitted). … [W]e have held that 'plaintiffs must allege facts that give rise to a ***strong inference of fraudulent intent***.'  *Acito, 47 F.3d at 52*." (emphasis in original)  *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).  *See also, Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp.2d 343, 350 (SDNY 2001) ('A party seeking to establish fraud on the Copyright Office in order to rebut the presumption of copyright validity, bears the heavy burden of proving deliberate misrepresentation.  *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989)')."

Accordingly, in the Second Circuit a pleading must "allege facts that unambiguously give rise to a strong inference of fraudulent intent."  *Scheiner v. Wallace*, 832 F. Supp. 687, 702 (SDNY 1993).  The *Scheiner* Court further explained, "[f]acts that are merely as consistent with

fraudulent intent as they are with its absence are insufficient." *Id.* These holdings were reinforced in 2014 by this Court in *Helios Int'l. S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp.3d 173, 193-194 (SDNY 2014), where the Court dismissed a party's fraud claim.

### 1. <u>No Fraud For Failure To Limit Copyright Claim</u>

Even should the Court determine for purposes of these motions for summary judgment that Plaintiff's copyrighted work is a derivative work, Plaintiff's failure to disclose the inspirational images of Df's Exs. B/C to the Copyright Office does not, as a matter of law, rise to a level sufficient to invalidate or render unenforceable Plaintiff's copyright registration. Defendant cannot, as a matter of law, meet the above discussed high standards for invalidating or rendering unenforceable Plaintiff's copyright registration. The undisputed facts clearly establish that: (a) most of the images of Df's Exs. B/C are of real peacock feathers, which are not works of authorship from which a derivative work can be created; (b) the artists who created Plaintiff's copyrighted work only used the images of Df's Exs. B/C as inspiration to understand the look and feel of a real peacock feather, and they did not use these images to "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship'" (*Warner Bros.*, 575 F. Supp.2d at 538); and (c) even if (a) and (b) above are found to be untrue, it is nevertheless clear and undisputed that any such failure to disclose the images of Df's Exs. B/C to the Copyright Office cannot rise to the necessary level of fraudulent concealment, since "[f]acts that are merely as consistent with fraudulent intent as they are with its absence are insufficient." *Scheiner*, 832 F. Supp. at 702.

The facts and holding of *Santrayall v. Burrell*, 993 F. Supp. 173, 176 and 176-177 (SDNY 1998), are instructive:

> Defendants contend that because Santrayll and Walker admitted in deposition testimony that they utilized the works of other artists, this constitutes a knowing

failure to advise the Copyright Office of facts that might have led to the rejection of the application. This argument fails for two reasons: (1) a reasonable jury could conclude that the omissions by Santrayll were not deliberate misrepresentations, and therefore lacked the requisite scienter, and (2) the prior works played such a minor role in Plaintiffs' Song that the unauthorized use could not possibly have led the Copyright office to reject the applications.

***

"The amount of creativity required for copyright protection of a (work) is decidedly small." (citation omitted). "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity."  (citation omitted). Examination of the Plaintiffs' Song indicates beyond a shadow of a doubt that the work, other than the unauthorized parts, contain original portions. The prior works comprise only a very minor part of Plaintiffs' Song, and the remaining original portions are entitled to copyright protection. The Court determines that disclosure of the omissions would not cause the Copyright Office to consider rejecting the application, which not only requires denial of the defendants' motion for summary judgment, but renders the affirmative defense of fraud on the Copyright office inappropriate. Along the same lines, the Court determines that the plaintiffs' omissions in their registration application are not transgressions of serious proportions. Accordingly, the affirmative defense of unclean hands is likewise inappropriate for this proceeding.

In other words, "[w]here only insubstantial elements or unprotectible elements such as ideas have been copied from another's work"; i.e., where another's work is only used as inspiration, or the other work is not a work of authorship because it is an element of nature, no disclosure is required.  5 *Patry on Copyrights*, § 17:112, *citing to*, *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 Fed. Appx. 873, n. 10 (11th Cir. 2015).  This was also earlier supported in the above discussions of Compendium Sections 621.2 and 621.9(A)(1) (Ex. B to Gilman Dec.).  Therefore, and as there is no other space on the Copyright application requiring disclosure of Df's Exs. B/C, no error (purposeful or not) was made by Plaintiff when it filed the subject application.

## 2.  **No Fraud Relating To Publication Issues**

Defendant's claim that Plaintiff's work was unpublished, is incorrect.  Not only did Plaintiff's representative testify at his deposition to how the copyrighted work was directly and specifically applied to its bags, but when expressly asked if the copyrighted image was on bags,

10

Plaintiff's representative testified it was.    As various portions of Plaintiff's representative's testimony is taken out of context in facts 29-34 of Defendant's Rule 56.1 Statement[4], here are additional portions of that testimony that contradict Defendant's argument and/or put the testimony into context.   First, completing the partial testimony found in Defendant's Fact 29, which was taken from page 58, lines 21-24 of Plaintiff's deposition:

Page 58
24   feather.  From then on, we started recreating that
25   for the different bags that you have or rather the
Page 59
 1   different drawings that you have shown in exhibit
 2   seven.
 **3          Q.       So the actual sample that was**
 **4   photographed for exhibit two wasn't actually in a**
 **5   handbag?**
 6          A.       It is the exact feather that we have
 7   drawn, and like, you know, in terms of how we have
 8   drawn it, it is pretty much the exact same feather
 9   that we have drawn in each and every one of these
10   drawings, and if you look at it -- let's see, which
11   page was that?
12               So in exhibit seven, the very first
13   page with that image, which says TBG 00004, has that
14   feather over there, and then, let's see, I mean,
15   this is pretty much the look and feel that we have
16   tried to emulate and recreate everywhere we have
17   done our rest of our feather work.

Then, a little further during the deposition, Plaintiff's representative was directly asked if the image in exhibit two (i.e., the copyrighted image) was itself on a handbag, and the following testimony makes clear that it was, and continues to be.

Page 60
**17          Q.       The exact image in exhibit two was**
**18   not itself on a handbag that was sold; correct?**
19          A.       I would say that's incorrect because

---

4       Which Plaintiff's believes to be an abusive document used by Defendant to extend the page limit of its principal brief.

20   if you look at in exhibit seven, the page that says:
21   TBG 000006, and you look at peacock feather four,
22   you'll see that there is a scanned document where
23   there is the left side of that scan and the right
24   side of that scan, the peacock feather right in the
25   middle is pretty much exactly that peacock feather.
Page 61
1       **Q.      The one in the lower left?**
2       A.      The one in the center.  The top --
3   the top center.  So this is peacock feather four and
4   we scan -- it was a large piece of paper, so we had
5   to scan the left side and then right side.  So the
6   peacock feather in the center is the exact same
7   peacock feather, and as I was explaining it to you
8   earlier, we create an element and then we place it
9   in different parts of a bag to see where it fits
10   best and how it tells the story best.

Simply because Plaintiff's bags, etc. bearing the copyrighted work are hand painted and/or have additional elements, does not mean the copyrighted image is not, has not continually been and was not at the time of publication, on Plaintiff's bags.  Plaintiff's testimony establishes that it created the work and then that work was applied to Plaintiff's products.  The fact that this application to Plaintiff's products is by hand painting, as opposed to mass, machine production, is irrelevant to the issues of this proceeding.

As to the date of publication, January 1, 2008, stated on the registration, had the copyright specialist who examined the application thought this was odd or needed correcting, he/she would have inquired of Plaintiff.  This exact situation is expressly addressed in the Compendium, Ch. 600, Sec. 612.7(I), repeated here, as follows (Ex. B to Gilman Dec.):

**612.7(I) Impossible or Impractical Date of Publication**

If the applicant provides a date of publication that does not exist, or a date that is impossible or impractical based on information provided elsewhere in the registration materials, the registration specialist will ask the applicant to explain the discrepancy.
    *Examples:*
    • The date of first publication given on the application is September 31, 2010.

12

> • The date of first publication is earlier than the year of the author's birth specified in the application.
> • The date of first publication is earlier than the year of completion specified in the application.

Further, this Court has already ruled on the lack of importance of the types of publication issues raised by Defendant.

> Defendants' space 3 argument is difficult to understand, but seems to be based on their mistaken belief that copyright is granted by the Copyright Office. Under defendants' apparent theory, the works in question were published prior to registration and thus the Copyright Office was defrauded by the lack of information about this purported publication. However, since copyright is automatic, the date of any prior publication is irrelevant to the existence of protection. ***Moreover, even if the works are published, the defendants cannot prove fraud on the Copyright Office since the Copyright Office would not have rejected the application had it known that the works had previously been published.*** With the abolition of the notice requirement in the 1988 Berne Convention Implementation legislation, the importance of publication has been effectively reduced to a factor in national eligibility determinations, determinations that are irrelevant to this dispute between domestic corporations and individuals. At most, the Copyright Office would have asked the Plaintiffs to supplement the applications. (emphasis added)

*Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp.2d 343, 351 (SDNY 2001).

## C. DEFENDANT'S CASE LAW AND COMPENDIUM CITATIONS SUPPORT VALIDITY

All of the case law and legal authority cited in Section III(B) of Df's brief argue against Defendant's attempt to invalidate, or make unenforceable, Plaintiff's copyright registration.

In *Sorenson v. Wolfson*, 96 F. Supp.3d 347 (SDNY 2015), Judge Koeltl found fraud on the Copyright Office by the copyright holder, Sorenson.  Sorenson filed his copyright application stating he was the author and owner of the architectural work.  Apparently, however, there was significant evidence to show otherwise.  Not only was there contractual evidence establishing authorship and ownership of the plans in another (Ernst), but when Sorenson filed the architectural plans with the Copyright Office he ***purposely removed*** any reference thereon to

Ernst, including Ernst's copyright notice.  Judge Koeltl held that Sorenson's explanations for these omissions was not credible, and that as such, they were not inadvertent and unintentional, *Id.* at 364, holding "[h]ad the Copyright Office known that Ernst prepared and created the plans - and that Ernst had not transferred ownership to [Sorenson] *sic.* - the Copyright Office would not have granted Sorenson a copyright registration."  *Id.*

*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir. 1989) (a case cited at p. 14 of Plaintiff's motion for summary judgment in support of this Circuit's "heavy burden of proving deliberate misrepresentation" standard before fraud on the Copyright Office is able to be established to invalidate a copyright registration), is another black and white case of deliberate misrepresentation.  In *Whimsicality*, the copyright holder knew when it filed its applications that the works it was seeking to cover were costumes, and further knew that if they designated the works as costumes on the application forms, the applications would have been rejected by the Copyright Office.  Knowingly and purposely, therefore, the *Whimsicality* plaintiff designated these works as "soft sculptures" on their applications instead of as "costumes".  The Second Circuit rightly held these actions to be "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application…"  *Id.* at 456.

Defendant's citation to *Roberts v. Gordy*, 181 F. Supp.3d 997 (S.D. FL 2016) makes no reference to a particular page or quoted language in support of its argument.  While on its own, this should be enough to expose Defendant's "let's see what sticks" approach to case citation, it is nevertheless pointed out here that the Florida court easily held that "[t]he record in this case belies any notion that the errors were inadvertent."  *Id.* at 1011.  In *Roberts*, there were multiple bad acts, including, but not necessarily limited to, multiple copyright filings containing incorrect authorship, ownership and prior registration information.  In one instance the court held, "[t]he

14

argument that FNG, Harr, and Jackson were not aware of the prior registrations, the inaccuracies on the second registration, or of the filing of this registration is untenable." *Id.* at 1013.

Defendant's citation to *Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) on p. 9 of Df's brief, miscasts the *Fonar* holding to try to suggest that the presumption of validity could be overcome without a showing of fraud and/or deliberate misrepresentation.  In stark contrast, however, the *Fonar* panel upheld earlier Second Circuit case law (both the above discussed *Whimsicality* case and *Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir. 1984)), holding that since the defendant's had not alleged that the copyright holder had defrauded or made deliberate misrepresentations to the Copyright Office, the presumption of validity in the copyright could not be overcome.  ("Mr Plus does not allege that Fonar has defrauded or made any deliberate misrepresentation to the Copyright Office.  The presumption of validity of Fonar's copyright therefore cannot be overcome on this basis.")  *Fonar*, 105 F.3d at 105.

Compendium Section 313.6(B), cited at p. 12 of Df's brief, is directed specifically to the use of preexisting material in a "derivative work" or a "compilation".  For all of the above reasons, therefore, this Compendium section adds nothing more to Defendant's arguments.

**III.    THERE HAS BEEN UNAUTHORIZED COPYING OF PLAINTIFF'S DESIGN**

"Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression … from which they can be perceived, reproduced, or otherwise communicated …  Works of authorship include the following categories: … (6) pictorial, graphic and sculptural works …"  17 U.S.C. §102.  Plaintiff's work is a 2-dimensional pictorial work which is subject matter appropriate for copyright protection.  "[T]he owner of copyright … has the exclusive rights to do and to authorize … distribut[ion of] copies … of the copyrighted work to the public by sale or other transfer of ownership…"  17 U.S.C. §106.  "Importation into the

United States, without the authority of the owner of copyright under this title, of copies … of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies … under section 106, actionable under section 501."   17 U.S.C. §602. "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 …, or who imports copies … into the United States in violation of section 602, is an infringer of the copyright or right of the author …" 17 U.S.C. §501.

To prove infringement, a copyright holder must establish (1) its ownership of a valid copyright, and (2) unauthorized copying of Plaintiff's copyrighted work.  *See* 17 U.S.C. §501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995).  In this context, "copying" refers to the infringement of any of the copyright owner's exclusive rights under 17 U.S.C. §106, including the right "to distribute copies .. of the copyrighted work to the public by sale or other transfer of ownership…" 17 U.S.C. §106(3).  Therefore, although Defendant denies it is the manufacturer of the accused bag, Defendant may be found liable for infringement as the distributor of unauthorized copies.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).  Lest there be any misunderstanding, 17 U.S.C. §602 expressly defines Defendant's act of importing the accused bag as being "an infringement of the exclusive right to distribute copies … under section 106, actionable under section 501."

To establish copying, and "[i]n the absence of direct copying Plaintiff can show an inference of copying … by showing the two designs are substantially similar and the infringer had access to the design."  *Prince Group, Inc. v. MTS Products*, 967 F. Supp. 121, 125 (SDNY 1997).  For purposes of this Action, the Court has already held in its Order denying Defendant's motion to dismiss of December 12, 2016 (Doc 45), at footnote 1, that it is the "ordinary

16

observer" test, and not the "more discerning" observer test, which is to be used in determining

substantial similarity in this Action.    In particular, the Court held in footnote 1, "[h]ere,

Plaintiff's peacock feather design is not – in whole or in part – 'simply the [unprotectible]

depiction of a [feather] as it would appear in nature.  It is an artistic rendering that has its own

unique qualities.'  *Hamil Am.*[ *Inc. v. GFI*], 193 F.3d [92,] 101 [(2d Cir. 2001)] (noting that 'the

fact that the designs at issue … portrayed flowers [does] not preclude the use of the ordinary

observer standard').  Accordingly, the 'ordinary observer' test is the appropriate standard in this

case." Since this determination by the Court, the parties have completed fact discovery, have

waived expert discovery, and, as a matter of law, no disputed facts have arisen to shed doubt on

the fact of the "wholly original" nature of Plaintiff's copyrighted work.

Application of the "ordinary observer" test has also been defined for this Action at

footnote 1 of the Court's Order of Doc 45:

> 'The standard test for substantial similarity between two items is whether
> an 'ordinary observer, unless he set out to detect the disparities, would be
> disposed to overlook them, and regard [the] aesthetic appeal as the same.'' *Peter
> F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010)
> (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). 'In
> applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an
> average lay observer would recognize the alleged copy as having been
> appropriated from the copyrighted work.'' *Id.* (quoting *Knitwaves, Inc. v.
> Lollytogs Ltd. (Inc.)*, 71F.3d996, 1002 (2d Cir. 1995)).

Since, as discussed above, Defendant has not rebutted the presumption of validity in Plaintiff's

registration because Defendant has not "establish[ed] fraud on the Copyright Office [by meeting]

… the heavy burden of proving deliberate misrepresentation" *Chere Amie*, 191 F. Supp.2d at

350, attention can now be directed to the second prong of the infringement analysis.  There has

been unauthorized copying since, as a matter of law, there is no admissible evidence of

independent creation, access to Plaintiff's copyrighted work has been established, and there is, at

least, a substantial similarity (if not a striking similarity) between the designs.

### A.   INADMISSIBLE HEARSAY

Paragraphs 12, 14, 15, 18 and 24 of the Declaration of Anurag Chokhany are hearsay.  As such they may not be relied upon in support of Defendant's summary judgment motion.  Df's brief admits at p. 6 that "paragraphs 12, 14, 15 and 18 are translations of statements made by Sanjit Das" the artist who created Defendant's infringing design.  Paragraph 24 of the Chokhany Dec. itself states it is the confirmation of a statement of someone other than the declarant; i.e., it is a statement of Manju Mittal, who is not the declarant Mr. Chokhany.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Under Fed. R. Civ. P. 56(c)(4) "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, ***set out facts that would be admissible in evidence***, and show that the affiant or declarant is competent to testify on the matters stated.  (emphasis added)

As, at least, paragraphs 12, 14, 15, 18 and 24 of the Chokhany Dec. are hearsay and, further, do not meet the admissibility requirement of Rule 56(c)(4), they do not, and cannot, create triable issues of fact in support of Defendant's motion for summary judgment.  *See*, *ABB Industrial Systems, Inc. v. Prime Technology, Inc.*, 120 F.3d 351, 357 (2d Cir. 1997) ("…ABB's reports are plainly hearsay, … [and] would therefore be inadmissible at trial and cannot create a triable issue of fact");  *H. Sand & Co., Inc. v. Airtemp Corporation*, 934 F.2d 450, 454-455 (2d Cir. 1991) ("'[h]earsay testimony … that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(c)(4)] affidavit'", *citing to Beyah v. Coughlin*, 789 F.3d 986, 989 (2d Cir. 1986), *quoting* 6 *Moore's Federal Practice* Para. 56.22[1], at 56-1312 to 56-1316 (2d ed. 1985); *see also, Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769

F.2d 919, 924 (2d Cir. 1985) and *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).

As there is no other support in Df's brief or the Chokhany Dec. for independent creation of the accused design (other than attorney argument), as a matter of law the Court cannot find independent creation.  Further, and as argued in the following sections of this opposition brief, the strikingly similar look of the accused design to Plaintiff's copyrighted design, as opposed to the looks of Plaintiff's and Defendant's designs compared to natural Peacock feathers or the myriad other Peacock art known to consumers (Exs. L-N to Gilman Dec.), as well as the overwhelming evidence of prior knowledge of Plaintiff's copyright and copyrighted design by both Defendant and its Indian supplier (Mr. Chokhany's company, Shankar), also make a finding of independent creation a legal impossibility.

**B.   THE DESIGNS IN QUESTION**

| Plaintiff's copyrighted work | Front of Accused Bag Ex. B to Complaint | Back of Accused Bag Not Shown in Complaint |
|---|---|---|
|  | | |

The above shows Plaintiff's design and the front and back of the Defendant's accused bag.  Already established in this action is Plaintiff's assertion against the two peacock feather

designs seen on the above front of the accused bag and the two (1½) peacock feather designs seen on the above back of the accused bag.  Plaintiff's infringement claim is not against, and has nothing to do with, the other (background) images found on the accused bag and these background images have no bearing in at least the liability stage of this action.

      1.    **Access**

"Access is only an opportunity to copy."  *Gund, Inc. v. Fortunoff, Inc.*, 3 U.S.P.Q.2d 1556, *2 (SDNY 1986), *citing Fisher-Price Toys, Div. Of Quaker Oats Co. v. My-Toy Co., Inc.*, 385 F. Supp. 218, 220 (SDNY 1974).  "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work."  *Boisson v. Banian*, 273 F.3d 262, 270 (2d Cir. 2001).  Proof of access may also be inferred where "two works are so strikingly similar as to preclude the possibility of independent creation...."  *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995).  For any, and all, of these reasons, Defendant and its supplier both had access to Plaintiff's copyrighted work.

Defendant knows and is familiar with Plaintiff and Plaintiff's artistic works, having been sued in this Court and the District of New Jersey by Plaintiff on two earlier occurrences.  In the prior suit commenced on July 19, 2012 in this Court, *The Basu Group Inc. v. Biacci Inc. et al.*, Civil Action No. 12-cv-05565 (RJS) (now closed) ("the Prior Action"), Defendant was a named defendant and the first cause of action in the Prior Action's complaint asserted the same copyrighted work and registration against all of the defendants.  (Copy of the Complaint in the Prior Action attached as Ex. D to the Gilman Dec.)

In addition, Defendant has produced in this Action correspondence between its employees expressly acknowledging Plaintiff and a known problem with Plaintiff's Peacock art. An email correspondence produced by Defendant in this Action as SA000409, reads in relevant

part: "No peacock feathers.  Pretty sure that was one of the ones in questioning from basu."  It is believed this email happened on, or around, September 17, 2013.  (Copy of SA000409 attached as Ex. E to Gilman Dec.  Copies of pages 39-40 of the Rule 30(b)(6) deposition of Defendant's representative, Paula Ludwig ("Ludwig Depo."), attesting to authenticity of SA000409, also attached as Ex. E to Gilman Dec.)

Defendant's supplier of the accused bag was, Shankar Produce Company Private Limited of Kolkata, India ("Shankar").  (Ludwig Depo. p. 30, Ex. F to Gilman Dec.)  Shankar also knew and was familiar with Plaintiff and Plaintiff's copyrighted work.   In the Prior Action, Defendant's then supplier, Biacci Inc., identified "Shankar Produce, Inc., Calcutta, India" as its supplier of the then accused Peacock bags in its response to interrogatory 7 of the Prior Action. (Copy of the document entitled, "Biacci Inc.'s Response to Plaintiff's First Set of Interrogatories Nos. 1 to 7" in the Prior Action, attached as Ex. G to Gilman Dec.)

While the Prior Action was not commenced until July 19, 2012, a notice letter from Plaintiff's counsel to Defendant's supplier, Biacci, Inc., was sent on March 30, 2009 (Ex. H to Gilman Dec.); i.e., long before any relevant 2012 date of knowledge by Defendant or creation by Shankar of the accused design/bag in this Action (Def. Fact 53; Chokhany Dec. paras. 8 and 10). Therefore, having established Shankar to be the supplier of the earlier accused Peacock bags of the Prior Action, there is no question of Shankar's knowledge of, and therefore access to, Plaintiff's copyrighted work prior to its creation in 2012 of the design accused in this Action.[5]

In addition, following is a chart of Plaintiff's sales since January, 2008, of at least bags,

---

[5]     Even should Defendant try to improperly interpret the "2008" date found in para. 6 of the Chokhany Dec. as the date of creation of the particular accused design in this action (which date should be, but does not need to be, interpreted to be December 31, 2008 since no specific month or day is provided), Plaintiff's copyright registration asserts 2007 as the year of creation and January 1, 2008 as the date of first publication.  Accordingly, all relevant dates for Plaintiff's design predate any date able to be asserted herein by Defendant.

purses, wallets and belts bearing Plaintiff's copyrighted work.  (Chart supported by Declaration

of Bhaskar Basu, Ex. I to Gilman Dec.):

| Calendar Year | Approx. # of Units | Approx. Gross Sales (US$) |
|---|---|---|
| 2008 | 4,500 | Over $450,000.00 |
| 2009 | 7,500 | Over $500,000.00 |
| 2010 | 9,100 | Over $600,000.00 |
| 2011 | 14,000 | Over $850,000.00 |
| 2012 | 17,200 | Over $1,100,000.00 |
| 2013 | 16,800 | Over $1,100,000.00 |
| 2014 | 15,750 | Over $1,000,000.00 |
| 2015 | 13,500 | Over $900,000.00 |
| 2016 | 9,500 | Over $550,000.00 |
| **TOTALS** | **107,850** | **Over $7,000,000.00** |

Accordingly, as "[a]ccess is only an opportunity to copy," *Gund*, 3 U.S.P.Q.2d at *2 and

Defendant and Shankar "had a reasonable possibility of viewing the prior work" *Boisson*, 273

F.3d at 270, based upon the Prior Action and Plaintiff's sales, access is established, as a matter of

law.  In the alternative, should the Court not be convinced of proof of access, Plaintiff contends

the Court may infer access since the two works are so strikingly similar. *Lipton*, 71 F.3d at 471.

        **2.**        **Substantial Similarity**

As earlier argued above, at footnote 1 of the Court's Order of Doc 45 in this Action, the

Court held that it is the "ordinary observer" test to be applied in making the determination of

substantial similarity in this Action, and defined the test, as follows:

        'The standard test for substantial similarity between two items is whether

an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'' *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). 'In applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'' *Id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71F.3d 996, 1002 (2d Cir. 1995)).

Footnote 1 of the Court's Order of Doc 45 in this Action.

Immediately after recognizing there is also a "more discerning" test that may be applied in limited circumstances, the Second Circuit in *Peter F. Gaito* expressly disavowed the dissection steps specifically argued in Df's brief should be applied in this Action.

> ***No matter which test we apply***, however, we have disavowed any notion that "we are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." [*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996,] 1003[ (2d Cir.1995)]; *see Boisson* [*v. Banian, Ltd.*]*,* 273 F.3d [262,] 272–73 [(2d Cir. 2001)]. Instead, we are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127, 133 (2d Cir.2003); *see Boisson,* 273 F.3d at 272; *Knitwaves Inc.,* 71 F.3d at 1003, as instructed by our "good eyes and common sense," *Hamil Am.,* 193 F.3d at 102 (alteration omitted). This is so because "the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art ... are considered in relation to one another." *Tufenkian Import/Export Ventures, Inc.,* 338 F.3d at 134. Thus, in the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves Inc.,* 71 F.3d at 1004 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). (emphasis added)

*Peter F. Gaito Architecture*, 602 F.3d at 66.

Applying the above, Plaintiff contends the Court can, and must, as a matter of law, disregard all of Defendant's arguments for the Court to dissect out from Plaintiff's copyrighted work any elements Defendant alleges are not protectable, when comparing the designs for

23

substantial similarity.   Plaintiff's copyrighted work is a wholly original expression of the authors'/artists' interpretation of a single Peacock feather.   It was created, as testified to by Mr. Basu, with an eye to "creating an interpretation that can be reproduced on a leather handbag and replicated several times by our artists and artisans so that there is a consistency in the look and feel of that element that we are taking inspiration from."   (Basu Dep. p. 42, lns 2-6, attached as Ex. B to Gilman Dec.).   In doing so, Plaintiff created a beautiful piece of art, and the overall look and feel of this art has been willfully taken and reproduced, without authority, by Defendant, for Defendant's sole purpose of making money on sales of infringing goods.   Df's brief is, and all of Defendant's efforts to date in this proceeding have been, an attempt to divert the Court's attention from the mandated, straight forward comparison of the designs, and the question of whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Id.*

To further assist the Court in making this legal determination, Plaintiff attaches as Exhibits J-L to the Gilman Dec. a small sampling of other consumer goods bearing Peacock art. Exhibit J shows other items sold over the years by Defendant with Peacock art.   Exhibit K shows third party Peacock art produced by Defendant in the Prior Action in 2012.   Exhibit L shows third party Peacock art produced by Defendant in this Action.   Plaintiff contends that not only does Plaintiff's copyrighted work look nothing like a natural Peacock feather, but of these hundreds of other Peacock art items of Exhibits J-L (all produced by Defendant), not only are they are all different from each other, but none look even remotely like Plaintiff's copyrighted work.   Accordingly, when the ordinary observer, knowing of these myriad other ways of depicting a Peacock and also knowing of Plaintiff's copyrighted work, then sees the accused Peacock art on Defendant's accused bag, it is not possible that such an observer would not

24

believe the accused art to be substantially similar to Plaintiff's copyrighted art; i.e., the Peacock art on the accused bag looks far more like Plaintiff's copyrighted work than any of the hundreds of other images of Peacock art produced by Defendant in this Action and the Prior Action, and as such, the "average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* and Knitwaves, 71F.3d at 1002.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff The Basu Group Inc. respectfully requests the Court dismiss Defendant's motion and grant summary judgment for Plaintiff per Plaintiff's co-pending motion for summary judgment of non-invalidity of Plaintiff's registration, copyright infringement and willful copyright infringement.

Respectfully submitted,

**KAPLAN BREYER SCHWARZ, LLP**


By: ___/s/ Michael R. Gilman_____
Michael R. Gilman (MG 7608)

100 Matawan Road, Suite 120
Matawan, New Jersey 07747
Telephone (732) 578-0103, ext. 233
mgilman@kbsolaw.com
*Attorneys for Plaintiff The Basu Group, Inc.*

Dated: April 21, 2017

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and correct copy of the document entitled "**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**" was served on the below identified counsel for Defendant, on this 21st day of April, 2017, via UPS courier service, prepaid:

> David C. Brezina, Esq.
> Ladas & Parry LLP
> 224 South Michigan Avenue, Suite 1600
> Chicago, IL 60604
> (Attorneys for Defendant Seventh Avenue, Inc.)

Dated:  April 21, 2017                    By: ____/s/ Michael R. Gilman_____
                                                    Michael R. Gilman (MG 7608)