# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

THE BASU GROUP INC.,                    )
                                        )
                    Plaintiff,          )
                                        )        Civil Action No. 16-cv-00461-PGG
            v.                          )
                                        )
SEVENTH AVENUE, INC.,                   )
                                        )
                    Defendant.          )
_____)

## DEFENDANT'S MEMORANDUM IN OPPPOSITION TO

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Contents

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  PROCEDURAL HISTORY OF THIS ACTION .....................................................2

III  ARGUMENT ..............................................................................................................3

  A.  STANDARD FOR SUMMARY JUDGMENT .......................................................3

  B.  STANDARD FOR FINDING COPYRIGHT INFRINGEMENT............................4

  C.  PLAINTIFF ASSERTS AN INVALID OR UNENFORCEABLE COPYRIGHT REGISTRATION........................................................................................................5

    1.  IN PLAINTIFF'S PEACOCK FEATHER #1 APPLICATION IT WAS ASKED ABOUT MATERIAL PREVIOUSLY PUBLISHED..................................................5

    2.  BASU'S WORK IS A DERIVATIVE WORK IF IT IS ASSERTING FEATURES IN THE PREEXISTING IMAGES AGAINST SEVENTH AVENUE...............................8

    3.  BASU DERIVING ITS WORK FROM WORKS THAT WERE NOT THEMSELVES DERIVATIVE WORKS DOES NOT IMMUNIZE BASU ............................................9

    4.  INSPIRATION IS NOT A LEGAL STANDARD ...............................................10

    5.  BASU HAD THE PREEXISTING IMAGES ON A TABLE AND REFERRED TO THEM TO DERIVE PEACOCK FEATHER #1..............................................................11

  D. UNENFORCEABILITY FOR FAILURE TO LIMIT CLAIM .............................11

    1.  UNCLEAN HANDS IS AN EQUITABLE DEFENSE TO BE APPLIED BASED ON THE CIRCUMSTANCES OF THE CASE ..................................................................12

    2.  IF THE COURT WOULD BE ASSISTED BY AN ADVISORY OPINION FROM THE COPYRIGHT OFFICE 17 U.S.C. 411 (b) PROVIDES A MECHANISM.......................13

    3.  LIMITING BASU'S MISCONDUCT IS NOT "ALLOR NOTHING"...................13

    4.  BASU'S INTENT IS TO MONOPOLIZE THE IDEA OF PEACOCK FEATHER DECORATION......................................................................................................14

  E.  THERE HAS BEEN NO COPYING OF PLAINTIFF'S PEACOCK FEATHER #1 ...........14

  F. SIMILARITY ANALYSIS ......................................................................................17

    1.  FACTUAL INCONSISTENCIES .....................................................................17

    2.  PEACOCK FEATHER #1 WAS NEVER PUBLISHED OR SOLD AND THERE IS NO EVIDENCE OF ACCESS...............................................................................19

    3.  THERE ARE NO FACTS CONNECTING SHANKAR TO KNOWLEDGE OF THE COPYRIGHT DEPOSIT – THE ONLY PLACE TO SEE PEACOCK FEATHER #1 ..........20

    4.  SUBSTANTIAL SIMILARITY IS NOT THE PROPER TEST, BUT IS NOT MET EITHER..................................................................................................................21

  G.  COMPETITION IN THE HAND-PAINTED BAG MARKET WITH A PEACOCK FEATHER THEME IS NOT WILLFUL INFRINGEMENT ..........................23

IV CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 , 252 (1986) ............................................................. 4

*Bill Diodato Photography, LLC v. Kate Spade, LLC* 388 F.Supp.2d 382, 389 - 390 (S.D.N.Y. 2005) ................................................................................................................................................. 25

*Cabell v. Sony Pictures Entertainment, Inc.* 714 F.Supp.2d 45 (S.D. N.Y., 2010) ......................... 25

*Coleman v. ESPN, Inc.* 764 F.Supp. 290, (S.D.N.Y. 1991) ............................................................. 13

*Dyer v. Napier*, 2006 WL 2730747 (D Ariz 2006) ........................................................................... 18

*Eden Toys, Inc. v. Marshall Field & Co.* 675 F.2d 498 (2d Cir. 1982) ............................................. 19

*Effie Film, LLC v. Pomerance* 909 F.Supp.2d 273 (S.D. N.Y., 2012) ............................................. 19

*Feist Publications Inc v Rural Telephone Service Co Inc.,* 499 U.S. 340, 350 (1991) ..................... 26

*Garner v. Sawgrass Mills Ltd. Partnership,* 1994 WL 829978 (D. Minn. 1994) ............................. 13

*Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir.1992 ................................................................. 19

*I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.* 307 F.Supp.2d 521, (S.D. N.Y., 2004) .................................................................................................................... 6

*Lennar Homes of Texas Sales and Marketing, Ltd. v. Perry Homes, LLC* 117 F.Supp.3d 913, (S.D. Tex 2015 ) .................................................................................................................................... 6

*Mannion v. Coors Brewing Co.* 377 F.Supp.2d 444, (S.D.N.Y. 2005) ........................................... 11

*New Old Music Group, Inc. v. Gottwald* 122 F.Supp.3d 78, 2015 WL 4719864 (S.D.N.Y. 2015 .. 11

*Nobel Ins. Co. v. City of N.Y.*, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) ..................... 24

*Odegard, Inc. v. Costikyan Classic Carpets, Inc.* 963 F.Supp. 1328 (S.D.N.Y. 1997) ................... 9

*Olem Shoe Corp v Washington Shoe Corp.* 2011 WL 6202282 (SD Fla, 2011) ............................ 14

*Olem Shoe Corp. v Washington Shoe Corp.* 2010 WL 3505100 (SD Fla 2010) ............................ 14

*Porto v. Guirgis* 659 F.Supp.2d 597 (S.D. N.Y., 2009) ................................................................. 25

*Queenie, Ltd. v. Sears, Roebuck & Co.* 124 F.Supp.2d 178 (S.D. N.Y, 2000) .............................. 20

*Repp v. Webber* 132 F. 3d 882 (2d Cir., 1997) ............................................................................. 16, 17

*Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir.2003) ....................................................................... 18

*Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 869 (S.D. NY 1998) .............................................. 16

*Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998) ...................................................................... 3

*Silberstein v. Fox Entertainment Group, Inc.* 424 F.Supp.2d 616 (S.D.N.Y. 2004) ....................... 16

*Star Athletica, L.L.C. v. Varsity Brands, Inc.* 137 S.Ct. 1002 (2017) .............................................. 4

*Ty, Inc. v. Publ'ns Int'l Ltd.,* 292 F.3d 512, 521 (7th Cir. 2002). ................................................... 11
*v. 18*

*Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*, 2009 WL 3401182, (S.D.N.Y., 2009) ................. 13

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.* 210 F.Supp.2d 147 (E.D. N.Y., 2002) ..... 24

*Williams v. Broadus* 2001 WL 984714, 60 U.S.P.Q.2d 1051 (S.D. N.Y., 2001) ............................. 9

## Statutes

17 U.S.C. § 103(a) ............................................................................................................................ 8

 17 U.S.C. 411 (b) ……………………………………………………………………………13, 14

## Regulations

Compendium III ................................................................................................................................ 8

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| THE BASU GROUP INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 16-cv-00461-PGG |
| ) | |
| v. ) | |
| ) | |
| SEVENTH AVENUE, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S MEMORANDUM IN OPPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.   PRELIMINARY STATEMENT**

Plaintiff The Basu Group, Inc. ("Basu") asserts a conclusory Preliminary Statement

asserting that it has a work of art registered in compliance with the Copyright law and that the work

has copyrightable originality.  Defendant Seventh Avenue, Inc. ("Seventh Avenue") submits

evidence showing that Basu's Peacock Feather #1 was derived from Preexisting Images and from

public domain natural peacock feathers – those preexisting materials having the very features about

which Basu complains  -- therefore because the preexisting materials were not disclosed, the

Copyright Office never had the opportunity to judge either originality or whether Peacock Feather

#1 was an unauthorized derivation from the works of others and therefore itself illegal.

Basu's produced a spreadsheet numerous items with the word "peacock" in their

description.  Basu also produced catalogs showing a number of different "peacock" designs, all

having variations from Peacock Feather #1.  In the spreadsheet, neither "Peacock Feather #1" nor

the word "feather" appear.  (DECLARATION OF DAVID C. BREZINA IN OPPOSITION TO

PLAINTIFF BASU'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF

DEFENDANT SEVENTH AVENUE'S MOTION FOR SUMMARY JUDGMENT ("Brezina 2d

1

Dec"), ¶ 4; Seventh Avenue's Response to Plaintiff's Statement of Facts ("Def Resp Facts") ) Basu testified that Peacock Feather #1 is used in its Indian factory as a guide to make hand-painted handbags, all of which differ from Peacock Feather #1. (Defendant's Statement of Facts ("Def. Facts") 29 - 33,  Def Resp Facts" 14 a. – f.)  Derivative bags are sold, not Peacock Feather #1.

Basu correctly points out Seventh Avenue is a retailer that imports products manufactured and designed by others and sells them to consumers.  (Def Resp Facts 3) Basu is correct that "Defendant's Accused Bags were painted and manufactured by Shankar Produce Company Private Limited, a company of India … having a place of business in Kolkata, India."  Despite Basu knowing the vendor from a prior suit, Shankar is not a party to this suit.  (Def Resp Facts 17)

Since Seventh Avenue's Accused Bag is not similar to Peacock Feather #1 other than sharing the idea of a peacock feather decorative theme, no permission from Basu to make a derivative work was needed. Since Seventh Avenue's Accused Bag was created by Shankar, not a party to the Prior Action, (Def Rep Facts 9) the fact of the Prior Action is not relevant there being both independent creation unrelated to Seventh Avenue's access and no access by Shankar, other than to point out Basu's desire to monopolize peacock feather themes in competitive products.

## II.  PROCEDURAL HISTORY OF THIS ACTION

Consistent with Basu's desire to control the idea of peacock feathers (Def. Facts 44; Def Resp Facts 8 p.) around the end of the product life cycle of the Accused Bag, Basu threatened Seventh Avenue with this infringement suit.  Seventh Avenue promptly compared the Accused Bag to the Deposit showing Peacock Feather #1 (no actual Basu bag being involved) observed dissimilarity and also contacted its supplier who explained the independent creation of the Accused Bag.  Having confirmation of independent creation, Basu was advised there was no infringement and the threat was frivolous (Def Resp Facts 10, January 12, 2016 email, Def Cumul Appx 1391)

Consistent with its position that the suit was frivolous, based on comparing the Accused

Bag to Peacock Feather #1, Seventh Avenue filed a Motion to Dismiss based on Rule 12 (b) (6)

Fed. R. Civ. P. the Court having only Peacock Feather #1 and the Accused Bag.  The Court

determined that it would not dismiss based on the two images at issue, Order of December 9, 2016

(Doc 45), listing eight objective features viewed as significant.  (Doc. 45, page 6)

Between the filing of the Motion to Dismiss and the Order, Basu produced a compilation of

individual images that Basu had downloaded or clipped (entitled "Preexisting Images") and which

Basu used when adapting Peacock Feather #1.  (Def Facts 9 – 22, Def Resp Facts 7, b.– o., Def

Cumul Appx 131 - 139)  Basu also had natural peacock feathers to used to adapt Peacock Feather

#1.  *Id.* Def Cumul Appx 134 – 135  Due to timing and rules, the Court did not have these

preexisting materials.  The materials support the Amended Answer and Counterclaim, Seventh

Avenue's Motion for Summary Judgment and Seventh Avenue's Opposition to Basu's Motion.

## III ARGUMENT

## A.  STANDARD  FOR  SUMMARY  JUDGMENT

The parties substantially agree on the standard for summary judgment but disagree that

Basu meets it.  Basu has not adequately presented facts – only conclusions.  Basu argues

Preexisting Images are mere "inspiration".  Basu submits a current <u>paper</u> Copyright Application

form (Plaintiff's Appendix, ("Pltf App") Exhibit M) but filed an <u>electronic</u> Copyright Application

in 2009.  (Def Fact 41, Brezina Dec. Exh. A, SA001229 – SA001231; Def Cumul Appx 3)  Basu

suggests a Prior Action involving non-parties here, have relevance absent proof that the co-

defendant in the Prior Action showed the creator of the Accused Bag Peacock Feather #1.  The

willfulness argument ignores independent creation and Seventh Avenue's position of substantial

difference.  These are "conclusory allegations [and] unsubstantiated speculation," *Scotto v.*

*Almenas,* 143 F.3d  105, 114 (2d Cir. 1998) not "concrete evidence from which a reasonable juror

could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 , 252 (1986)

3

**B.    STANDARD FOR FINDING COPYRIGHT INFRINGEMENT**

At issue are two dimensional graphic images, Basu's Peacock Feather #1 intended to be further copied to comprise decoration on useful items, (*Star Athletica, L.L.C. v. Varsity Brands, Inc*. 137 S.Ct. 1002 (2017)) namely handbags, and Seventh Avenue's already applied to a handbag.  Peacock Feather #1's is used as a guide for hand painting a tangible medium of expression. The Accused Bag is already fixed as a tangible medium of expression.  Basu had Preexisting Images that were also fixed in a tangible medium of expression -- photographs.  Thus, Peacock Feather #1, the Accused Bag, and the Preexisting Images are all the proper subject matter for copyright and are copyrightable if there is the requisite originality.

Here, if there was "copying" it clearly was not done by Seventh Avenue.  Seventh Avenue's liability, if any, arises only from importation and distribution of the Accused Bag, only if the Accused Bag was reproduced or comprises a derivative work by Shankar.

A conclusion of unauthorized reproduction or derivation looks at similarities and differences between Peacock Feather #1 and the Accused Bag.  Peacock Feather #1's copyright scope depends on its level of originality compared to the Preexisting Images.  Its enforceability depends on whether it is original and was an unauthorized derivation from one or more of the Preexisting Images.  If there were no Preexisting Images, infringement analysis would use the ordinary observer test looking to similarities and dissimilarities to Basu's original portions.  Because of the Preexisting Images, an element by element analysis under the more discerning observer test subtracts the non-original and compares what is left.

Similarity and dissimilarity are not absolutes.  Similar works do not infringe, even if intentionally copied, if similarity is due to subjects in the public domain. Inference of copying from access and substantial similarity can be overcome by evidence of independent creation.

Basu incorrectly asserts "no disputed facts have arisen to shed doubt on the fact of the

4

"wholly original" nature of Plaintiff s Peacock Feather Design (sic.)"  The opposite is true. Basu

<u>had</u> the Preexisting Images and referred to them when adapting Peacock Feather #1.  (Def Facts, 8

– 13, Def Resp Facts 7 b. – f.,  Def Cumul Appx 13, 53, 54, 59, 60, 131 - 139)  The Court has

identified eight features of similarity. The test for derivation is whether similarities are substantial.

If the Preexisting Images have the same features, then by definition Peacock Feather #1 is a

derivative work.  The Court may view the images and decide as a matter of law that Peacock

Feather #1 is a derivative work.  (See Def Facts, 14 – 22, Def Resp Facts 7 g. – o.)  The conclusion

that failure to identify them is unclean hands is one of law.  Copyright in Peacock Feather #1 is

either unenforceable for failure to limit the copyright claim, or it is unenforceable because Basu did

not have the permission of the authors of the Preexisting Images.  If registration had issued with

Limitation of Claim, as a matter of law the limitations are excluded from similarity analysis.

## C.   PLAINTIFF ASSERTS AN INVALID OR UNENFORCEABLE COPYRIGHT <u>REGISTRATION</u>

Basu urges the *prima facie* effect of its registration.  That is, however, a rebuttable

presumption.  Where, as here, the very features asserted against a defendant were also features in

undisclosed Preexisting Images, the facts rebut validity and, in fact, show invalidity.  Not only are

ther genuine issues about validity, there is overwhelming facts supporting invalidity.

### 1.  IN PLAINTIFF'S  PEACOCK  FEATHER  #1 APPLICATION IT WAS ASKED <u>ABOUT MATERIAL PREVIOUSLY PUBLISHED</u>

Basu presents the Court with a blank paper VA application from 2017.  (Exhibit M)  It

argues the content of the paper application instructions, never explaining how this relates to its

2009 application that was filed electronically with different "blanks" and instructions.  The

Copyright Office prepared a copy of the application as filed, Counterclaim Exhibit D, Dkt 60 – 4

pages 6 – 9 of 9, Brezina Declaration Exh. A, pages SA001229 - SA001238 Def Cumul Appx 3 -

12.  Basu did not present the Court a copy of the actual application it filed in 2009.

There is no "Space 6" in a 2009 electronic application and there are no instructions

""Derivative Work or Compilation" If there were a Space 6, *Lennar Homes of Texas Sales and*

*Marketing, Ltd. v. Perry Homes, LLC* 117 F.Supp.3d 913, (S.D. Tex 2015 ) explains

> "The purpose of disclosure on Space 6 is twofold: to permit the Copyright Office to
> determine whether the new material is sufficient to support the derivative registration, and
> to place on the public record a clean separation of the original, preexisting work from the
> derivative work so that copyright in the original work is not impermissibly extended
> through successive registrations for undisclosed variations."

> *I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc*. 307

F.Supp.2d 521, (S.D. N.Y., 2004) points out that material that should have been included in a

Space 6 is excluded from the infringement case:

> "Under the authority of Well–Made and Streetwise Maps, we find that the portion of the
> Registration Certificate requiring the identification of "Preexisting Material" would have to
> refer to the preexisting matter that is the basis of this infringement action. Unlike the
> plaintiff in Streetwise Maps, the plaintiff here does not identify the preexisting work that is
> the foundation of this action. … The only indication that the Registration Certificate
> protects work that existed in March of 2002 are plaintiff's current protestations to this
> effect."

> The rationale is similar to that explained by the current Compendium, specifically written to

explain electronic applications. Compendium III, 311.2 states:

> "If a derivative work contains an appreciable amount of previously published material,
> previously registered material, public domain material, or third party material, the applicant
> should exclude that material from the claim using the procedure described in Chapter 600,
> Section 621").

The means for accomplishing this are different in an electronic copyright application, but the fact

remains no preexisting materials were included.

The Copyright Office record of the electronic application actually filed by Basu, *supra*,

shows the variable data submitted that is specific to the record submitted by Basu. After data filed

follow an official "APPLICATION TEMPLATE FOR COPYRIGHT REGISTRATION" which

tracks what Basu was instructed with its electronic Copyright Application. (*Id,* 7 – 10) Section 4

replaces Space 6, eliminating what Basu describes in Space 6 as "defined as "Derivative Work or

Compilation").  Section 4 says:

> "4 LIMITATION OF COPYRIGHT CLAIM Skip section 4 If this work is all new.
>
> 4a. Material excluded from this claim (*Material previously registered, previously published, or not owned by this claimant*) Depending upon the type of work being registered, Applicant may select various types of material. The options, which have changed over time and which differ depending on the type of work being registered, have included:

| | | | |
|---|---|---|---|
| Script/Screenplay | Performance | Sculpture/3D Artwork | Translation |
| Preexisting music | Music | Map and/or technical drawing | Compilation |
| Preexisting footage | Lyrics | Musical arrangement | Other |
| **Preexisting photograph(s)** | Text | **Artwork** | |
| Sound recording | **2D Artwork** | Computer program | |
| Production | Jewelry design | Editing" | (emphasis added) |

This is a more open ended, easy to complete check off process than the paper instructions.

Basu should have simply checked off Preexisting photograph(s),  2D Artwork, or Artwork to advise the Copyright Office and the public that Preexisting Images existed.  The Court would then be assisted, in accurately applying the presumptions because the Court would know to exclude the Preexisting Images.  Section 4 does not ask if the work is a "Derivative Work".  Instead, it asks if there was "Material previously registered, previously published, or not owned by this claimant".  The Preexisting Images were downloaded or clipped and Basu should have identified them.

Had the hypothetical occurred it would not of itself make Basu's work copyrightable, even if it had sufficient incremental originality.  Copyright Office Compendium.  Compendium III, 313.6 (B), tracks procedures for the modern regime of electronically filed applications[1] and states:

> Some derivative works, compilations, and collective works cannot be registered with the U.S. Copyright Office. Section 103(a) of the statute states that copyright protection for a compilation or derivative work "employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully."

See 17 U.S.C. § 103(a).  Basu did not have permission of the Authors of the Preexisting Images to

---

[1] Compendium II was last updated in 1998 and does not cover electronically filed applications. while *Compendium of U.S. Copyright Office Practices, Third Edition*, conveys current practices of the Copyright Office and with Counterclaim Exhibit D, Dkt 60 – 4 pages 6 – 9 of 9, Brezina Declaration Exh. A, pages SA001229 - SA001238

copy, or derive, features in those images.   Basu did not need to determine if its work was a

"derivative work" based on the template but there is an objective test for the Court to make that

judgment.

### 2.   BASU'S WORK IS A DERIVATIVE WORK IF IT IS ASSERTING FEATURES IN THE PREEXISTING IMAGES AGAINST SEVENTH AVENUE

Basu incorrectly states "Plaintiff s Peacock Feather Design (sic) is … not a derivative

work." There are two categories of preexisting materials: (1) natural peacock feathers[2] not owned

by Basu, and which were not disclosed in response to Template Section 4, and (2) preexisting,

published images – the Preexisting Images, (Exhibit B) similarly not disclosed.

Basu should not be permitted to enforce its copyright against something that has the same

features as were in the Preexisting Images, *Yurman Design, Inc. v. Chaindom Enterprises, Inc*.,

2002 WL 31358991 (S.D. N.Y. 2002) explained:  "A work will be considered a derivative work …

if it would be considered an infringing work if the material that it has derived from a pre-existing

work had been taken without the consent of the copyright proprietor of such pre-existing work…. 1

Nimmer on Copyright § 3.01"  See also *Odegard, Inc. v. Costikyan Classic Carpets, Inc.* 963

F.Supp. 1328  (S.D.N.Y. 1997).

Plaintiff has a conundrum.  It argues that the accused work infringes its work because of the

presence of common features, and those common features are also present in Preexisting Images.

Applying a derivative work rule "that would infringe if later makes a work a derivative work if

earlier", Plaintiff's own similarity arguments make its work a derivative work because the same

---

[2] The record has a number of "first generation" images of natural peacock feathers that were
photographed by respective counsel of actual peacock feathers in their possession.  The physical
items, of course, are difficult to file in court.  These include Counterclaim Ex. C Doc. 60-3, 2-3,
(TBG - 1623  1624 Def Cumul Appx 324, 325 from photographs produced by Basu) Plaintiff's Ex.
50-51 TBG0001623-1624 (original feathers in possession of Plaintiff's counsel) Pltf App Exh. U,
page 234 of 336,  SA-MV 18, Pltf App Exh V, last page, SA001209.  The last two are different
photographs of the same physical object.  As the photographs were produced by respective counsel
for purposes of litigation, further copying is believed to be either under implied license or fair use.

features about which it complains are present in the Preexisting Images and plaintiff's image.

> "When deciding whether a work is derivative by this definition, courts have considered whether the work "would be considered an infringing work" if the pre-existing material were used without permission. 1 Nimmer § 3.01 at 3–4; see M.H. Segal Ltd. Partnership v. Hasbro, Inc., 924 F.Supp. 512, 519 (S.D .N.Y.1996), abrogated on other grounds as noted in Nadel v. Play–By–Play Toys & Novelties, Inc., 208 F.3d 368, 380 n. 9 (2d Cir.2000)."

*Williams v. Broadus* 2001 WL 984714, +60 U.S.P.Q.2d 1051 (S.D. N.Y., 2001)

Basu's assertion of Peacock Feather #1 against the Accused Work makes Peacock Feather #1 a derivative work if the same similarities are present in a Preexisting Image.  If the Preexisting Images are properly excluded, by application Limitation, or by this Court, there is no infringement.

### 3.  BASU DERIVING ITS WORK FROM WORKS THAT WERE NOT THEMSELVES DERIVATIVE WORKS DOES NOT IMMUNIZE BASU

Basu argues a photograph of a natural peacock feather may not be a derivative work of the natural peacock feather.  This is because the natural peacock feather is not itself a "work of authorship".  Anyone can copy it -- Basu or Shankar and Seventh Avenue.  This argument does not apply when a work such as a photograph is at issue. That is a work of authorship. Therefore a work based upon the photograph is a derivative work[3].  There is no immunity of disclosure for all works downstream from naturally occurring things.  If there were, only works derived from abstract works of art could be derivative works.  The Preexisting Images (Def Facts 9, Def Resp Facts 7 b., Basu Dep Exh 4, Def Cumul Appx 131 - 139) are photographs or other graphic renderings of natural peacock feathers.  Basu did not disclose natural peacock feathers either, although they are "not owned by this claimant."   (see Counterclaim Exhibit D, Dkt 60 – 4 pages 6 – 9 of 9, Brezina Declaration Exh. A, pages SA001229 - SA001238)

---

[3] Even if accept argument that a photograph is immune from derivative work use if it is a photo of a natural item, the two closest Preexisting Images are (1) obviously "artificial" because of its perfect symmetry and (2) an image whose author thought it was entitled to copyright by affixing a copyright notice.

Even if there were downstream natural peacock immunity, Basu could have limited its claim just as it could have with respect to the natural peacock feathers to which it referred. Thus Basu could have made the Limitations of Claim of record, and if it is correct that the "natural peacock feathers" need not have been disclosed, the Copyright Office would have amended the application so that Limitation did not appear in the Registration.

## 4.  <u>INSPIRATION IS NOT A LEGAL STANDARD</u>

Next Basu argues that even absent its peacock feather immunity, although it had images, "based upon" means more than viewing and creating with reference to the preexisting image. Presumably Basu is building on some sort of transformative use requirement in order for there to be a derivative work.  The cases, however, appear to look to whether a derivative work is an infringing derivative work rather than a work requiring disclosure of its antecedents. *Ty, Inc. v. Publ'ns Int'l Ltd.,* 292 F.3d 512, 521 (7th Cir. 2002). (written guide about stuffed toys not derivative of the stuffed toys) *Warner Bros. Entertainment Inc. v. RDR Books,* 575 F. Supp.2d 513, 538 (S.D.N.Y. 2008). (book about audiovisual work not derivative of audiovisual work)   Basu is arguing that "inspiration" is something other than basing one work upon something in a preexisting work.[4]

*Mannion v. Coors Brewing Co.* 377 F.Supp.2d 444,  (S.D.N.Y. 2005) explained, in the context of copyright in images, that use of one work as inspiration for creation another would be infringing.  "the defendant, in creating its work, used the plaintiff's material as a model, template, <u>or even inspiration</u>". (see also *New Old Music Group, Inc. v. Gottwald* 122 F.Supp.3d 78, 2015 WL

---

[4] The term "inspiration" arose from self serving document production.   During the Deposition of Bahskar Basu, Exhibit 4 was documents TBG0001287– TBG001294 Def Cumul Appx 131 – 139 which comprise eight pages of images, with as many as twelve images on the first page, in the form they were produced during discovery.  While the document is described as representing pictures that were on a table and referred to by the coauthors, the document TBG0001287 Def  Cumul Appx 131 bears the title "Inspiration."  Choosing to name the document "inspiration" does not control whether or not Peacock Feather #1, admittedly "based upon" the preexisting works, is a statutory "adaptation" for derivative work interpretation.

4719864  (S.D.N.Y. 2015)   If Basu "in creating its work, used the [preexisting] material as a model, template, or even inspiration" then Peacock Feather #1 is a derivative work.

Basu's conclusory arguments twisting "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while maintaining it's 'original work of authorship' to exclude "inspiration" is improper.  If one ignores the conclusory "inspiration", the testimony is clear that the Preexisting Images were present and were used to derive Peacock Feather #1 – it is "based upon" them, "adapted from them".

## 5. BASU HAD THE PREEXISTING IMAGES ON A TABLE AND REFERRED TO THEM TO DERIVE PEACOCK FEATHER #1

Basu's own quotes from the deposition are lengthy, perhaps to obfuscate clear answers:

(1)   "… we got a lot of photographs and images that we could find is I glance across all these images to try and capture, you know, the image that forms in my mind."

(Plaintiff's Memorandum at 11, Basu Dep 45: 8 – 13, Def Facts 12)

(2) "Q. All right.  And you used all the inspiration in exhibit four to inspire you to create the art in exhibit two? A. Yeah."  (Plaintiff's Memorandum at 12, Basu Dep 48: 8 – 11, Def Facts 12, Def Resp Facts )

Mr. Basu testified the Prexisting Images were used to derive Peacock Feather #1.

## D. UNENFORCEABILITY FOR FAILURE TO LIMIT CLAIM

Basu argues that, although it now asserts infringement by finding similar eight elements also present in the Preexisting Images, it need not have identified the Preexisting Images so as to provide Limitations of Claim in its application.  At the outset, the Court can decide the registration to be unenforceable against Seventh Avenue based on unclean hands and the case will be over. *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 988 (S.D.N.Y.1980).

### 1.  UNCLEAN HANDS IS AN EQUITABLE DEFENSE TO BE APPLIED BASED ON THE CIRCUMSTANCES OF THE CASE

Basu's cited cases on insubstantial errors (*Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984) and others) have different facts than the present case involving nondisclosure of preexisting, published works, not owned by Basu.  If the court wants to know if the nondisclosure was material, it can, and should, ask the Copyright Office.  17 U.S.C. 411 (b)  Here we have derivation, familiarity with Copyright Application filing and intent to control the idea.  (Def. Facts 11, 12, 13, 22, 29 - 34, 44; Def Resp Facts 8 a. – p.)

The intent is not a common law fraud case requiring "specific intent". As an equitable doctrine unclean hands provides a court with flexibility to address specific facts.  In some cases fraud on the Copyright Office could involve "inaccuracies [that] were willful or deliberate. *Varsity Brands, Inc. v. J & M Spirit Wear, Inc.*, 2009 WL 3401182, (S.D.N.Y., 2009). In other cases "the defense of unclean hands requires that the plaintiff either participated in the acts of infringement or that plaintiff committed some "transgression" such as fraud upon the Copyright Office resulting in harm or prejudice to the defendant. See Nimmer on Copyright, supra, at 13–145 & n. 12.2." *Coleman v. ESPN, Inc.*  764 F.Supp. 290, (S.D.N.Y. 1991).  The Second Circuit only requires "knowledge" and it need only be knowledge that rejection "might" occur.  *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir.1984), "only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection") See *Garner v. Sawgrass Mills Ltd. Partnership*, 1994 WL 829978 (D. Minn. 1994)  (unclean hands barred action for failure to identify as a derivative work where Author "used these copies in drawing his Logo")

Under the unique facts of this case, the Preexisting Images have highly material features that will control the Court's need to apply the more discerning test, so under its equitable powers the Court would be justified in prohibiting enforcement of a registration obtained without making the Limitation in the Claim.

## 2.  IF THE COURT WOULD BE ASSISTED BY AN ADVISORY OPINION FROM THE COPYRIGHT OFFICE 17 U.S.C. 411 (b) PROVIDES A MECHANISM

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*237 F.Supp.2d 376 (S.D. N.Y. 2002) is instructive.  There the Court was clear that Tufenkanian had prepared a derivative work, did not disclose it to the Copyright Office, the omission overcame the presumption of validity and the accused work was not substantially similar because it was based on preexisting, public domain material.  The decided noninfringement and unclean hands, but did not decide invalidity based on fraud because it could not "read the Copyright Office's mind without the benefit of its views."  If this Court determines that it would be helped with those views, 17 U.S.C. 411 (b) (enacted after *Tufenkanian*) provides a mechanism.  The Court could issue an order to the Copyright Office, or, as in *Tufenkanian*, if the Court finds there is no infringement, the fraud would be one of public interest for future accused infringers.

The *Olem* line of decisions illustrates a mechanism.  The court determined, with input from the parties, what questions to ask the Register of Copyrights.  *Olem Shoe Corp. v Washington Shoe Corp*. 2010 WL 3505100 (SD Fla 2010).  After receiving the answers (registration would have issued but it with limitations) summary judgment was addressed.  *Olem Shoe Corp v Washington Shoe Corp.* 2011 WL 6202282 (SD Fla, 2011)

## 3.  LIMITING BASU'S MISCONDUCT IS NOT "ALLOR NOTHING"

Basu presents Copyright grant as an "all or nothing" proposition.  However, there are a number of possibilities presented by the facts that could show materiality of Basu's omission and misstatements.  (1) The Register of Copyrights may consider Peacock Feather #1 a derivative work derived without permission of the owner(s) of copyright in the Preexisting Images and is invalid as infringing those images. (2) The Register of Copyrights may consider Peacock Feather #1 a derivative work having insufficient originality and therefore invalid. (3) The Register of Copyrights may find that Peacock Feather #1 is an unpublished work and/or a work to which the publication

13

date is incorrect and either that defect is fatal, or that, as the Register did, as reported in *Olem Shoe Corp v Washington Shoe Corp. supra* some registration would have issued, but it would have been different than that in the Certificate.  (4) the Register of Copyrights may consider Peacock Feather #1 a derivative work, but it with sufficient originality that, as the Register did as discussed in *Olem Id.* after being asked specific questions described by the Court in, some registration might have issued, but it would have been different than that in the Certificate.  This would be a highly material because if there had been Limitations to the Claim, then on the face of the Certificate, the fact of preexisting material would guide application the more discerning observer test.  Finally, (5) if the differences between the Preexisting Images and Peacock Feather #1 are such that one is not derivative of the other, and if the similarities between the Accused Bag and Peacock Feather #1 are the same, then the Accused Bag is not a derivative of Peacock Feather #1 and does not infringe.

### 4.  BASU'S INTENT IS TO MONOPOLIZE THE IDEA OF PEACOCK FEATHER DECORATION

Basu's intent relative to the Copyright Office is illuminated by his business goal of monopolizing the "idea" of a peacock feather. (Def Cumul Appx 77 – 78).  Basu knew of the Preexisting Images and public domain materials, was experienced completing Copyright Applications, and had, a goal of protecting ideas by registering its unpublished "guide" – as published - (Def. Facts 11, 12, 13, 29 - 34, 44).  Basu deliberately misrepresented and intended to obtain a registration showing it owns more than it is entitled to own. Where, as here, the registered work itself is unpublished -- used only in-house to create derivative works -- the lack of publication makes access by Shankar untenable presumption of publication  should not be recognized.

### E.   THERE HAS BEEN NO COPYING OF PLAINTIFF'S PEACOCK  FEATHER  #1

In its brief, Basu compares its deposit and its photographs of hand-painted bags arguing substantial similarity to infer copying.  Inference is overcome by evidence of independent creation. Independent creation is a defense to any copyright infringement action and is provable by

Declaration.  *Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997).  Uncontested and corroborated facts show that Shankar independently created the work of the accused bag.

Seventh Avenue submits a Declaration from the Director of its supplier Shankar Produce Company Private Limited (Def. Facts 60 - 78, Chokhany Dec. and Exhibits A and B thereto, Def Cumul Appx 15 - 21) (produced to Basu before filing the motion) which has not been rebutted in any discovery produced or conducted by Basu.  The Declaration is corroborated by communications within Seventh Avenue's corporate family, and with Seventh Avenue's outside agent who locates sources of items. (Def. Facts 46, 50 – 56; 57 - 60, Pltf Exh. 9, 12, 13, 14, 17, 21, Def Cumul Appx 1407, 260 - 279) As unrebutted evidence of independent creation, Basu has a burden that is not met.  *Silberstein v. Fox Entertainment Group, Inc.* 424 F.Supp.2d 616 (S.D.N.Y. 2004)  *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 869 (S.D. NY 1998). Independent creation established by declaration shifts the burden shifts to the copyright owner to discredit or disprove the alleged infringer's evidence of independent creation, if possible. *Repp v. Webber supra.*

Director of Shankar Anurag Chokhany provided a Declaration which, ¶ 1 – 11, 13, 16, 17, 19 -- 23 is based on personal knowledge, observations and review of business records.  ¶ 12, 14, 15 and 18 are translations of statements made by Sanjit Das, who does not speak English and Mr. Chokhany declares his translation is true and accurate.   When Basu threatened, Shankar was contacted and at that time said the Accused Bag was independently created.  That is consistent with the Declaration. (Def. Facts, 63, Pltf Exh. 25, Def Cumul Appx 310)

There is also corroboration based on Mr. Chokhany's statement that peacock feather designs have generally become used on the types of product made by Shankar since 2008 (Chokhany Dec. 6, Def Cumul Appx 15).  Mr. Basu attended trade shows then to see what was becoming popular, concluding "feathers" were becoming popular.  (Basu Dep. page 47 lines 14 – 25, Def. Facts 8, Def Cumul Appx 59)

The Accused Bag, Chokhany Exh. A (Def Cumul Appx 19 – 20)is graphically like the 2012 version created for Shankar's Australian customer, Chokhany Exh.  B (Def Cumul Appx 21 – 21) (later "Peacock Book Bag").  The time for this creation is corroborated by communications w`ith Seventh Avenue.  Ludwig Dep. Exh. 12, 13, 17, 18, 19.  Mr. Chokhany explains his team of artists created the red peacock design for an Australian customer, red being a main color on the 2012 Peacock Book Bag. (Chokhany 9 and 10, Def Cumul App 16).  The creation was entirely Shankar's with no suggested changes from Seventh Avenue negating any copying by Seventh Avenue. The artist confirms working with the Australian customer.

Because Basu's Peacock Feather #1 was derived from natural peacock feathers (Basu Dep. page 140, lines 12 -  20, Def. Facts 28) and the part of the Shankar design that most closely resembles a natural peacock feather was derived from a natural peacock feather.  (Chokhany ¶ 15, Def Cumul App 16) noninfringing similarity is explainable (because those feathers are in a feather). See *Dyer v. Napier*, 2006 WL 2730747, (D. Ariz., 2006) ("when a live creature commonly appearing in nature is reproduced, the only elements protected by copyright are those original aspects which are not required in the depiction of the creature as expressed in nature"); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (artist who created jellyfish sculpture "may not prevent others from copying elements of expression that nature displays for all observers.").

Mr. Chokhany translates the sources for derivation of the Shankar design: an original peacock feather, a fabric swatch with peacock prints, (Chokhany 18, Def Cumul Appx 16 - 17), background from fabric (Chokhany 14) and red color suggested by the Australian customer. (Chokhany, 16 Def Cumul Appx 16 - 17).  With these affirmative explanations, the summation that the design was not derived from Basu[5] *supra*  is not merely a denial.   The Accused Bag was

_____

[5] Seventh Avenue also discusses the fact that Peacock Feather #1 was actually an in-house guide for artists at Basu's related company to use to paint actual handbags – it was never "published" -- so Mr. Chokhany's Declaration is consistent with the guide never leaving the workshop.

independently created.

## F. SIMILARITY ANALYSIS

### 1.  FACTUAL INCONSISTENCIES

At the outset, it should be noted that Plaintiff presents one hand-painted bag, front and back.  Attached to the Complaint is a photograph of a different hand-painted bag, front only.  There are differences between the accused bags, as would be expected in a hand painted, rather than a machine printed, product.  (see Basu Dep. page 35, line 19 – page 36, line 10; page 42, line 22 – 25; page 58, line 21 – 24; page 134, line – page 135 line 5 Def Cumul Appx 48 – 49, 52, 68, 95 - 96 ). Plaintiff has no evidence that all the bags sold looked the same. (Basu  Dep page 36, line 20 page 37, line 4,. Def Cumul Appx 49 - 50– all different)

### DIFFERENCES SHOULD BE CONSIDERED

Second, Plaintiff asks the court, in a case involving two graphic works, to specifically ignore large parts of the Accused Bag.  It is not proper to ignore, in comparing two dimensional graphic works, everything but that which is similar.  Indeed weighing similarities and differences is current law.  *Eden Toys, Inc. v. Marshall Field & Co*. 675 F.2d 498 (2d Cir. 1982) ("there was no infringement of copyright, notwithstanding that two snowmen were roughly same size, in view of differences in shape, stitching, texture, location of various features")   *Effie Film, LLC v. Pomerance* 909 F.Supp.2d 273 (S.D. N.Y., 2012)  ("the scenes used to express them contained too many differences of expression and execution to be deemed substantially similar.").  While Seventh Avenue firmly believes the differences in the Accused Bag outweigh the similarities, even on inspection of the two images ("In evaluating substantial similarity, the Court may assess the presence of differences between the two works. See *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir.1992)) when the elements shown in either natural peacock feathers or the preexisting works are subtracted from Basu's Peacock

17

Feather #1, there is not similarity between what is left and the Accused Bag.

The deposit with the registration of Peacock Feather #1 (Complaint, Par. 12, Exh. A, Dkt 1, page 10 of 12) conveys an image of a peacock feather in a "hand painted" style on a plain background.  The Accused Bag has (Def, Facts 79, 80, 81, 82) a multiplicity of abstract shapes on a brightly colored background, the shapes generally formed as "onion" shapes and having some oval-shaped and some "U-shaped" contained within the onion shapes. One such shape has a stylized peacock feather and one such shape a partial stylized peacock feather.  The stylized peacock feathers are less abstract than the other shapes on the Accused Bag, but the abstract shapes cover a greater surface area.

Looking only to the feather portion – ignoring differences in the overall, aesthetically unitary graphic, the similarities in the peacock feathers are explainable based on similarity to other peacock feathers, not Basu's work.  Arguably Basu's feather looks more like one Preexisting Image and Seventh Avenue's (Chokhany Dec, Exh. A, Def Cumul Appx 20) looks more like another Preexisting Image than it does to Basu's design.  Even with the elements shared with a natural feather, expression on the Accused Bag is relatively wider in all aspects (the whole feather portion, the eye, the heart) more round than oval and the stem curves differently than Peacock Feather #1. If these differences define Peacock Feather #1's originality over the prior art and Preexisting Images, then the other differences in the Accused Work show dissimilarity to the ordinary or discerning observer. Similarities with natural feathers are explainably noninfringing as both Basu and Shankar derived their works from natural feathers.

Basu also ignores the dominant color differences betwee the Accused Bag and Peacock Feather #1.  Color differences can be important. Here the Accused Bag is dominantly bright red with repeated geometric pastel shapes. *Queenie, Ltd. v. Sears, Roebuck & Co*. 124 F.Supp.2d 178 (S.D. N.Y, 2000) stated:

"[W]hile color differences standing alone are not controlling criteria, here, the entire pallette of the Queenie garment, and TF 7459 (Box Design), is significantly lighter than the Sears design. The interaction between light colors on a dark background gives the viewer a substantially different feel than the interplay between dark colors against a dark background. Thus, I can and do consider color aspects as one factor to be considered in determining infringement."

The Court noted eight features in common in the Decision, Doc. 45, page 6.  If many, or all, of these are found in preexisting works they should be subtracted from what is "original" to Basu and their presence in the Accused Bag is non-infringing.  Basu introduces yet more third party images.  The pillow, in documents SA000556 and 557; (Pltf Ex T, Pltf Appx 220 -221) peacock feather "eyes" in documents SA000558 and 559 (*Id*. 222 – 223) wall art in documents SA000562 and 563, (Id. 226 – 227) tattoos in SA MV-21, 24, 28 (Pltf Exh U, Pltf Appx 241, 244, 248) the peacock feather designs in SA MV 45 – 47 (*Id*. 254 – 256)  the vector graphics starting at SA MV 73 (*Id*. 276) are examples showing that Basu's Peacock Feather #1 is not particularly original and that "inspiration" for legitimate, non-copied, works like the Accused Bag's peacock feather feature is commonly available.  The exhibits introduced by Basu show non-copying.

## 2. PEACOCK FEATHER #1 WAS NEVER PUBLISHED OR SOLD AND THERE IS NO EVIDENCE OF ACCESS

Access and similarity can permit an inference of copying if there is support.  Copyright is only infringed if someone has <u>copied</u>, literally reproducing, or preparing a derivative work.  In some cases, unlike this case, it is unknown who created the accused work.  A plaintiff may rely on inference of copying.  We need not infer here because there is evidence of creation:  (1) Shankar created the prototype of the Accused Work independently and (2) Seventh Avenue did no creation whatsoever.  Regardless, relevant access (and substantial similarity) is lacking.

Plaintiff tries a backwards inference to show copying by Shankar.  Plaintiff argues that because Seventh Avenue had access, although no privity with Shankar (Def/ Facts 47, Ludwig Dep page 20, line 24 – page 21, line 3, "Q.·Did you ever deal directly with Shankar Produce? A.· No.

19

Q: So your dealings with Shankar were totally through Anusha Merchandising? A: Correct. Def Cumul Appx 228) somehow Basu magically attributes access through an agent in India who arranged submission of samples created by Shankar – two parties removed from Seventh Avenue. Seventh Avenue knowing about Basu and Peacock Feather #1 is not transferrable to Shankar.

While, as shown in Plaintiff's Exhibit N, Manju Mittal, the agent in India suggested a particular look for a bag, Seventh Avenue wisely chose to not pursue a design that was close to the bag accused in the Prior Action.  Seventh Avenue had communicated interest in "feather" designs, but it a completely different "feather" – designs emulating a Southwestern US theme ("American Indian"). (Ludwig Dep page 40 lines 16 – 22, Pltf Exh N) This is an example of specifically avoiding "copying".

### 3. THERE ARE NO FACTS CONNECTING SHANKAR TO KNOWLEDGE OF THE COPYRIGHT DEPOSIT – THE ONLY PLACE TO SEE PEACOCK FEATHER #1

Basu's speculation about the knowledge of Shankar is contradicted by the Chokhany Declaration.  Seventh Avenue picked the design for the Accused Bag from a design submitted to it in 2012 by the Indian agent, Manju Mittal doing business as Anusha Marketing. (Ludwig Dep., Exhibit 9, Def Cumul Appx 1407) along with other bag designs, including another one with the red-and-pastel theme.  Ms Mittal did not identify the source of the designs.  The source only became apparent after the decision to purchase the design, on a bag shaped differently than the 2012 bag, and purchasing documents were generated.

Basu submits discovery answers from "Biacci, Inc.", a defendant in the Prior Action, a codefendant with Sharat Kumra,  Sisbro Creations, Potpourri Group, Inc. d/b/a Catalog Favorites and d/b/a Serengeti Catalog as well as Seventh Avenue's sister company Midnight Velvet, Inc. Basu's Exhibit H is a Complaint naming these parties, but the caption on Exhibit R, names another party, Signals Catalogue Corporation d/b/a Catalog Classics.  There is no explanation regarding

what these Defendants have to do with Biacci, or with Seventh Avenue or why some transaction two non-parties to this action, attribute actual knowledge of one of nineteen exhibits (Exhibits A through S <u>Amended</u> Complaint) to the creator of the Accused Bag, a non-party here.  Reverse attribution from Seventh Avenue who had no dealing with Shankar in the Prior Action is illogical.

Basu's spreadsheet, Doc. TBG - 1791-2855, Def. Cumul Appx 326, is 1065 pages of sales entitled "Plaintiff's Peacock Feather Design."  The title of the work at issue is "Peacock Feather #1." A search of the 1065 pages fails to identify a single sale entitled "Peacock Feather #1." Indeed, the word "feather" does not even appear in the spreadsheet.  These U.S. sales must be for some other "peacock" theme, not Peacock Feather #1.  Def Resp Facts 15.

This is consistent with Mr. Basu's testimony that Peacock Feather #1 was kept in-house and only used as a guide for the artists who hand painted products to be sold.  (Basu Dep. page 35, line 19 – page 36, line 10; page 42, line 22 – 25; page 58, line 21 – 24; page 134, line – page 135 line 5, Def Cumul Appx 44 - 51). Peacock Feather #1 was never outside the factory ("unpublished") with no realistic access in India.

If Biacci, Seventh Avenue's supplier in the Prior Action bought from Shankar that fact fails to show that Biacci sent a copy of the Peacock Feather #1 to Shankar.. Even if Shankar knew about the Prior Action (not shown) it is incredible to expect it searched lawsuit exhibits on PACER for the purpose of obtaining art that they could copy.  Access as argued but extremely attenuated.

## 4.  SUBSTANTIAL  SIMILARITY IS NOT THE PROPER TEST, BUT IS NOT MET EITHER

In deciding the Motion to Dismiss, Doc. 45 the Court had three graphic exhibits: the deposit with the registration, the advertisement attached to the Complaint, an enlargement of the image in the advertisement, requested by the Court in the pre-motion conference.  Because the "more discerning observer" test requires the presence of preexisting materials that were not before the Court at that time, the Court applied the "ordinary observer" test.  As the Court noted in Footnote 1,

"Courts apply a "more discerning" test where "a work contains both protectible and unprotectible elements."  In such circumstances, the court must "eliminate the unprotectible elements from its consideration and to ask whether the protectible elements, standing alone, are substantially similar." Hamil Am., 193 F.3d at 101 (citing Knitwaves, Inc. v. Lollytogs Ltd.  (Inc.), 71 F.3d 996, 1002 (2d Cir. 1995); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 765- 66 (2d Cir. 1991)).

The Court's decision does not preclude using the more discerning test now that there is a more complete record (including identifying the unprotectible elements). *Nobel Ins. Co. v. City of N.Y.*,  2006 WL 2848121, at 4 (S.D.N.Y. Sept. 29, 2006) pointed out: "[A]s a ruling in favor of a plaintiff on a motion to dismiss does not address the merits of a case, such ruling will not preclude a subsequent ruling in favor of a defendant on the same issue on a motion for summary judgment following discovery."

Seventh Avenue submits that the further quotations the Court referenced apply to the facts of the cited cases – public domain materials (such as an actual peacock feather) may bring the more discerning observer test – but under the facts of the present case there appear to be both public domain materials (actual peacock feathers) and pre-existing images that are copyrightable subject matter, both categories contributing to the more generic description "unprotectable elements."

"There is some point at which changes, not in themselves sufficient to make a difference, together become substantial enough. The expression of the accused work is then no longer the same as that of the protected work, although the fundamental incorporation of the idea may have been copied. "Even if an alleged copy is based on a copyrighted work, 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.' " *Eden Toys v. Marshall Field & Co*., 675 F.2d 498 (2d Cir.1982), quoting *Warner Bros. v. Am. Broadcasting Co*s., 654 F.2d 204, 210; 4 Nimmer § 13.03[B][1][b] at 13–56."

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp*.  210 F.Supp.2d 147  (E.D. N.Y., 2002)

*Porto v. Guirgis*  659 F.Supp.2d 597  (S.D. N.Y., 2009) stated:  "differences between the two works are relevant to the question of substantial similarity because "numerous differences tend to undercut substantial similarity.""

*Bill Diodato Photography, LLC v. Kate Spade, LLC* 388 F.Supp.2d 382, 389 - 390

22

(S.D.N.Y. 2005) describes the need for "improper appropriation" – even if there were direct

copying (not present here) there still must be a taking of a substantial portion of that which is

protectable:

> "Once actual copying has been established, the copyright owner must then satisfy the "improper appropriation" requirement by demonstrating that "substantial similarities" as to the protected elements of the work would cause an average lay observer to "recognize the alleged copy as having been appropriated from the copyrighted work." Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 911-12 (2d Cir.1980) (quotations and citations omitted).7 "For [this] prong it is essential that the similarity relate to copyrightable material." McDonald v. Multimedia Entm't, Inc., No. 90 Civ. 6356(KC), 1991 WL 311921, at *2, 1991 U.S. Dist. LEXIS 10649, at *6 (S.D.N.Y. July 19, 1991). When similar works resemble each other only in unprotected aspects-for example, when similarities inhere in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff-defendant prevails."

Once the idea of presenting the tip of a peacock feather is recognized as the premise,

similarity is explainable as similar elements were taken by Basu from the Preexisting Images.

*Cabell v. Sony Pictures Entertainment, Inc.* 714 F.Supp.2d 45 (S.D. N.Y., 2010) (comparing

photographs with similar themes and poses).  With no substantial similarity, and no proof of

"access", the Court could consider the need to find "so striking similarity" to preclude the

*possibility* of independent creation, *Lipton*, 71 F.3d at 471 Plaintiff's Memorandum at 20).

## G.   COMPETITION IN THE HAND-PAINTED BAG MARKET WITH A PEACOCK FEATHER THEME IS NOT WILLFUL INFRINGEMENT

Simply, there is no willful infringement because there is no infringement.  Basu's cites

cases that reflect sets of facts not present here.  Basu itself introduced evidence that Seventh

Avenue has been selling many peacock themed products for years.  Basu itself introduced evidence

that show a peacock handbag deemed too similar to Basu's was rejected.  Basu itself introduced

evidence that Seventh Avenue had illustrations of natural peacock feathers.  All these preexisting,

or substantially concurrent, other peacocks indicate that peacock themes are free for all to use.

The Accused Bag was clearly created by someone other than Seventh Avenue, a legal entity

not a party to this lawsuit.  Promptly upon receipt of the threat of this lawsuit, Seventh Avenue,

through counsel, requested an explanation from its agent, who brokered the purchase, and the manufacturer, Shankar who explained the Accused Bag was independently created and naively expressing his belief that no one could register the national bird of India.

The foregoing facts need to be considered in the context of the careful balancing of copyright to "advance the progress of Science and the Useful Arts" (Art 1, Par. 8, Clause 8)  that permits rewards to authors only for their "Writings and Discoveries."  Copyright cannot capture something in the public domain and the doctrines judging infringement by similarity to an observer judging the points of originality mean that there is a large volume of non-infringing alternatives that may be freely used to decorate useful items like handbags. (*Feist Publications Inc v Rural Telephone Service Co Inc.,* 499 U.S. 340, 350 (1991) "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original—for example ... facts, or materials in the public domain—as long as such use does not unfairly appropriate the author's original contributions.")  Even if there were copying – there was not – there would be permission to use peacock feathers.

Indeed, the public is served equally by encouraging vigorous defense of unwarranted infringement claims as by assertion of, not the case here, legitimate infringement cases. ("Because copyright law ultimately serves the purpose of enriching the general  public through access to creative works, it is peculiarly important that the law's boundaries be demarcated as clearly as possible. Thus, a defendant seeking to advance meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious infringement claims." (emphasis added) *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 517 - 518 (1994)). Basu should not be allowed exclusive rights to use the "idea" of a peacock feather painted on a bag, and Defendant selling a bag with an independently created and dissimilar portion of a peacock feather as part of a larger distinct work is faultless and innocent.

**IV CONCLUSION**

Basu presents conclusory and disconnected arguments regarding facts such as its derivation from the Preexisting Images and some sort of immunity for it to copy photographs while being permitted to have rights in its work with the same features.  The Preexisting Images provide a benchmark for judging what is free for all to use and Seventh Avenue is justified in selling a competitive product.  Basu would prefer that the Preexisting Images and the natural peacock feathers did not exist and would prefer a substantial similarity rule, but the facts in this case dictate either a more discerning observer test, or recognizing that if the idea is a peacock feather, then Basu cannot monopolize the idea.  While these are many reasons to deny Summary Judgment to Basu and grant Summary Judgment for Seventh Avenue, there is evidence of independent creation. Finally, because Basu is arguing similarity in the very features it failed include in a Limitation of Claim, the Court could deny enforcement based on unclean hands, or it could refer to the Copyright Office to determine if it should rid the public of a claim of Copyright in Peacock Feather #1. Basu's Motion for Summary Judgment should be denied.

Respectfully submitted,

Dated: _April 21, 2017_____              By: _/David C. Brezina/_____
                                        David C. Brezina
                                        DB4599 (*pro hac vice*)

                                        Ladas & Parry, LLP
                                        224 South Michigan Avenue, #1600
                                        Chicago, IL   60604
                                        312.427.1300
                                        Fax 312.427.6663
                                        dbrezina@ladas.net

Ralph H. Cathcart, Esq. (RHC 2350)
Ladas & Parry, LLP
1040 Avenue of the Americas
New York, NY 10018
Tel 212.708.1800
Fax 212.246.8959

CERTIFICATE OF SERVICE

I hereby certify that I have this 21st day of April, 2017, served a copy of the foregoing including the contents of the Cumulative Appendix, by mailing, postage/shipping prepaid, in an envelope addressed to:

> Michael Robert Gilman
> Kaplan Breyer Schwarz & Ottesen LLP
> 100 Matawan Rd., Ste. 120
> Matawan, NJ 07747
> Email: mgilman@kbsolaw.com

Dated: April 21, 2017                              /David C. Brezina/

                                                   David C. Brezina
                                                        DB4599 (*pro hac vice*)