UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
                                                    :
THE BASU GROUP INC.,                                :
                                                    :
                Plaintiff,                          :     Civil Action No.
                                                    :     16-cv-00461-PGG
        v.                                          :
                                                    :
SEVENTH AVENUE, INC.                                :     JURY DEMANDED
                                                    :
                Defendant.                          :
-------------------------------------------------------------X
```

### SEVENTH AVENUE, INC.'S RESPONSE TO PLAIINTIFF'S STATEMENT OF FACTS PURSUANT TO RULE 56 (c) F.R.C.P. AND LOCAL CIVIL RULE 56.1 AND INDIVIDUAL RULE OF PRACTICE 5 (B)

Defendant Seventh Avenue, Inc. (hereinafter SEVENTH AVENUE) through its counsel hereby submits as its Response to Plaintiff's Statement of Facts, Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, the following:

**PLAINTIFF'S PROPOSED NO. 1**

1.      The Basu Group Inc. ("Plaintiff ') is a corporation of the state of New Jersey, having a place of business at 1003 Berkshire Drive, South Brunswick, NJ. (Deposition Transcript of Bhaskar Basu ("Basu Depo.") p. 12, lns. 1-3 (Ex. B to the 56.l App. 1 )

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 1**

Not contested.

**PLAINTIFF'S PROPOSED NO. 2**

2.      Seventh Avenue, Inc. ("Defendant") is a corporation of the state of Wisconsin having a place of business at 1112 7th Avenue, Monroe, Wisconsin 53566. (Defendant's Answer to the Complaint, Doc 60 of the Docket of this Action ("Ans.")7 (Ex. E to the 56.l App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 2**

Not contested.

**PLAINTIFF'S PROPOSED NO.3**

3.     Defendant is the owner and operator of the retail, internet website located at www .seventhavenue.com and also distributes a consumer goods catalog nationwide. (Ans. 7 (Ex. E to the 56.l App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 3**

Not materially contested. A related company, rather than Seventh Avenue is the registrant of the domain name and some distributing may conducted by affiliated companies.

**PLAINTIFF'S PROPOSED NO.4**

4.     Defendant offers for sale and sells through its stated website and catalogs consumer goods to consumers located throughout the United States, including, but not limited to, to consumers located and/or residing in the state of New York and the judicial district of this Action. (Deposition Transcript of Paula Ludwig ("Ludwig Depo.") p. 11, Ins 13-24 (Ex. P to the 56.1 App.); and Ans. if 8 and 10 (Ex. E to the 56.1 App.))

RESPONSE TO PLAINTIFF'S PROPOSED NO. 4

Not contested.

**PLAINTIFF'S PROPOSED NO.5**

5.     Plaintiff is the owner of a certain original work of art entitled "Peacock Feather #1", and has used said artwork for a design found on Plaintiff s goods ("Peacock Feather Design"). (U.S. Copyright Registration Certificate VA 1-652-678 ("'678 Reg.") (Ex. F to the 56.1 App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 5**

 The claim of originality and the general statement "work of art" are contested.  It is

not contested that Basu has record title to a Copyright registration in a certain work of art entitled "Peacock Feather #1." Basu Deposition ("Dep.") Page 36, line 20 to page 37 line 4 ("36:20-37:4)"; Complaint Doc. 1 ¶ 12.

### PLAINTIFF'S PROPOSED NO.6

6. The Peacock Feather Design consists of material which is wholly original and is copyrightable subject matter under the Copyright Laws of the United States, 17 U.S.C. Sec. 101, et. seq. ('678 Reg. (Ex. F to the 56.1 App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 7        (sic 6)

Contested. See Defendant's Statement of Facts, No. 8 – 22 substantially reproduced here as sup-parts a. – o.:

   a. In 2007 Mr. Basu attended trade shows to see what designs were becoming popular and concluded that "feathers" were becoming popular. Basu Dep. 47:14-25.

   b. At the time of Basu's preparation of Peacock Feather #1, Basu had in its possession, preexisting images that Basu downloaded from the Internet and/or clipped from magazines. ("some came from the internet. There was a few that we found in a magazine cutting. So, yeah, I mean, typically we get all our images from publications, like magazines or the internet…what you're looking at in exhibit four are images that were either downloaded from the internet or cutouts from magazines and newspapers"). Basu Dep. 41:13-43:12, 52:17-20. (hereafter "Preexisting Images")

   c. One of the Preexisting Images bears a copyright notice, "Snakey's Creation © 2004" which is someone other than Basu. Basu Dep. Ex. 4 TBG0001292; Counterclaim Ex. C Doc. 60-2, 3 Brezina Dec. Exh. B.

 d. At the time of preparation of Peacock Feather #1 the three co-authors had, displayed on a table, the preexisting photographs. ("All the photographs in exhibit four. Yeah, I mean, it was on the same table.  We were all working together.  So, you know, when we're working together, the photographs are -- you know, whatever material we gather, we have it available to everybody.  So the three of us, when we were working, it's lying on the table.  I'm sure everybody looked at it"). Basu Dep. 49:11-24.

 e. Basu used the Preexisting Images to define the look and feel of Peacock Feather #1.  Basu Dep. 45:5-46:14, 48:20-21, 144:16-17.

 f. The Preexisting Images were fixed in a tangible medium of expression, either as images on the Internet or as images printed in magazines.  Basu Dep. 41:13-43:12, 52:17-20.

 g. The individual strands in some of the preexisting peacock feather images and Peacock Feather #1 are roughly the same thickness and width. Basu Dep. Ex. 4 TBG0001287-1291.

 h. The width of each feather strand in some of the preexisting peacock feather images and Peacock Feather #1 gradually taper off to a point at the tip of the feather.  Id.

 i. The feather strands in some of the preexisting peacock feather images and Peacock Feather #1 feature colored inner lines with a black outer border. Basu Dep. Ex. 4 TBG0001288-89, 1291.

 j. Many of the colors used in the preexisting peacock feather images, the natural peacock feathers and Peacock Feather #1 are the same.  Basu Dep.

        Ex. 4 TBG0001287-1291; see also Plaintiff's Ex. 50-51 TBG0001623-1624 (original feathers in possession of Plaintiff's counsel)

k. Some of the preexisting peacock feather images, the natural peacock feathers and Peacock Feather #1 have blue strands with a black border. Basu Dep. Ex. 4 TBG0001287-1291; Counterclaim Ex. C TBG0001623-1624, Doc. 60-3, 2-3.

l. Most of the preexisting peacock feather images, the natural peacock feathers and Peacock Feather #1 have an upside-down heart-shaped image in the center area of the feather. Basu Dep. Ex. 4 TBG0001287 - 1291; Counterclaim Ex. C TBG0001623-1624, Doc. 60-3, 2-3.

m. Most of the Preexisting Images, the natural peacock feathers and Peacock Feather #1 have a heart-shaped image superimposed over an oval image of a contrasting color upside-down heart-shaped image in the center area of the feather. Basu Dep. Ex. 4 TBG0001287-1291; Counterclaim Ex. C TBG0001623-1624, Doc. 60-3, 2-3.

n. Most of the preexisting peacock feather images, the natural peacock feathers and Peacock Feather #1 have the heart shaped image and the oval image encircled by a roundish form, featuring yellow, green and purplish colors. Basu Dep. Ex. 4 TBG0001287-1291; Counterclaim Ex. C TBG0001623-1624, Doc. 60-3, 2-3.

o. The image with the "Snakey's Creation © 2004" copyright notice has purplish coloring. Basu Dep. Ex. 4 TBG0001291; Counterclaim Ex. B TBG0001291, Doc. 60-2, 7.

**PLAINTIFF'S PROPOSED NO. 7**

7.     Plaintiff duly complied with the provisions of the Copyright Laws of the United States and secured rights and privileges in and to the Peacock Feather Design from the U.S. Copyright Office under U.S. Copyright Registration, No. VA 1-652-678, having an effective date of February 10, 2009. ('678 Reg. (Ex. F to the 56.l App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 7**

Contested.  See Defendant's Statement of Facts, No.  23 – 28, 35 - 44 substantially reproduced here as sup-parts a. – p:

> a. Basu did not have permission from the authors of said images to prepare a work or works having those common elements.  ("images that were either downloaded from the internet or cutouts from magazines and newspapers") Basu Dep. 52:17-20.
>
> b. The image at the bottom right of the first page of images used by Basu as "Inspirations" appears to be a whimsical, rather than realistic, image representing a peacock feather. Basu Dep. Ex. 4  TBG0001287, Counterclaim Ex. B Doc. 60-2, 3.
>
> c. Two of the Preexisting Images are similar to Peacock Feather #1:

| Basu Dep. Exh. 4, TBG0001287, Bottom Right Image, Rotated | Basu Dep. Exh, 4, TBG0001291. | Plaintiff's Ex. A Doc. 1, 10, Peacock Feather #1. |



Def Cumul Appx 13, 53, 54, 59, 60, 131 - 139

   d. Basu had natural peacock feathers when preparing Peacock Feather #1 ("these were the feathers that we used back in 2007 when we were designing the peacock feather"). Basu Dep. 139:13-15; Counterclaim Ex. C Doc. 60-3, 2-3; Plaintiff's Ex. 50-51 (originals in possession of Plaintiff's Counsel).

   e. Peacock Feather #1 was also derived from natural peacock feathers.

Q. And the first sentence reads: With its iridescent plumage and dazzling beauty, the gorgeous peacock has been a muse for our designers for years. Do you see that? A. Yes, I do. Q. And then it continues: We combine the shimmering feathers with glowing tangerine lilies to add glamor to a classic art. What is the classic art referred to there? A. Well, first of all, this is marketing verbiage. The classic art in this instance is being referred to as a peacock feather story that we created with flowers. So the peacock feather being a very key element of this specific artwork and over the years we have seen that customers come to us for our peacock feathers. Q. What does has been a muse for our designers mean? A. I guess the marketing team was trying to refer to our -- you know, our inspiration.

> You know, again, its marketing verbiage. So the consumer who is looking at this image reading this text it romanticizes the process of how we get inspired by elements of nature. Q. So that would be the peacock inspiration in exhibit -- I think it was four that we were talking about? Is that the muse for the designers? A. I've got to look. That's exhibit four; right? MR. GILMAN: Yes. Q. Is that the inspiration, the muse for your designers, exhibit four? A. Well, as we have discussed earlier today that I am one of those authors, so yeah, I mean, those feathers have definitely been an inspiration to me…MR. BREZINA: It speaks for itself, but with its iridescent plumage and dazzling beauty the gorgeous peacock has been a muse for our designers for years, period. We combined the shimmering feathers with a glowing -- I'm sorry, with glowing tangerine lilies to transform a classic art into a glamorous accessory. I think I may have missed the tangerine part. MR. GILMAN: Thank you.

*Id.*; see also Basu Dep. Ex. 13; Basu Dep. 112:8-113:14.

    f. The natural peacock feathers were used to create the look in Peacock Feather #1 which was then subsequently used to create products that were sold. ("I looked at images of peacock feathers and then we drew it several times until we got it to a shape and form that best represented the look that I wanted to create with the peacock feather and then use that look in the rest of my subsequent creations. Q. And that look that you ended up creating was from the picture of exhibit two? A. That is correct"). Basu Dep. 140:12- 20.

    g. Mr. Basu has personally prepared and filed Copyright applications. Basu Dep. 71:18-25.

    h. Basu carefully reviewed facts surrounding authorship of Peacock Feather #1 prior to filing, including careful review of the authorship of the three named authors and identifying them, and the nature of their authorship in completing the application. Basu Dep. 84:19-88:10; Basu Dep. Ex. 9 94:6-95:1.

   i. In completing the application Basu was prompted by the electronic Copyright Office application form to complete the screen-identifying limitations to the copyright claim if: the work contained was based on previously registered material, previously published material, material in the public domain or material not owned by Basu.  Brezina Dec. Exh. A, pages SA001229 - SA001235; Counterclaim Ex. D. Doc. 60 – 4, pages Page 2 - 9

   j. The application as filed did not identify any preexisting works, and specifically did not identify the 2D Artwork in Basu Dep. Exh. 4.  Brezina Dec. Exh. A, pages SA001229 – SA – 001231; Basu Dep. 83:8-25; Counterclaim Ex. D Doc. 60-4; Answer to Counterclaim ¶ 14.

   k. The application as filed identified the work as "published" and the date of publication as January 1, 2008.  Brezina Dec. Exh. A, pages SA001229 – SA001231, see Basu Dep. 78:7-9; Counterclaim Exh. D, Doc. 60 -4.

   l. Basu knowingly made false representations of material facts in its application for Copyright Registration No. VA 1-652-678.

A: January 1 is a national holiday in the U.S.    Were you working that day? A.  No.  We were not -- like so we actually started distributing it even before that and it is -- you know, on that date, people had already gained access through their e-mail boxes or other formats.

Basu Dep. 79:2-11.

   m. Basu caused to be filed, on February 6, 2008, with the Register of Copyrights, an application to obtain a Certificate of Registration bearing the title "Peacock Feather #1" on February 6, 2008.  Brezina Dec. Exh. A, pages SA001229 – SA001231; Counterclaim Ex. D, Doc. 60 – 4.

9

n. The deposit sent to the Copyright Office was a photograph of hand-painted art on a piece of leather. Basu Dep. 36:11-19.

o. Certificate of Registration VA 1-652-678 was issued by the US Copyright Office based on the information submitted in the application and the deposit; said Certificate, having an effective date of February 10, 2009.; Basu Dep. Exh. 2; Complaint Ex. A; Complaint ¶ 14; Counterclaim Exh. A See Compendium III 204.3(A),(B).

p. Basu wants to use its Copyright to control use of its ideas. ("I obviously did not want that artwork to end up or my ideas to end up elsewhere") Basu Dep. 86:24-87:1; ("I need to protect that idea of mine that I'm bringing to the table that I'm creating as a collection for our company and also, of course, from a legal standpoint for the purpose of being able to copyright that work and protect ourselves") *Id.* at 87:13-18.

**PLAINTIFF'S PROPOSED NO. 8**

8. Defendant promoted and sold on its website and through catalogs, a handbag under the title "Hand-Painted Leather Peacock Bag", under Item No. #D7724955 ("Accused Bag"). (Ans. 17 (Ex. E to the 56.1 App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 8**

Not materially contested. However, although Defendant offered for sale products identified as "Hand-Painted Leather Peacock Bag #07724955." (Davis Dep. 19:8-9, 21:3-5; see Complaint Ex. B) it was Internet only. Two catalogs with the product were distributed by a related company, not Defendant.

**PLAINTIFF'S PROPOSED NO.9**

9. Plaintiff earlier sued Defendant in another lawsuit in this same judicial

district, Docket No. 12-cv-05565 (SN) (now closed) ("Prior Action"), asserting copyright infringement of the same '678 Reg. against Defendant. (Ans. 119 (Ex. E to the 56.1 App.); and Complaint in Prior Action ((Ex. H to the 56.1 App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 9**

Contested as incomplete. Civil Action No. 12-cv-05565 (SN) was filed against Biacci, Inc., Sharat Kumra, Sisbro Creations, Potpourri Group, Inc. d/b/a Catalog Favorites and d/b/a Serengeti Catalog, Seventh Avenue's sister company Midnight Velvet, Inc. and in the Amended Complaint, Signals Catalogue Corporation d/b/a Catalog Classics. The Prior Action alleged infringement of Copyright Reg. No. VA 1-652-678, VA 1-652-680, VA 1-652-825, VA 1-652-675, VA 1-652-674, VA 1-652-851 and VA 1-652-852. The Defendant Biacci was Seventh Avenue's (and Midnight Velvet's) supplier of the bags accused in that case. Some of the Defendants appear to have been competitors of Seventh Avenue and Midnight Velvet.

**PLAINTIFF'S PROPOSED NO.10**

10.   Plaintiff sent an email letter to Defendant's counsel dated December 9, 2015, notifying Defendant of Plaintiff s new infringement claim of the '678 Reg. (Ans. 120 (Ex. E to the 56.1 App.))

RESPONSE TO PLAINTIFF'S PROPOSED NO. 10

Contested as incomplete. Defendant disputed the claim, asserting independent creation, denying similarity and advising the claim was frivolous in an email of January 12, 2016 (Defendant's Cumulative Appendix, ("Def. Cumul. App'x") pages 1391-1395)

**PLAINTIFF'S PROPOSED NO. 11**

11.   All allegedly infringing activities of Defendant relating to the Accused Bag were, and are if continuing, without the permission, license or consent of Plaintiff. (Ans. 122 (Ex. E to the 56.1 App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 11**

Not materially contested, due to the qualification "alleged" and noting that the Accused Bag has been discontinued and sales will not be resumed.

### PLAINTIFF'S PROPOSED NO. 12

12.     Plaintiff commenced this Action by the filing of its Complaint on January 21, 2016.  (Copy of Complaint ((Ex. C to the 56.l App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 12

Not contested.

### PLAINTIFF'S PROPOSED NO. 13

13.     Defendant was served with the Complaint on March 7, 2016. (Copy of Affidavit of Service ((Ex. D to the 56.1 App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 13

Not contested.

### PLAINTIFF'S PROPOSED NO. 14

14.     Plaintiff first started selling bags, purses, wallets and belts bearing the Peacock Feather Design ("Items") protected by the '678 Reg. in 2008. (Declaration of Bhaskar Basu ("Basu Dec.") 13 ((Ex. B to the 56.1 App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 14

Contested.  Peacock Feather #1 was never "borne" by any product, it was an internal "guide" used to prepare hand painted art on bags, purses, wallets and belts. See Defendant's Statement of Uncontested Facts, No. 29 – 34 reproduced here as sub-parts a. – f.

a. Peacock Feather #1 is an internal guide for use by the manufacturer of hand-painted handbags.  ("I mean, again, the picture that you see, the color is -- like I said earlier as well is something -- for us it's like, you know, we can put different colors there

to create a representation, because this, these colors by themselves are not a real feather, you know, as is. So in our view, in the world of drawing and coloring, you know, the drawing itself, as in the black lines, the way we have defined this peacock feather so that we can place colors along it, along the sides of those black lines or within the framework of those black lines is what allows us to create our art. So -- no, I mean, specifically this one has no red color, but we can use any color we want to") Basu Dep. 35:19-36:10; ("… use that as our guidelines to arrange, you know, different colors around them to create various images of peacock feathers") *Id.* at 42:22-25; ("Yes, that's the look we want to move forward with, and that became our initial guideline to how we wanted to do the feather") *Id.* at 58:21-24; ("so that it can be converted into a representative diagram that we can then use as our element or artwork, etc."). *Id.* at 134-135:5.

b. Basu's production process, to go from an unpublished, internal, design such as Peacock Feather #1 to a handbag, requires care to adapt the internal guide to the finished product with new artwork.

> Q. What did you do when you used it to create different bags? A. So when we are designing any artwork, when I'm sitting and thinking and planning what that artwork is going to look like, a bag, a handbag is not the same as a -- you know, a canvass literally. A canvass is rectangular in shape typically and you've got, you know, several inches on one side and a few inches on the other side. It's a flat surface. You can plan the artwork in a certain way. When you're planning artwork on a bag, you've got to think about a 360 degrees all around the bag representation of your story, and we're trying to create a story with our elements, of course. So for me to plan that art, what I do is first I create an element that I want to work with, and once I have my elements created, I place that along the bag and I try different combinations, different sizes to figure out what would look best. The leather might wrinkle in certain parts. The bag might fold in certain areas. The art might get hidden, etc. So I've got to be careful of all of

13

>those things when placing my artwork so that when the bag is being carried by a customer in its true form and the leather is in its natural form against that bag, the artwork still stands out.   So what you're seeing in this – in these images is us placing that artwork in a certain fashion so that the story comes across on the bag's surface the way we intended it to be represented.

Basu Dep. 53:14-54:19.

c. Peacock Feather #1 was used as a guideline to prepare sample handbags which had their own new art derived therefrom, and then the sample handbags were copied to manufacture the final production versions for sale.

>So during the creation process, it's a closely guarded secret, whatever new artwork we're creating.  So it's a small team that is involved, and at the time of this peacock feather, it was Soumitra, my mother and myself.  I was there in the room creating this artwork with them, and once the artwork was created and we were satisfied with what we created, we created samples of bags that we wanted to launch in the market, and once that bag goes into production, we then share that sample, the initial sample with our artisans and they go ahead and recreate that art on those bags.  They color the bags just by looking at the samples.  So that process, you know, like basically sometimes we are painting the bag before it is constructed.  Sometimes we're painting the bag after it is constructed. The different aspects of this artwork that -- you know, that takes place before and after based on the construction because the leather is getting folded or pleated, you can't draw on that or do anything with that, or rather it gets very complicated if you try to do it after it is stitched and pleated.  So there is before and after stages when we are applying the artworks and the colors and the painting to the bag and they -- again, when they're working, they always have that sample in front of them, the original sample, and once all of those things are done, we inspect it and then we sign every bag.

Basu Dep. 55:1-56:5.

d. The most important features in Peacock Feather #1 are the lines, not the colors, because the colors can be changed for painting on production handbags. Regarding the eye:

> [I]n terms of colors, we've used everything from purple to yellow to blue to green. We've used metallic gold. We have used black. We've used different colors, but again, for us, when we were drawing it, the lines were the most important part to kind of how we interpreted the look of that eye, and the colors were more of a secondary thing, because we can keep changing those colors, we can -- because it is kind of using artistic liberty, we can have fun with using different colors to create different expressions of the same element. So the most important part of when we were drawing it were those four lines so that we could separate our coloring and create an effect that has a good impact.

Basu Dep. 33:1-12.

e. Because Peacock Feather #1 was used as an internal guideline, it was not itself published, the published derivative works having differences.

> Q. Let's refer back to exhibit two, the picture at the bottom. Exhibit two has the barbs or branches at the bottom with green and blue coloration; correct? A. Yes. Q. Black lines and on top -- A. There are green lines, yeah. Q. And the picture you identified in page 141 has a reddish or pink at the bottom and then a greenish blue, the ones above it; correct? A. Yes, it's a different coloration. Q. And the curve of the quill or stem is different in exhibit two and in item number 1078; correct? A. Well, yeah, it's slightly different. This is curving in one direction. That's curving in the other. Q. And the coloration of the eye is different; correct? A. Yes, it is different, and like I was telling you earlier, for me it was more about the drawing itself of the peacock feather that represented our creation and giving us the liberty to fill those gaps with any color we wanted to.

Basu Dep. 105:14-106:12.

f. The production hand-painted handbags that have been sold by Basu all have peacock feather designs that vary from the deposit with the application to various degrees. ("Q. All right. Your bags are all hand painted; correct? A. Yes, they are. Q. So there are no two alike? A. There is always going to be little differences because when you're hand painting a bag, you're using brush and paint and you're applying that paint in different ways, and just like your own personal signature, no

15

two bags can be exactly the same") Basu Dep. 36:20-37:4.

### PLAINTIFF'S PROPOSED NO. 15

15.     For the calendar years 2008 through 2016, inclusive, Plaintiff sold approximately one hundred seven thousand eight hundred fifty (107,850) units of Items for total gross sales of over seven million ($7,000,000.00) dollars.  (Basu Dec. 114-13 ((Ex. B to the 56.l App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 15

Contested.  Basu spreadsheet, Doc. TBG - 1791-2855 (Def. Cumul. App'x pages 326 – 1390) comprises 1065 pages that it represents display "Plaintiff s Peacock Feather Design."  A search of the 1065 pages fails to identify a single sale entitled "Peacock Feather #1."  The word "feather" does not even appear in the spreadsheet.   By comparison some of the goods appear to have the same title as "Peacock Safari", Reg. No. VA 1-652-680 which was at issue in the Prior Action. The sales referred to may be for some other "peacock" entitled products, not Peacock Feather #1.

### PLAINTIFF'S PROPOSED NO. 16

16. Plaintiff s Items are painted and manufactured by Societe Maison de Cuir, a company of India having a place of business in Kolkata, India. (Basu Depo. p. 15, Ins 7-9, and p. 50, Ins 4-5, ((Ex. K to the 56.1 App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 16

Not contested.

### PLAINTIFF'S PROPOSED NO. 17

17.     Defendant's Accused Bags were painted and manufactured by Shankar Produce Company Private Limited, a company of India also having a place of business in Kolkata, India. (Ludwig Depo. p. 30, Ins 2-4 and 18-20 ((Ex. Q to the 56.l App.))

### RESPONSE TO PLAINTIFF'S PROPOSED NO. 17

Not contested.

**PLAINTIFF'S PROPOSED NO. 18**

18. Defendant was the importer of the Accused Bags. (Defendant's Response to Interrogatories, pp. 11-12, answer to Int. IO (Ex. S to the 56.1 App.))

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 18**

Not contested.

**PLAINTIFF'S PROPOSED NO. 19**

19. Over the years, Defendant has sold other goods bearing Peacock art. (Ex. T to the 56.l App.)

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 19**

Contested, insofar as "Peacock art" is undefined.

**PLAINTIFF'S PROPOSED NO. 20**

20. Images of Peacock art produced by Defendant in the Prior Action, in 2012. (Ex. U to the 56.l App.)

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 20**

Not contested, to the extent that "produced" means produced during discovery.

**PLAINTIFF'S PROPOSED NO. 21**

21. Additional images of Peacock art produced by Defendant in this Action. (Ex. V to the 56.1 App.)

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 21**

Not contested, to the extent that "produced" means produced during discovery.

**PLAINTIFF'S PROPOSED NO. 22**

22. A true and accurate representation of a paper Visual Arts (VA) application fonn and its instructions are available at least from the U.S. Copyright Office website at https://www.copyright.gov/formslformva.pdf. (Ex. M to the 56.1 App.)

**RESPONSE TO PLAINTIFF'S PROPOSED NO. 22**

Although irrelevant in a case of an electronic copyright application filed in 2009, not contested.

Respectfully submitted

| | |
|---|---|
| April 21, 2017 | /David C., Brezina/ |
| Date | David C. Brezina |
| | DB4599 (*pro hac vice*) |
| | Ladas & Parry, LLP |
| | 224 South Michigan Avenue, #1600 |
| | Chicago, IL   60604 |
| | 312.427.1300 |
| | Fax 312.427.6663 |
| | dbrezina@ladas.net |

Ralph H. Cathcart, Esq. (RHC 2350)
Ladas & Parry, LLP
1040 Avenue of the Americas
New York, NY 10018
Tel 212.708.1800
Fax 212.246.8959

CERTIFICATE OF SERVICE

I hereby certify that I have this 21st day of April, 2017, served a copy of the foregoing by mailing, postage/shipping prepaid, in an envelope addressed to:

> Michael Robert Gilman
> Kaplan Breyer Schwarz & Ottesen LLP
> 100 Matawan Rd., Ste. 120
> Matawan, NJ 07747
> Email: mgilman@kbsolaw.com

Dated: April 21, 2017                                                            /David C. Brezina/

                                                                                David C. Brezina
                                                                                DB4599 (*pro hac vice*)