UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :
THE BASU GROUP INC.,                                          :
                                                              :
                                                              :
                              Plaintiff,                      :         Civil Action No. 16-cv-00461-PGG
                                                              :          ECF CASE
                    v.                                        :
                                                              :
SEVENTH AVENUE, INC.,                                         :
                                                              :
                              Defendant.                      :
--------------------------------------------------------------X


---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ITS
COPYRIGHT IS NOT INVALID, FOR COPYRIGHT INFRINGEMENT, AND
FOR A RULING THAT SUCH INFRINGEMENT WAS WILLFUL**

---


KAPLAN BREYER SCHWARZ
   & OTTESEN LLP
Michael R. Gilman (MG 7608)
100 Matawan Road, Suite 120
Matawan, New Jersey 07747
Telephone (732) 578-0103, ext. 233
mgilman@kbsolaw.com


*Attorneys for Plaintiff The Basu Group, Inc.*


Dated: March 31, 2017

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT  …………………………………………………...1

II.  HISTORY OF THIS ACTION  …………………………………………………..3

III. ARGUMENT  …………………………………………………………………..5

   A.  STANDARD FOR SUMMARY JUDGMENT  …………………………………...5

   B.  STANDARD FOR A FINDING OF COPYRIGHT INFRINGEMENT  …………..6

   C.  PLAINTIFF OWNS A VALID COPYRIGHT REGISTRATION  …………………8

       1)  Plaintiff's Peacock Feather Design is Neither a Compilation Nor a

           Derivative Work  …………………………………………………………8

       2)  Plaintiff Did Not Perpetuate A Fraud On The Copyright Office  …..…....13

   D.  THERE HAS BEEN UNAUTHORIZED COPYING OF PLAINTIFF'S PEACOCK

       FEATHER DESIGN  …………………………………………………………...16

       1)  The Designs in Question  ..……………………………………………17

       2)  Access  ..………………………………………………………………17

       3)  Substantial Similarity  ..………………………………………………20

   E.  DEFENDANT'S INFRINGEMENT WAS WILLFUL  ……………………………21

IV.  CONCLUSION  ………………………………………………………………23

## TABLE OF AUTHORITIES

Cases

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995)………………………………. 14, 18

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ..........................5

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................................................5

*Boisson v. Banian,* 273 F.3d 262 (2d Cir. 2001)..................................................................17, 20

*Broadcast Music, Inc. v. Prana Hospitality, Inc.,* 158 F. Supp.3d 184 (S.D.N.Y. 2016)..................21

*Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000)...............................................................5

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)....................................................................................5

*Cengage Learning, Inc. v. Shi,*

  2015 WL 5167775 (S.D.N.Y, 13-cv-7772-VSB-FM, Sept. 3, 2015).............................................22

*Chere Amie, Inc. v. Windstar Apparel, Corp.,* 191 F. Supp.2d 343 (S.D.N.Y. 2001) .................14, 16

*Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ...................................................................14

*Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905 (2d Cir. 1980)..................................................8

*Eckes v. Card Prices Update,* 736 F.2d 859 (2d Cir. 1984)................................................................13

*Engel v. Wild Oats, Inc.,* 644 F. Supp. 1089 (S.D.N.Y. 1986)...........................................................22

*Eyal R.D. Corp. v. Jewelex New York, Ltd.,* 576 F. Supp.2d 626 (SDNY 2008)...............................13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991)........................................................6

*Fisher-Price Toys, Div. Of Quaker Oats Co. v. My-Toy Co., Inc.,*

  385 F. Supp. 218 (S.D.N.Y. 1974) ...............................................................................................17

*Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d 1110 (2d Cir. 1986).......................22

*Fonar Corp. v. Domenick,* 105 F.3d 99 (2d Cir. 1997)........................................................................8

*Grady v. Affiliated Cent., Inc.,* 130 F.3d 553 (2d Cir. 1997) .............................................................5

*Gund, Inc. v. Fortunoff, Inc.,* 3 U.S.P.Q.2d 1556 (S.D.N.Y 1986)..............................................17, 20

*Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 2001) ......................................................................7, 22

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189 (2d Cir.1985) ......................................8

*Helios Int'l. S.A.R.L. v. Cantamessa USA, Inc.,* 23 F. Supp.3d 173 (SDNY 2014)...........................14

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257 (2d Cir. 2005)...........7, 21

*Lauratex Textile Corp.v. Allton Knitting Mills Inc.,* 519 F. Supp. 730 (S.D.N.Y. 1981) .................23

*Lipton v. Nature Co.,* 71 F.3d 464 (2d Cir. 1995)....................................................................6, 18, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).....................................................................5

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250 (2d Cir. 1992) ...........................22

*Olem Shoe Corp. v. Washington Shoe Corp.,* 591 Fed. Appx. 873 (11th Cir. 2015).......................16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57 (2d Cir. 2010) ............8, 20, 21

*Prince Group, Inc. v. MTS Products,* 967 F. Supp. 121 (S.D.N.Y. 1997)..........................................7

*Santrayall v. Burrell,* 993 F. Supp. 173 (S.D.N.Y. 1998) ...............................................................15

*Scheiner v. Wallace,* 832 F. Supp. 687 (S.D.N.Y. 1993) ..........................................................14, 15

*Scotto v. Almenas,* 143 F.3d 105 (2d Cir. 1998) ...............................................................................5

*Ty, Inc. v. Publ'ns Int'l Ltd.,* 292 F.3d 512 (7th Cir. 2002) ...............................................................10

*United States v. Diebold, Inc.,* 369 U.S. 654 (1962).........................................................................5

*Vargas v. Transeau,* 514 F. Supp.2d 439 (S.D.N.Y. 2007) ...............................................................5

*Walt Disney Co., v. Best,*

  1990 WL 144209 (S.D.N.Y., 88-cv-1595-SWK, Sept. 26, 1990)...................................................23

*Warner Bros. Entertainment Inc. v. RDR Books,* 575 F. Supp.2d 513 (S.D.N.Y. 2008).......10, 11, 15

*Wexner v. First Manhattan Co.,* 902 F.2d 169 (2d Cir. 1990)........................................................14

*Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452 (2d Cir. 1989) .........................................14

*Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101 (2d Cir. 2001) ...................................................8, 20

Statutes

17 U.S.C. § 101 ...........................................................................................................................1

17 U.S.C. §102 ...........................................................................................................................6

17 U.S.C. §106 ........................................................................................................................6, 7

17 U.S.C. §106(3) .......................................................................................................................6

17 U.S.C. §410(c) .......................................................................................................................8

17 U.S.C. §501 ........................................................................................................................6, 7

17 U.S.C. §602 ........................................................................................................................6, 7

17 U.S.C.A. § 102(a) .................................................................................................................10

Rules

Fed. R. Civ. P. 12(b)(6).............................................................................................................14

Fed. R. Civ. P. 56 .......................................................................................................................1

Fed. R. Civ. P. 56(c)....................................................................................................................5

Fed. R. Civ. P. 9(b)....................................................................................................................14

Local Civil Rule 56.1 ..............................................................................................................1, 3

Other Authorities

*2 Patry on Copyright,* § 3:38.50................................................................................................10

Pursuant to Federal Rule of Civil Procedure 56, Local Civil Rule 56.1 of the Local Civil Rules of this Court, Rule 5 of Judge Gardephe's Individual Rules of Practice ("Judge's Rule 5") and the Court's Order of March 7, 2017 (Doc 62 of the docket of this Action), plaintiff The Basu Group Inc. ("Plaintiff" or "Basu Group"), respectfully moves this Court for partial summary judgment against defendant Seventh Avenue, Inc. ("Defendant" or "Avenue") with respect to (a) all issues of liability for Defendant's infringement of Plaintiff's copyrighted design, including a holding of willful infringement by Defendant, (b) a holding of non-invalidity of Plaintiff's copyright registration and (c) a holding dismissing Defendant's counterclaims.

## I.   PRELIMINARY STATEMENT

Plaintiff is a corporation of the state of New Jersey, having a place of business at 1003 Berkshire Drive, South Brunswick, NJ.  (Deposition Transcript of Bhaskar Basu ("Basu Depo.") p. 12, lns. 1-3 (Ex. B to the 56.1 App.[1]))  Plaintiff is the owner of a certain original work of art entitled "Peacock Feather #1" ("Plaintiff's Peacock Feather Design"), and having duly complied with the provisions of the Copyright Laws of the United States Plaintiff secured rights and privileges in and to Plaintiff's Peacock Feather Design from the U.S. Copyright Office under U.S. Copyright Registration No. VA 1-652-678, having an effective date of February 10, 2009. ("'678 Reg.") (Ex. F to the 56.1 App.)  The Peacock Feather Design consists of material which is wholly original and is copyrightable subject matter under the Copyright Laws of the United States, 17 U.S.C. Sec. 101, et. seq. ('678 Reg. (Ex. F to the 56.1 App.))

Plaintiff first started selling bags, purses, wallets and belts bearing Plaintiff's Peacock

---

[1]     Pursuant to Rule 5(C) of the Individual Rules of Practice of Judge Paul G. Gardephe, Civil Cases, accompanying this document is a document entitled Appendix to Plaintiff's Rule 56.1 Statement ("56.1 App."), containing as Ex. A thereto the Declaration of Michael R. Gilman, counsel for Plaintiff ("Gilman Dec.") attesting that each of the Exhibits of the 56.1 App. are "true and correct copy(ies)".

Feather Design ("Items") protected by the '678 Reg., in 2008.  (Declaration of Bhaskar Basu ("Basu Dec.") ¶ 3 ((Ex. B to the 56.1 App.))   For the calendar years 2008 through 2016, inclusive, Plaintiff sold approximately one hundred seven thousand eight hundred fifty (107,850) units of Items for total gross sales of over seven million ($7,000,000.00) dollars.  (Basu Dec. ¶¶ 4-13 ((Ex. B to the 56.1 App.))   Plaintiff's Items are painted and manufactured by Societe Maison de Cuir, a company of India having a place of business in Kolkata, India.  (Basu Depo. p. 15, lns 7-9, and p. 50, lns 4-5, ((Ex. K to the 56.1 App.))

Defendant is a corporation of the state of Wisconsin having a place of business at 1112 7th Avenue, Monroe, Wisconsin 53566.  (Defendant's Answer to the Complaint, Doc 60 of the Docket of this Action ("Ans.") ¶ 7 (Ex. E to the 56.1 App.))   Defendant is the owner and operator of the retail, internet website located at www.seventhavenue.com and also distributes a consumer goods catalog nationwide. (Ans. ¶ 7 (Ex. E to the 56.1 App.))  Defendant offers for sale and sells through its stated website and catalogs consumer goods to consumers located throughout the United States, including, but not limited to, to consumers located and/or residing in the state of New York and the judicial district of this Action.  (Deposition Transcript of  Paula Ludwig ("Ludwig Depo.") p. 11, lns 13-24 (Ex. P to the 56.1 App.); and Ans. ¶¶ 8 and 10 (Ex. E to the 56.1 App.))

Defendant promoted and sold on its website and through catalogs, a handbag under the title "Hand-Painted Leather Peacock Bag", under Item No. #D7724955, which bag is accused of infringing Plaintiff's copyright rights in this Action ("Accused Bag(s)").  (Ans. ¶ 17 (Ex. E to the 56.1 App.))   Defendant's Accused Bags were painted and manufactured by Shankar Produce Company Private Limited, a company of India also having a place of business in Kolkata, India. (Ludwig Depo. p. 30, lns 2-4 and 18-20 ((Ex. Q to the 56.1 App.))  Defendant was the importer

of the Accused Bags. (Defendant's Response to Interrogatories, pp. 11-12, answer to Int. 10 (Ex. S to the 56.1 App.))

All allegedly infringing activities of Defendant relating to the Accused Bag were, and are if continuing, without the permission, license or consent of Plaintiff.  (Ans. ¶ 22 (Ex. E to the 56.1 App.))  Further, Defendant's above discussed infringement has been, and if continuing certainly is, blatantly willful.  Plaintiff earlier sued Defendant in another lawsuit in this same judicial district, Docket No. 12-cv-05565 (SN) (now closed) ("Prior Action"), asserting copyright infringement of the same '678 Reg. against Defendant.  (NY R USDCTS&ED Civ Rule 56.1 Statement, ¶ 9 (Ex. H to the 56.1 App.))  Accordingly, it is without question that Defendant had full and specific knowledge of Plaintiff's copyright rights in Plaintiff's Peacock Feather Design prior to Defendant's purchase, importation, promotion, offer for sale and sale of the Accused Bag.

## II.   HISTORY OF THIS ACTION

On December 9, 2015, Plaintiff notified Defendant of Plaintiff's infringement claim against the Accused Bag in a letter emailed to Defendant's counsel of the Prior Action (Ans. ¶ 20 (Ex. E to the 56.1 App.))  After various unsatisfactory exchanges with Defendant's in-house counsel, Plaintiff commenced this Action on January 21, 2016 by the filing of the Complaint in this Action.  (Copy of Complaint ((Ex. C to the 56.1 App.))  Defendant refused Plaintiff's request for waiver of service of process, and as such, Plaintiff effected service of the Complaint on Defendant on March 7, 2016.  (Copy of Affidavit of Service ((Ex. D to the 56.1 App.))

On April 20, 2016, Defendant filed a letter with the Court requesting a pre-motion conference to bring a motion to dismiss the Complaint (Doc 17).  Plaintiff responded with its letter of the same date (Doc 18).  A pre-motion conference was held on July 7, 2016.  Pursuant to

the Court's instructions at the conference, Defendant filed a second pre-motion letter on July 14, 2016 (Doc 24), and Plaintiff responded on July 19, 2016 (Doc 25).  The Court expressed its skepticism of Defendant's ability to win a motion to dismiss at all 3 of these bits at the apple (2 letters and 1 conference/hearing).  Nevertheless, Defendant frivolously brought its motion to dismiss.  Pursuant to the Court's briefing schedule of its Order of July 26, 2016 (Doc 27), Defendant filed its motion to dismiss on August 11, 2016 (Doc 28), asserting that no reasonable jury could find a substantial similarity between Plaintiff's Peacock Feather Design and Defendant's peacock feather art found on the Accused Bag.  After briefing was completed, the Court denied Defendant's motion to dismiss in its Order of December 9, 2016 (Doc 45).

Defendant filed its Answer to the Complaint, asserting Affirmative Defenses and Counterclaims, on December 26, 2016 (Doc 47).  Thereafter, on January 4, 2017, Plaintiff filed a pre-motion conference letter seeking leave to bring a motion to dismiss Defendant's Counterclaims and certain of Defendant's Affirmative Defenses (Doc 48).  After Defendant's letter opposing Plaintiff's request, as well as a conference with the Court on February 16, 2017, Defendant was Ordered to, and did, file an Amended Answer and Counterclaims on February 24, 2017 (Doc 60) (Ex. E to the 56.1 App.).  On March 22, 2017, Plaintiff filed its Answer to Defendant's amended counterclaims (Doc 63).

Based on Defendant's amended affirmative defenses and counterclaims, Plaintiff informed the Court of its decision not to move to dismiss Defendant's filing and instead the parties proposed alternate briefing schedules for their motions for summary judgment.  The Court set the summary judgment briefing schedule in its Order of March 7, 2017 (Doc 62).

## III.  **ARGUMENT**

### A.    **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party."    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997)." *Vargas v. Transeau*, 514 F. Supp.2d 439, 442 (SDNY 2007).  In determining the existence of a "genuine issue of material fact" the evidence must be viewed in a light most favorable to the nonmoving party. *See*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *accord*, *Liberty Lobby*, 477 U.S. at 255.

> If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Liberty Lobby*, 477 U.S. at 248. Instead, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Liberty Lobby*, 477 U.S. at 252.

*Vargas*, 514 F. Supp.2d at 442.

B.      **STANDARD FOR A FINDING OF COPYRIGHT INFRINGEMENT**

"Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression … from which they can be perceived, reproduced, or otherwise communicated …  Works of authorship include the following categories: … (6) pictorial, graphic and sculptural works …"  17 U.S.C. §102.  Plaintiff's Peacock Feather Design being a 2-dimensional pictorial work, is subject matter appropriate for copyright protection.  "[T]he owner of copyright … has the exclusive rights to do and to authorize … distribut[ion of] copies … of the copyrighted work to the public by sale or other transfer of ownership…"  17 U.S.C. §106. "Importation into the United States, without the authority of the owner of copyright under this title, of copies … of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies … under section 106, actionable under section 501." 17 U.S.C. §602.  "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 …, or who imports copies … into the United States in violation of section 602, is an infringer of the copyright or right of the author …"  17 U.S.C. §501.

To prevail on its motion for summary judgment, Plaintiff must establish there are no genuine issues of material fact as to (1) its ownership of a valid copyright, and (2) unauthorized copying of Plaintiff's Peacock Feather Design.  *See* 17 U.S.C. §501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). In this context, "copying" refers to the infringement of any of the copyright owner's exclusive rights under 17 U.S.C. §106, including the right "to distribute copies .. of the copyrighted work to the public by sale or other transfer of ownership…" 17 U.S.C. §106(3).  Therefore, although Defendant denies it is the manufacturer of the Accused Bag, Defendant may be found liable for

6

infringement as the distributor of unauthorized copies.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).  Lest there be any misunderstanding, 17 U.S.C. §602 expressly defines Defendant's act of importing the Accused Bag as being "an infringement of the exclusive right to distribute copies … under section 106, actionable under section 501."

To establish copying, and "[i]n the absence of direct copying Plaintiff can show an inference of copying … by showing the two designs are substantially similar and the infringer had access to the design."  *Prince Group, Inc. v. MTS Products*, 967 F. Supp. 121, 125 (SDNY 1997).  For purposes of this Action, the Court has already held in its Order denying Defendant's motion to dismiss of December 12, 2016 (Doc 45), at footnote 1, that it is the "ordinary observer" test, and not the "more discerning" observer test, which is to be used in determining substantial similarity in this Action.   In particular, the Court held in footnote 1, "[h]ere, Plaintiff's peacock feather design is not – in whole or in part – 'simply the [unprotectible] depiction of a [feather] as it would appear in nature.  It is an artistic rendering that has its own unique qualities.'  *Hamil Am.*[ *Inc. v. GFI*], 193 F.3d [92,] 101 [(2d Cir. 2001)] (noting that 'the fact that the designs at issue … portrayed flowers [does] not preclude the use of the ordinary observer standard').  Accordingly, the 'ordinary observer' test is the appropriate standard in this case." Since this determination by the Court, the parties have completed fact discovery, and have waived expert discovery, and, as a matter of law, no disputed facts have arisen to shed doubt on the fact of the "wholly original" nature of Plaintiff's Peacock Feather Design.

Application of the "ordinary observer" test has also been defined for this Action at footnote 1 of the Court's Order of Doc 45:

> 'The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be

disposed to overlook them, and regard [the] aesthetic appeal as the same.'' *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). 'In applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'' *Id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

## C.     PLAINTIFF OWNS A VALID COPYRIGHT REGISTRATION

Under 17 U.S.C. §410(c), a certificate of copyright registration constitutes *prima facie* evidence of the validity of the registration, as well as of all of the facts stated in the registration. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).  After making this *prima facie* showing, the burden shifts to the defendant to rebut the presumption.  *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997), *citing Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985).  In this Action, any attempts by Defendant to cast doubt on the validity of Plaintiff's registration will all fail, as a matter of law.

### (1).     Plaintiff's Peacock Feather Design is Neither a Compilation Nor a Derivative Work

Plaintiff's Peacock Feather Design is a two-dimensional pictorial work.  As such, it is a work of the visual arts, and subject to registration at the U.S. Copyright Office as a work of the visual arts.  A paper Visual Arts (VA) application form and its instructions, available at least from the U.S. Copyright Office website at https://www.copyright.gov/forms/formva.pdf, accompanies this motion as Exhibit M to the Rule 56.1 Appendix.

Defendant's attempts to invalidate Plaintiff's copyright registration in response to this motion will be based on the mistaken assertion that when Plaintiff was filing the copyright application for the Peacock Feather #1 art, Plaintiff was required to complete Space 6 of the application.  Following is an identical replication of the image of Space 6 from the Copyright Office's paper VA application form of Ex. M to the Rule 56.1 Appendix:

8



As can be seen, Space 6 is defined as "Derivative Work or Compilation", and instructs applicants to "[c]omplete both space 6a and 6b for a derivative work; complete only 6b for a compilation." The space 6 instructions that accompany the VA form, read in totality, as follows:

**SPACE 6: Derivative Work or Compilation**

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include reproductions of works of art, sculptures based on drawings, lithographs based on paintings, maps based on previously published sources, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material** (space 6a): Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. Examples of preexisting material might be "Grunewald Altarpiece" or "19th century quilt design." Do not complete this space for compilations.

**Material Added to This Work** (space 6b): Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Adaptation of design and additional artistic work"; "Reproduction of painting by photolithography"; "Additional cartographic material"; "Compilation of photographs." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 19th century political cartoons."

Plaintiff's Peacock Feather Design is not a compilation, nor is it believed Defendant has tried, or will try, to make such an assertion. For example, Defendant's counterclaims assert a

purposeful intent of Plaintiff not to disclose the images of Exhibits B and C of Defendant's counterclaims ("Defendant's Exs. B and C") to the Copyright Office.  As shown above, Space 6 of the VA form instructs applicants to "[c]omplete **both** space 6a and 6b for a derivative work; complete **only** 6b for a compilation."  (emphasis added)  Since space 6b is to identify material added to the work, and not to identify preexisting material, Defendant has not asserted Plaintiff's work is a compilation.

Plaintiff's Peacock Feather Design is also not a derivative work.  It must first be recognized that a copyrighted work is not a derivative work under the Copyright Statute, simply because an item found in nature is used as inspiration for the copyrighted work.  "A sculpture of a dog is not a derivative work because it is based on a dog, no more than a photograph of a dog is a derivative work.  A real dog is not an original work of authorship under 17 U.S.C.A. § 102(a) and therefore cannot be a pre-existing work."  *2 Patry on Copyright*, § 3:38.50.  As such, any of the images of Defendant's Exs. B and C that are of real Peacock feathers, cannot, as a matter of law, be used to define Plaintiff's copyrighted work as being a derivative work.

Further, and even if there are some images of Defendant's Exs. B and C that are not of a natural Peacock feather, "[a] work is not derivative, however, simply because it is 'based upon' the preexisting works.  If that were the standard, then parodies and book reviews would fall under the definition, and certainly 'ownership of copyright does not confer a legal right to control public evaluation of the copyrighted work.'  *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 521 (7th Cir. 2002).  The statutory language seeks to protect works that are 'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship.'"  *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp.2d 513, 538 (SDNY 2008).

10

Accordingly, and as is supported by the following evidence produced by Plaintiff and testified to in the Rule 30(b)(6) deposition taken by Defendant of Plaintiff, the images and real peacock feathers of Defendant's Exs. B and C were used as mere "inspiration" in the creation of Plaintiff's Peacock Feather Design.  None of the images of Defendant's Exs. B and C were "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship.'"  *Id.*  The following excerpts are from the Deposition of Bhaskar Basu, taken on Monday, November 21, 2016 at the offices of Defendant's counsel in New York, NY (Ex. L to the Rule 56.1 Appendix), and establish, as a matter of law, that the images and real peacock feathers of Defendant's Exs. B and C were used as mere "inspiration" in the creation of Plaintiff's Peacock Feather Design.  The questions ("Q") are from Defendant's counsel, David Brezina, Esq. and the answers ("A") are from Mr. Basu:

Page 45
**5       Q.     Was this inspiration used to create**
**6    the art in exhibit two?**
 7          A.      No, not entirely.  So what we did
 8    was, yeah, we got a lot of photographs and images
 9    that we could find, but then we also had the real
10    feather, and typically when I'm creating an artwork,
11    what I do is I glance across all these images to try
12    and capture, you know, the image that forms in my
13    mind.
14               So, you know, as a child, whenever
15    I've drawn, and I did a lot of it when I was in
16    school and high school, etc., my approach to drawing
17    and my approach to art has always been from an angle
18    of interpretation or an angle of perception.  So I
19    use these images mostly for -- less for technical
20    accuracy and more for kind of like an interpretation
21    value.  What is the look and feel of that feather?
22    What's catching my attention?
23               And so once I've looked at all these
24    different feathers and then I've got the real
25    feather, which was the primary guidance for us,
Page 46
 1    that's when we started drawing and creating these

11

2   different guidelines to kind of create the feather,
3   and we didn't get to something like this at our
4   first attempt because we attempted various different
5   types of, you know, or methods of drawing the
6   feather and applying color to it to see what made it
7   look more realistic, and there was a lot of trial
8   and error before we actually ended up with this
9   version.

Page 48
**8        Q.      All right.  And you used all the**
**9    inspiration in exhibit four to inspire you to create**
**10   the art in exhibit two?**
11        A.      Yeah.
12                MR. GILMAN:  Objection.
13        A.       So, you know, it's hard for me to say
14   that I used all of them.  So the way we design is
15   when we focus on a subject, we try to gather as much
16   information we can as in pictures that we can.  We're
17   not -- from your earlier question, you were asking
18   me about the definition, etc.  For us, we're
19   creating art.  So the definition wasn't the
20   important thing.  For us, it was kind of getting the
21   look and feel of what we want to draw.

Page 58
**3        Q.      Referring back to the picture in**
**4    exhibit two, was this -- was the original from which**
**5    the photo was taken a sample on a flat piece of**
**6    leather that was photographed?**
7        A.       That is correct, because, you know,
8    when we created this artwork, we first tried it on
9    paper several times trying different methods of
10   doing it.  We even tried a couple of different
11   leather swatches trying the different techniques of
12   drawing or of representation that we tried, but none
13   of those representations or interpretations appeared
14   to me the way I wanted it to look.  So we kept
15   trying until we came to this specific like what
16   you're seeing in exhibit two.
17                So once we did the drawing in this
18   specific fashion where our application of a certain
19   color and then the highlighting that color with that
20   black line, the way it made the feather pop out is
21   where we zoned in on and said, Yes, that's the look
22   we want to move forward with, and that became our

12

23   initial guideline to how we wanted to do the
24   feather.  From then on, we started recreating that
25   for the different bags that you have or rather the
Page 59
 1   different drawings that you have shown in exhibit
 2   seven.

### (2).    Plaintiff Did Not Perpetuate A Fraud On The Copyright Office

Next, and even should the Court determine for purposes of these motions for summary judgment that Plaintiff's Peacock Feather Design is a derivative work, Defendant's unsupported reliance on Plaintiff's failure to disclose these images to the Copyright Office do not, as a matter of law, rise to a level sufficient to invalidate or render unenforceable Plaintiff's copyright registration.  A pleading must be based on an allegation of fraud perpetrated upon the Copyright Office if it is to invalidate or make unenforceable a registration based upon errors, misstatements or omissions in a copyright application.  As this Court held in *Eyal R.D. Corp. v. Jewelex New York, Ltd.*, 576 F. Supp.2d 626, 640-641 (SDNY 2008):

> Assuming *arguendo* (emphasis in original) that Eyal's registration application contained errors, misstatements, or omissions in one or more of the respects urged by Jewelex, that does not resolve the ultimate question before the Court.
>
> The ultimate question the Court must resolve is whether an error, misstatement or omission in an application for registration invalidates the copyright. Courts considering the issue have generally followed a liberal approach to upholding erroneous registration applications. For example, the Second Circuit stated in *Eckes v. Card Prices Update*, 736 F.2d 859, 861 (2d Cir. 1984), stated that "only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action."
>
> ***
>
> In this case, notwithstanding Jewelex's conclusory assertions, there is no evidence in the record to support a finding that Reout Kallati ***intended to defraud*** the Copyright Office when she completed the application for copyright registration.

13

When pleading fraud, Fed. R. Civ. P. 9(b)., must be followed.  In the Second Circuit the Courts do not follow the lower standard for scienter found in Rule 9(b).  "Despite Rule 9(b)'s lower standard for scienter, this Court has stated that 'we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.'' *Acito [v. IMCERA Group, Inc.*, 47 F.3d [47,] at 52 [(2d Cir. 1995)] (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). … [W]e have held that 'plaintiffs must allege facts that give rise to a ***strong inference of fraudulent intent.*' *Acito, 47 F.3d at 52*." (emphasis in original)  *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).  *See also, Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp.2d 343, 350 (SDNY 2001) ('A party seeking to establish fraud on the Copyright Office in order to rebut the presumption of copyright validity, bears the heavy burden of proving deliberate misrepresentation.  *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989)')."

Accordingly, in the Second Circuit a pleading must "allege facts that unambiguously give rise to a strong inference of fraudulent intent."  *Scheiner v. Wallace*, 832 F. Supp. 687, 702 (SDNY 1993).  The *Scheiner* Court further explained, "[f]acts that are merely as consistent with fraudulent intent as they are with its absence are insufficient."  *Id.*  These holdings were reinforced in 2014 by this Court in *Helios Int'l. S.A.R.L. v. Cantamessa USA, Inc.*, 23 F. Supp.3d 173, 194 (SDNY 2014), where the Court dismissed a pleading for fraud under Fed. R. Civ. P. 12(b)(6).

Defendant cannot, as a matter of law, meet these high standards for invalidating or rendering unenforceable Plaintiff's copyright registration.  The undisputed facts clearly establish that: (a) most of the images of Defendant's Exs. B and C are of real peacock feathers, which are

not works of art from which a derivative work can be created; (b) the artists who created

Plaintiff's Peacock Feather Design only used the images of Defendant's Exs. B and C as

inspiration to see the look of a real peacock feather, and they did not use these images to "'recast,

transformed, or adapted' into another medium, mode, language, or revised version, while still

representing the 'original work of authorship'" (*Warner Bros.*, 575 F. Supp.2d at 538); and (c)

even if (a) and (b) above, are untrue, it is nevertheless clear and undisputed that any such failure

to disclose the images of Defendant's Exs. B and C to the Copyright Office cannot rise to the

necessary level of fraudulent concealment, since "[f]acts that are merely as consistent with

fraudulent intent as they are with its absence are insufficient." *Scheiner*, 832 F. Supp. at 702.

The facts and holding of *Santrayall v. Burrell*, 993 F. Supp. 173, 176 and 176-177

(SDNY 1998), are instructive:

> Defendants contend that because Santrayll and Walker admitted in deposition
> testimony that they utilized the works of other artists, this constitutes a knowing
> failure to advise the Copyright Office of facts that might have led to the rejection
> of the application. This argument fails for two reasons: (1) a reasonable jury could
> conclude that the omissions by Santrayll were not deliberate misrepresentations,
> and therefore lacked the requisite scienter, and (2) the prior works played such a
> minor role in Plaintiffs' Song that the unauthorized use could not possibly have
> led the Copyright office to reject the applications.
>
> ***
>
> "The amount of creativity required for copyright protection of a (work) is
> decidedly small." (citation omitted). "Original, as the term is used in copyright,
> means only that the work was independently created by the author ... and that it
> possesses at least some minimal degree of creativity."   (citation omitted).
> Examination of the Plaintiffs' Song indicates beyond a shadow of a doubt that the
> work, other than the unauthorized parts, contain original portions. The prior works
> comprise only a very minor part of Plaintiffs' Song, and the remaining original
> portions are entitled to copyright protection. The Court determines that disclosure
> of the omissions would not cause the Copyright Office to consider rejecting the
> application, which not only requires denial of the defendants' motion for
> summary judgment, but renders the affirmative defense of fraud on the Copyright
> office inappropriate. Along the same lines, the Court determines that the
> plaintiffs' omissions in their registration application are not transgressions of
> serious proportions. Accordingly, the affirmative defense of unclean hands is
> likewise inappropriate for this proceeding.

In other words, "[w]here only insubstantial elements or unprotectible elements such as ideas have been copied from another's work"; i.e., where another's work is only used as "inspiration" and have not been copied, no disclosure is required.  5 *Patry on Copyrights*, § 17:112, *citing to*, *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 Fed. Appx. 873, n. 10 (11th Cir. 2015).

Therefore, and as there is no other space on the VA application form requiring disclosure of Defendant's Exs. B and C to the Copyright Office, no error (purposeful or not) was made by Plaintiff when it filed the subject VA application.

**D.      THERE HAS BEEN UNAUTHORIZED COPYING OF PLAINTIFF'S PEACOCK FEATHER DESIGN**

Since, as a matter of law, Defendant has not rebutted the presumption of validity in Plaintiff's registration because Defendant's arguments for invalidity cannot "establish fraud on the Copyright Office [by meeting] … the heavy burden of proving deliberate misrepresentation" *Chere Amie*, 191 F. Supp.2d at 350, the Court can now turn its attention to the second prong of the infringement analysis.  There has been unauthorized copying since, as a matter of law, there is a substantial similarity between the designs and access to Plaintiff's Peacock Feather Design has been established.

**[Intentionally Left Blank]**

16

### (1). <u>The Designs in Question</u>

| Plaintiff's Peacock Feather Design | Front of Accused Bag Ex. B to Complaint | Back of Accused Bag Not Shown in Complaint |
|---|---|---|



The above shows Plaintiff's copyrighted design and the front and back of the Accused Bag.  As it is believed the Court understands from the earlier letters, conference and motion to dismiss in this Action, Plaintiff is asserting its above copyrighted design against the two peacock feather designs seen on the above front of the Accused Bag and against the two (1½) peacock feather designs seen on the above back of the Accused Bag.  Plaintiff's infringement claim is not against, and has nothing to do with, the other images of the Accused Bag.

### (2). <u>Access</u>

"Access is only an opportunity to copy."  *Gund, Inc. v. Fortunoff, Inc.*, 3 U.S.P.Q.2d 1556, \*2 (S.D.N.Y 1986), *citing Fisher-Price Toys, Div. Of Quaker Oats Co. v. My-Toy Co., Inc.*, 385 F. Supp. 218, 220 (S.D.N.Y. 1974).  "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work."  *Boisson v. Banian*, 273 F.3d 262, 270 (2d Cir. 2001).  Proof of access

may also be inferred where "two works are so strikingly similar as to preclude the possibility of independent creation...." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995).  For any, and all, of these reasons, as a matter of law, Defendant and its supplier both had access to Plaintiff's Peacock Feather Design.

Defendant knows and is familiar with Plaintiff and Plaintiff's artistic works, having been sued in this Court and the District of New Jersey by Plaintiff on two earlier occurrences.  In the second such prior suit, commenced in this Court, *The Basu Group Inc. v. Biacci Inc. et al.*, Civil Action No. 12-cv-05565 (RJS) (now closed) ("the Prior Action"), Defendant was a named defendant and the first cause of Action in the complaint asserted the same U.S. Copyright Registration VA 1-652-678 for Plaintiff's Peacock Feather Design against all of the defendants in the Prior Action.  (A copy of the complaint in the Prior Action accompanies this motion as Exhibit H to the Rule 56.1 Appendix.)  The Prior Action was commenced on July 19, 2012.

In addition, Defendant has produced in this Action correspondence between its employees expressly noting Plaintiff and a known problem with Plaintiff's Peacock art.  An email correspondence produced by Defendant in this Action as SA000409, reads in relevant part, as follows:  "No peacock feathers.  Pretty sure that was one of the ones in questioning from basu."  It is believed this email happened on, or around, September 17, 2013.  (A copy of SA000409 accompanies this motion as Exhibit N to the Rule 56.1 Appendix, while copies of pages 39-40 of the Rule 30(b)(6) deposition transcript taken of Paula Ludwig ("Ludwig Depo."), by Plaintiff's counsel on November 18, 2016, attesting to the authenticity of SA000409 accompany this motion as Exhibit O to the Rule 56.1 Appendix.)

Defendant's offer for sale of the Accused Bag first appeared in Fall, 2015 catalogs. (Exhibit G to the Rule 56.1 Appendix)

18

Defendant's supplier of the Accused Bag in this Action, Shankar Produce Company Private Limited of Kolkata, India ("Shankar").  (Ludwig Depo. p. 30, accompanies this motion as Exhibit Q to the Rule 56.1 Appendix).  Shankar also knows and is familiar with Plaintiff and Plaintiff's Peacock Feather Design.  In the Prior Action, Defendant's then supplier, Biacci Inc., identified "Shankar Produce, Inc., Calcutta, India" as its supplier of the then accused Peacock bags in its response to interrogatory 7 of the Prior Action.  (A copy of the document entitled, "Biacci Inc.'s Response to Plaintiff's First Set of Interrogatories Nos. 1 to 7" in the Prior Action, accompanies this motion as Exhibit R to the Rule 56.1 Appendix.)

In addition, Plaintiff has been selling at least bags, purses, wallets and belts bearing Plaintiff's Peacock Feather Design since 2008.  Plaintiff's sales of such items are approximately, as follows (Declaration of Bhaskar Basu, Ex. B to the Rule 56.1 Appendix):

| Calendar Year | Approx. # of Units | Gross Sales (US Dollars) |
|---|---|---|
| 2008 | 4,500 | Over $450,000.00 |
| 2009 | 7,500 | Over $500,000.00 |
| 2010 | 9,100 | Over $600,000.00 |
| 2011 | 14,000 | Over $850,000.00 |
| 2012 | 17,200 | Over $1,100,000.00 |
| 2013 | 16,800 | Over $1,100,000.00 |
| 2014 | 15,750 | Over $1,000,000.00 |
| 2015 | 13,500 | Over $900,000.00 |
| 2016 | 9,500 | Over $550,000.00 |
| **TOTALS** | **107,850** | **Over $7,000,000.00** |

Accordingly, as "[a]ccess is only an opportunity to copy," *Gund*, 3 U.S.P.Q.2d at *2 and Defendant and its supplier, Shankar, "had a reasonable possibility of viewing the prior work" *Boisson*, 273 F.3d at 270, Plaintiff contends it has, as a matter of law, proven access.  In the alternative, and while believing such a ruling by the Court is not necessary, should the Court believe the above is not convincing proof of access, Plaintiff contends the Court may herein infer access since the "two works are so strikingly similar as to preclude the possibility of independent creation...." *Lipton*, 71 F.3d at 471.

### (3).  Substantial Similarity

As argued in Section III, B of this memorandum, at footnote 1 of the Court's Order of Doc 45 in this Action, the Court held that it is the "ordinary observer" test to be applied in making the determination of substantial similarity in this Action.  The Court went on to define the "ordinary observer" test, as follows:

> 'The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'' *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). 'In applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'' *Id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71F.3d 996, 1002 (2d Cir. 1995)).

Footnote 1 of the Court's Order of Doc 45 in this Action.

Applying this test Plaintiff contends the Court can, and must, as a matter of law, hold Defendant's Peacock feather art found on the Accused Bag to be substantially similar to Plaintiff's Peacock Feather Design (*see* the above chart of Section III, D(1)).  To assist the Court in making its legal determination that an ordinary observer would regard the aesthetic appeal between the two designs as being the same, such that they would recognize the alleged copy to

have been appropriated from the copyrighted work, Plaintiff attaches as Exhibits T-V to the Rule 56.1 Appendix a small sampling of other consumer goods bearing Peacock art thereon.  Exhibit T shows other items sold over the years by Defendant with Peacock art.  Exhibit U shows third party Peacock art produced by Defendant in the Prior Action in 2012.  Exhibit V shows third party Peacock art produced by Defendant in this Action.

Plaintiff contends that not only does Plaintiff's Peacock Feather Design look nothing like a natural Peacock feather, but of these hundreds of other Peacock art items of Exhibits T-V (all produced by Defendant), not only are they are all different from each other, but none look even remotely like Plaintiff's Peacock Feather Design.  Accordingly, when the ordinary observer, knowing of these myriad other ways of depicting a Peacock and also knowing of Plaintiff's Peacock Feather Design, then sees the accused Peacock art on Defendant's Accused Bag, it is not possible that such an observer would not believe the accused art to be at least substantially similar to Plaintiff's copyrighted art; i.e., the Peacock art on the Accused Bag looks far more like Plaintiff's Peacock Feather Design than any of the hundreds of other images of Peacock art produced by Defendant in this Action and the Prior Action, and as such, the "average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Peter F. Gaito, 602 F.3d at 66 and Knitwaves, 71F.3d at 1002.

### E.    DEFENDANT'S INFRINGEMENT WAS WILLFUL

"To prove 'willfulness,' a plaintiff must show '(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights.'"  *Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp.3d 184, 197 (S.D.N.Y. 2016) *quoting*, *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).  "The standard is

simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility." *Hamil Am.*, 193 F.3d at 97.

It has been established hereinabove in Section III(D)(2) in the discussion of the Prior Action, as a matter of law, that Plaintiff earlier sued this same Defendant on the exact same copyright covering Plaintiff's Peacock Feather Design.  The courts of this circuit have upheld a holding of willful copyright infringement in such circumstances.  *Cengage Learning, Inc. v. Shi*, 2015 WL 5167775, *5 (S.D.N.Y, 13-cv-7772-VSB-FM, Sept. 3, 2015) ("There is no question that these infringements were willful. Indeed, this is the second suit that the Plaintiffs … have brought against Shi for the same conduct.")

The courts of this circuit have also held a defendant to have recklessly disregarded a plaintiff's rights even when the defendant asserts an alleged good faith belief that its activities are not infringing. *See*, *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement [i.e., a claim of innocence]) suffices to warrant award of the enhanced damages") and *Engel v. Wild Oats, Inc.*, 644 F. Supp. 1089, 1092 (S.D.N.Y. 1986) ("Although the court finds no direct proof of the art director's actual knowledge of the copyright infringement, the compelling circumstantial evidence of his reckless disregard for, if not actual knowledge of, plaintiff's rights in the photograph is sufficient to establish willfulness."

Even further, a defendant's experience and knowledge of copyrights and issues involved with copyrights, etc. can be enough to warrant a holding of willful infringement.  *See*, for example, *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110 (2d Cir. 1986) (where the Second Circuit concluded that the defendant printer in the case had constructive notice of his committing willful copyright infringement based upon his position in the publishing

market as an experienced publisher) and *Lauratex Textile Corp.v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (defendant held to be a willful infringer based upon the fact that it had been sued for copyright infringement six times in three years, and this established that "the business of encroaching upon others' copyrights is not unfamiliar to the defendant") and *Walt Disney Co., v. Best*, 1990 WL 144209, *2 (S.D.N.Y., 88-cv-1595-SWK, Sept. 26, 1990) ("Shortly after agreeing to settle an earlier suit based on its sales of unauthorized and counterfeit watches, WTD was found to be selling unauthorized and counterfeit Mickey Mouse telephones. Defendant's past infringement is a strong indication that it was familiar with the law and willfully violated it.")

Based on all, or any, of the above holdings of the courts of this circuit, Defendant is a willful infringer because, at least, Defendant has now been sued by Plaintiff twice on this exact same copyright and Defendant is an experienced copyright infringement defendant, having now been sued three times by Plaintiff for copyright infringements.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff The Basu Group Inc. respectfully requests that the Court summarily adjudicate one or more of the following issues:

1.   Plaintiff owns a valid copyright and copyright registration for Plaintiff's Peacock Feather Design;

2.   Defendant Seventh Avenue had access to Plaintiff's Peacock Feather Design;

3.   Defendant infringed Plaintiff's exclusive right to distribute copies in Plaintiff's Peacock Feather Design;

4.   Defendant is liable for copyright infringement; and

5.   Defendant's infringement of Plaintiff's rights herein were, and if

continuing are, willful.

Respectfully submitted,

**KAPLAN BREYER SCHWARZ
    & OTTESEN LLP**


By: ____/s/ Michael R. Gilman_____
Michael R. Gilman (MG 7608)
100 Matawan Road, Suite 120
Matawan, New Jersey 07747
Telephone (732) 578-0103, ext. 233
mgilman@kbsolaw.com
*Attorneys for Plaintiff The Basu Group, Inc.*

Dated: March 31, 2017

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the document entitled "**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ITS COPYRIGHT IS NOT INVALID, FOR COPYRIGHT INFRINGEMENT, AND FOR A RULING THAT SUCH INFRINGEMENT WAS WILLFUL**" was served on the below identified counsel for Defendant, on this 31st day of March, 2017, via First Class mail, postage prepaid:

> David C. Brezina, Esq.
> Ladas & Parry LLP
> 224 South Michigan Avenue, Suite 1600
> Chicago, IL 60604
> (Attorneys for Defendant Seventh Avenue, Inc.)

Dated:  March 31, 2017                    By:     /s/ Michael R. Gilman
                                                      Michael R. Gilman (MG 7608)