**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                            :

**THE BASU GROUP INC.,**                  :
                                            :

                                            :
                    **Plaintiff,**         :      **Civil Action No. 16-cv-00461-PGG**
                                            :       **ECF CASE**
                    **v.**                  :

**SEVENTH AVENUE, INC.,**             :
                                            :
                    **Defendant.**     :
-------------------------------------------------------------X

### PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

Based upon the parties' co-pending motions for summary judgment, the parties appear to agree that there are no material facts in dispute preventing summary resolution of this Action. The material, undisputed facts from the parties' briefing are:

A.      Copyright Reg. No. VA1-652-678, for the work entitled "Peacock Feather #1", issued from the Copyright Office with an effective date of February 10, 2009 ("the '678 Reg.").

B.      The '678 Reg., if valid, is owned by Plaintiff in this Action, The Basu Group Inc.

C.      This Action is now the third copyright infringement action brought by this Plaintiff against the Defendant in this Action, Seventh Avenue, Inc.

D.      One of these earlier suits was in this same Court, the Southern District of New York; namely, *The Basu Group Inc. v. Biacci Inc. et al.*, Civil Action No. 12-cv-05565 (RJS), commenced July 19, 2012 (now closed) ("the Prior Action").

E.      Seventh Avenue was a named defendant in the Prior Action.

F.      The first cause of action of the Prior Action asserted copyright infringement of the '678 Reg. against all Prior Action defendants, including, Seventh Avenue.

1

G.     Seventh Avenue's supplier of the Peacock feather goods accused of infringing the '678 Reg. in the Prior Action was, Biacci Inc.

H.     Biacci, Inc.'s supplier of the Peacock feather goods accused of infringing the '678 Reg. in the Prior Action was, Shankar Produce of Kolkata, India.

I.     This Action asserts a claim of copyright infringement against Seventh Avenue, based upon the same '678 Reg. as was asserted in the Prior Action.

J.     The same entity, Shankar Produce of Kolkata, India, who supplied Seventh Avenue's then supplier (Biacci) with the infringing Peacock feather goods of the Prior Action, is also Seventh Avenue's supplier of the infringing Peacock feather bag in this Action.

K.     Prior to Plaintiff's commencement of the Prior Action, Seventh Avenue's supplier (Biacci), was notified of Plaintiff's '678 Reg. infringement claim by a notice letter sent to Biacci dated March 30, 2009 (Ex. H to Gilman Dec. in support of Plaintiff's brief in opposition to Defendant's Motion for Summary Judgment).

L.     Shankar created the design accused of infringement in this Action in 2012.

M.     Seventh Avenue had knowledge of, and therefore access to, Plaintiff's claim of ownership in the Peacock Feather #1 artwork, protected by the '678 Reg., prior to commencement of its alleged infringing activities in this Action.

N.     Shankar had knowledge of, and therefore access to, Plaintiff's copyrighted work prior to its creation in 2012 of the design accused in this Action.

O.     Defendant was the importer of the accused bag in this Action.

P.     The Peacock Feather #1 artists had before them real Peacock feathers and images searched for on the internet and in magazines of real Peacock feathers.

Q.     Plaintiff's Rule 30(b)(6) deponent, who was also one of the Peacock Feather #1

2

artists, Bhaskar Basu, testified at his deposition, under oath, that none of these real feathers nor feather images were copied in their creation of the protected artwork, and that instead, these images were used by the artists to see what a real Peacock feather looked like so that the art they created would be recognizable at a glance by consumers.

R.  Mr. Basu's testimony established how he creates art, and how he created the Peacock Feather #1 art of this Action; namely:

1.  "it is about creating an interpretation that can be reproduced on a leather handbag and replicated several times by our artist and artisans so that there is a consistency in the look and feel of that element…" (Basu Dep. p. 42, lns 1-6 (Ex. C to Gilman Dec.));

2.  "So what we did was, yeah, we got a lot of photographs and images that we could find, but then we also had the real feather, and typically when I'm creating an artwork, what I do is glance across all these images to try and capture, you know, the image that forms in my mind."  (Basu Dep. p 45, lns 7-13 (Ex. C to Gilman Dec.))

3.  "my approach to drawing and my approach to art has always been from an angle of interpretation or an angle of perception. So I use these images mostly for–less for technical accuracy and more for kind of like an interpretation value. What is the look and feel of that feather? What's catching my attention?" (Basu Dep. p.45, lns 16-22 (Ex. C to Gilman Dec.))

4.  "when we created this artwork, we first tried it on paper several times trying different methods of doing it.  We even tried a couple of different leather swatches trying the different techniques of drawing or of representation that we tried, but none of those representations or interpretations appeared to me the way I wanted it to look.  So we kept trying until we came to this specific like what you're seeing in exhibit two."  (Basu  Dep. p. 58, lns 8-16 (Ex. C to Gilman Dec.))

5.   "So once we did the drawing in this specific fashion where our application of a certain color and then the highlighting that color with that back line, the way it made the feather pop out is where we zoned in on and said, Yes, that's the look we want to move forward with, and that became our initial guideline to how we wanted to do the feather."  (Basu Dep. p. 58, lns 17-24 (Ex. C to Gilman Dec.))

S.   When the application that matured into the '678 Reg. was filed, none of the real Peacock feathers nor the Peacock images used as inspiration in creation of the artwork were disclosed to the U.S. Copyright Office.

T.   No information was provided in either the Limitations of Claim nor Material Added sections of the copyright application that matured into the '678 Reg.

Based upon these above undisputed facts, the issues the parties believe to be legal, and therefore able to be determined by the Court on summary judgment, are:

A.   Whether Plaintiff's Peacock Feather #1 artwork was a derivative work?

B.   If the Court determines Peacock Feather #1 to have been a derivative work, should Plaintiff have disclosed its reference to real Peacock feathers to the Copyright Office?

C.   If the Court determines Peacock Feather #1 to have been a derivative work, should Plaintiff have disclosed its reference to the internet and magazine images of Peacock feathers to the Copyright Office?

D.   If the Court determines Peacock Feather #1 to have been a derivative work, and determines that either, or both, the real Peacock feathers and/or the Peacock images were required to be disclosed to the Copyright Office, did Plaintiff's failure to disclose rise to the level of deliberate misrepresentation required by this Circuit to establish fraud on the Copyright Office?

E.      If the Court determines Peacock Feather #1 to have been a derivative work, and determines that either, or both, the real Peacock feathers and/or the Peacock feather images were required to be disclosed to the Copyright Office, would disclosure of this material to the Copyright Office have resulted in refusal of copyright protection by the Copyright Office?

F.      Are paragraphs 12, 14, 15, 18 and 24 of the Declaration of Anurag Chokhany hearsay?

G.      If paragraphs 12, 14, 15, 18 and 24 of the Declaration of Anurag Chokhany are hearsay, they cannot be used to raise issues of trialable fact in summary judgment proceedings.

H.      Did Shankar Produce independently create the accused Peacock design?

I.      Did Seventh Avenue have access to Plaintiff's copyrighted work?

J.      Did Shankar Produce have access to Plaintiff's copyrighted work?

K.      In the Court's substantial similarity determination should the Court include the background artistic images found on Seventh Avenue's accused bag that surround the 4 accused Peacock feather designs?

L.      Should the Court use the ordinary observer test or the more discerning observer test in its substantial similarity determination?

M.      Is the accused design substantially similar to the copyrighted design?

N.      Was Seventh Avenue's infringement willful?

**I.      INCORPORATION BY REFERENCE**

Plaintiff incorporates by reference herein the totality of its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pf's Opp. Memo.").   While Pf's Opp. Memo. incorporates much of the legal arguments and positions found in Plaintiff's opening memorandum of this motion (Plaintiff's motion for summary judgment), there are nevertheless

additional arguments and case law raised in Pf's Opp. Memo.  As such, and so as not to repeat

them here in totality, Plaintiff incorporates Pf's Opp. Memo. herein by reference and, in addition,

in some arguments below, will direct the Court to the Section and page of Pf's Opp. Memo.

## II.   SPECIFIC ISSUES RAISED IN DEFENDANT'S MEMORANDUM IN OPPOSITION TO THIS MOTION

### A.   <u>Shankar Produce and the Declaration of Anurag Chokhany</u>

Defendant suggests in its opposition brief that access to Plaintiff's Peacock

Feather #1 design by its supplier of the accused bag, namely, Shankar Produce, has not been

established.  The following undisputed facts support Plaintiff's arguments of access by Shankar:

1.   Shankar was the supplier of the accused infringing Peacock goods to Biacci in the

Prior Action. (Ans. to Interrogatory 7, see Ex. G to Gilman Dec. and Ex. R to Pf's Rule 56.1

Appendix)

2.   As evidenced by Plaintiff's March 30, 2009 notice letter to Biacci in the Prior

Action (Ex. H to Gilman Dec.), the Peacock goods accused of infringement in that letter must

have been created by Biacci's supplier (Shankar) prior to March 30, 2009.

3.   As evidenced by the '678 Reg. (Ex. F to Pf's Rule 56.1 Appendix), Plaintiff

created the Peacock Feather #1 art in 2007 and started selling it in January, 2008.

4.   Both Plaintiff's factory and Shankar are located in Kolkata, India.

Defendant's only argument contesting access by Shankar to Plaintiff and Plaintiff's prior

created and sold Peacock goods, is at p. 3 of its opposition brief.  "Basu suggests a Prior Action

involving non-parties here, have relevance absent proof that the co-defendant in the Prior Action

(Biacci?) showed the creator of the Accused Bag (Shankar) Peacock Feather #1."  Based upon

Plaintiff's above undisputed, documented facts, no "reasonable jury could return a verdict for the

nonmoving party", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), based upon this

lone, unsupported attorney argument.   Further, while Defendant submits the Declaration of Anurag Chokhany[1], Director of Shankar, conspicuously missing from Mr. Chokhany's declaration is any statement contesting access by Shankar to Plaintiff or Plaintiff's Peacock art.

### B.      US Copyright Application – Electronic v. Paper

In Section C(1) of Defendant's opposition brief Defendant tries to argue that the Copyright Office's electronic form and its paper form are different.   As cited in Pf's Opp. Memo., p. 2, footnote 1, the Copyright Office Compendium (Section 618.2) equates the two forms, as it should/must since both are still able to be used.   Plaintiff has likewise always equated the prior existing material portion (space 4) of the electronic form with the derivative work section (space 6) of the paper form.

Ultimately, with regard to Defendant's arguments in Section C(1), had Plaintiff checked off the boxes in space 4 of the electronic form for "Preexisting photograph(s)" and "2D Artwork" or "Artwork" as suggested in Defendant's brief, the registration would still have been issued by the Copyright Office, and the Court would be in the exact same position, having to make the same determinations of substantial similarity.   In particular, let us say Plaintiff made what it believes would have been a mistake, and it filled in space 4 as suggested by Defendant. The Court would still be faced with all of the same issues in these motions.   In fact, based upon Compendium Sections 621.2 and 621.9(A)(1) (Section II(A)(2) of Pf's Opp. Memo.), had Plaintiff filled in space 4 and added in the "Note to Copyright Office" field that the preexisting items were real Peacock feathers as found in nature and pictures of real Peacock feathers found on the internet and in magazines, the Copyright examiner would likely have called Plaintiff to confirm that he/she could leave space 4 blank when issuing the registration, since none of these

---

1 Plaintiff objects to the totality of the Chokhany Declaration as both hearsay and the statements of someone who has not, and will not, testify or be subject to production in this Action.

images of real Peacock feathers are "preexisting material" needed to be mentioned in an application.  As such, it is more likely that had space 4 been completed, the issues before the Court would have been easier because there would be no question of the immateriality of the real peacock feather inspirational use.

        **C.**      **The Alleged "Pre-Existing Material"**

Defendant appears to have accepted Plaintiff's arguments and case law holding that items found in nature are not "pre-existing material" and therefore, not material from which a derivative work is created.  In particular, Defendant defines "Preexisting Images" in Section II, p. 3 of its opposition brief, as only those images of Ex. C to Defendant's counterclaims; i.e., the Peacock feather images found on the internet and in magazines from which the authors of Peacock Feather #1 were inspired, and then only argues that Plaintiff's work is a derivative work based on these Preexisting Images.  In these arguments, Defendant reasons that since the Ex. C images are from the internet and magazines they are photographs, and as photographs (even of things found in nature), they are "pre-existing material" for purposes of a derivative work.

Even assuming this argument is true, Mr. Basu has testified that the reason for gaining the Peacock feather images from the internet/magazines was to have images of real Peacock feathers to help them create art that is recognizable by consumers; i.e., so that the artists know the look of a real feather.  For example, at p. 41, lns14-17, Mr. Basu testifies, "[e]xhibit four [of the depo, but Ex. C to the counterclaims] has different images of peacock feathers and generally these are all images of real peacock feathers, except for I think maybe the shoe."  This same testimony continues on p. 42, lns 7-17, "[s]o with instance, the images that we use for inspiration here were the peacock feathers. We were looking for all the key elements of a peacock feather to understand what would – what would make our drawing look as close or – how could I get it to

closely resemble that look so that when people look at it at a first glance, they will know that, Oh, this is a peacock feather, while understanding that I cannot possibly draw it or color it or create it exactly the same way that the real peacock feather is."  (Ex. C to Gilman Dec.)

Accordingly, Plaintiff stands by all of its arguments in its summary judgment papers (as movant and non-movant) that none of these images were intended to be used by the artists, nor were they used by the artists, in a manner where they were "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship'" (*Warner Bros.*, 575 F. Supp.2d at 538).  First, they were not "original works of authorship" under the definition, and even if they were because they were photographs, per all of the evidence in this Action none were "'recast, transformed, or adapted' into another medium, mode, language, or revised version" *Id.*  In other words, "[w]here only insubstantial elements or unprotectible elements such as ideas have been copied from another's work"; i.e., where another's work is only used as inspiration, or the other work is not a work of authorship because it is an element of nature, no disclosure is required.  5 *Patry on Copyrights*, § 17:112, *citing to*, *Olem Shoe Corp. v. Washington Shoe Corp.*, 591 Fed. Appx. 873, n. 10 (11th Cir. 2015).

D.    **Defendant's Work Was Not Independently Created**

Plaintiff incorporates herein by reference Pf's Opp. Memo., Sec. III(A).

E.    **Substantial Similarity**

Plaintiff's Peacock Feather #1 is a wholly original work of authorship.  It was inspired from the beauty of real Peacock feathers.  It is not, however, a copy of a real Peacock feather, nor was it ever meant to be a copy of a real Peacock feather.  It is the artists' expression of a Peacock feather.  It is the artists' expression of a Peacock feather that says to consumers, at their first glance, that it is a Peacock feather, but that upon further review by the consumer is most

certainly revealed not to be a real life Peacock feather replication.

After holding, as a matter of law, that the '678 Reg. is valid and that the use of the real feathers of Ex. B to the counterclaim and images of feathers of Ex. C to the counterclaim were ministerial and were not "'recast, transformed, or adapted' into another medium, mode, language, or revised version, while still representing the 'original work of authorship'" (*Warner Bros.*, 575 F. Supp.2d at 538), a holding that Defendant's accused design is substantially similar to Peacock Feather #1 is unavoidable.   The simple comparison of Plaintiff's work and Defendant's accused design to real Peacock feathers, and then to each other, leaves no doubt that the "'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'' *(citation omitted)*   'In applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'' *(citation omitted*)  (Court's Order of Doc. 45 in this Action, footnote 1)

## III.    <u>CONCLUSION</u>

For all of the reasons laid out in Plaintiff's summary judgment briefings, both as movant and non-movant, Plaintiff respectfully requests the Court grant summary judgment for Plaintiff of non-invalidity of Plaintiff's registration, copyright infringement and willful copyright infringement.

Dated:  May 5, 2017                    By:   /s/ Michael R. Gilman

                                       Michael R. Gilman (MG 7608)
                                       **KAPLAN BREYER SCHWARZ, LLP**
                                       100 Matawan Road, Suite 120
                                       Matawan, New Jersey 07747
                                       Telephone (732) 578-0103, ext. 233
                                       mgilman@kbsolaw.com
                                       *Attorneys for Plaintiff The Basu Group, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the document entitled

"**PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**" was served on the

below identified counsel for Defendant, on this 5th day of May, 2017, via the Court's ECF

system, with a confirmation by UPS courier service, prepaid:


David C. Brezina, Esq.
Ladas & Parry LLP
224 South Michigan Avenue, Suite 1600
Chicago, IL 60604
(Attorneys for Defendant Seventh Avenue, Inc.)



Dated:  May 5, 2017                    By: ____/s/ Michael R. Gilman_____
                                             Michael R. Gilman (MG 7608)